Frank D. Mylar (5116)
MYLAR LAW, P.C.
2494 Bengal Blvd.
Salt Lake City, Utah 84121
Phone: (801) 858-0700
FAX: (801) 858-0701
Mylar-Law@comcast.net

Attorney for Defendant Weber County

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| IN RE INTEREST OF I.F., a minor child, SHERRIE FAZZIO, and MICHAEL FAZZIO,<br><br>Plaintiffs,<br><br>v.<br><br>THE STANDARD EXAMINER, SANDUSKY NEWSPAPER INC., WEBER COUNTY, and RECORD FINDER,<br><br>Defendants. | **DEFENDANT WEBER COUNTY'S MOTION TO DISMISS AND MEMORANDUM IN SUPPORT**<br><br>Case No. 1:17-cv-132-RJS<br><br>District Judge Robert J. Shelby |

Defendant Weber County, through its attorney Frank D. Mylar, respectfully submits this motion for dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendant Weber County's motion should be granted based upon the pleadings and the following arguments:

**INTRODUCTION**

Plaintiff's suit stems from an unintentional release of a 16-year old arrestee's booking information that was printed by a local newspaper. The Weber County Jail does not normally

book juveniles, but agreed to in this situation. The minor's booking photo, along with a description of some of the crimes he had been arrested for, appeared on the Jail's website that shares details with the press about daily Jail bookings. Plaintiffs claim this violated their right of privacy and right to raise their child under the Fourteenth Amendment and various state tort claims. However, Weber County cannot be held liable for these claims based upon the allegations.

## GROUNDS FOR MOTION

1. Plaintiffs' First Cause of Action is not cognizable under 42 U.S.C. § 1983.

2. Plaintiffs' state tort claims, Cause of Actions 2-6, are barred by the Utah Governmental Immunity Act and must be dismissed.

## STATEMENT OF FACTS

1. Defendant Weber County is a political subdivision of the State of Utah. (Compl. ¶ 4, Doc. No. 1).

2. I.F. was arrested for crimes that occurred on about February 21, 2017. At a court hearing on April 10, 2017, he agreed to be fingerprinted by "Juvenile Justice Services or local law enforcement with 120 days as ordered by the Juvenile Court." (Compl. ¶¶ 9-11).

3. On April 10, 2017 I.F. and his mother chose to go to the Weber County Jail with a copy of the juvenile court order to be booked. (Compl. ¶¶ 15-18).

4. Pursuant to the order, employees at the Jail commenced a "booking" and took I.F.'s mugshot and fingerprinted him. (Compl. ¶ 17).

5. On April 11, 2017 I.F. and his parents became aware that I.F.'s mugshot and arrest information was being circulated in the media. The information had been uploaded to a website the Jail uses to distribute [booking] mugshots to the media/public. (Compl. ¶¶ 19-30).

6.     I.F.'s parents made the Weber County Sheriff's Office aware of the mistake and the Sheriff's Office, which operates the Jail, took the mugshot and arrest information off the website. (Compl. ¶ 31).

## ARGUMENT

**I.     Plaintiffs' Claim is not Cognizable under 42 U.S.C. § 1983.**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Plaintiffs' Complaint fails "to state a claim upon which relief can be granted" and, therefore, should be dismissed. Fed. R. Civ. P. 12(b)(6). A complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Legal conclusions can provide a framework for a complaint, but they must be supported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  In a Section 1983 context "[a plaintiff] must allege facts sufficient to show (assuming they are true) that the [defendant] plausibly violated [his or her] constitutional rights, and that those rights were clearly established at the time. This requires enough allegations to give the [defendant] notice of the theory under which [his or her] claim is made." *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008).

Plaintiffs' first cause of action only alleges general and vague allegations.  Several times, it vaguely asserts that I.F.'s 'rights' were violated.  (Compl. ¶ 45, ¶ 38, ¶ 39, ¶ 47, ¶ 48, ¶ 49, ¶ 51, ¶ 53).  The most concrete claim is when it states the dissemination of arrest information "violated the rights, privileges and immunities of I.F. secured by the state and federal constitution and laws." (Compl. ¶ 38).  Plaintiffs never specify what federal laws were violated as required by Section 1983.  Plaintiffs make various claims that releasing certain information may have violated state

3

law or was contrary to the orders of the Juvenile Court.  However, violation of various state laws cannot be a basis for a cause of action under 42 U.S.C. § 1983.  See *Baker v. McCollan*, 443 U.S.137 (1979).

In *Baker*, the United States Supreme Court reversed a decision from the Fifth Circuit Court of Appeals because the lower court tried to make a Constitutional claim out of violations of state law.  The Court noted, "'The first inquiry in any *§ 1983* suit, therefore, is whether the plaintiff has been deprived of a right "secured by the Constitution and laws."'  *Id*. at 140.  The High Court further noted "a public official is liable under *§ 1983* only "if he causes the plaintiff to be subjected to deprivation of his constitutional rights."' (quoting from the lower court of appeals).  The Court chided the Fifth Circuit stating, "Indeed, nowhere in its opinion does the Court of Appeals specifically identify the constitutional rights allegedly infringed in this case." *Id*. at 142.  The Court concluded that since the plaintiff was booked and held pursuant to a valid order, there was no constitutional violation even though perhaps state law could have been implicated or that perhaps lack of due care may have occurred.

In this case, Plaintiffs claim that various state laws protecting the records of Juveniles who commit crimes have been violated by some Weber County booking officer, even though it is undisputed that the parents brought their son to the Jail to be booked, pursuant to a lawful court order.  However. just as in *Baker*, Plaintiffs' alleged state law violations cannot support an alleged violation of the Fourteenth Amendment.

> **A.    The U.S. Constitution does not protect citizens against government disclosures of arrest records, judicial proceedings, and police reports.**

Plaintiffs' § 1983 Cause of Action does not support a cognizable claim of relief because it is based on an alleged privacy right that does not exist under federal law.  While the United States

4

Constitution generally provides a right to privacy from governmental intrusion, "government disclosures of arrest records, judicial proceedings, and information contained in police reports, do not implicate the right to privacy." *Nilson v. Layton City*, 45 F.3d 369, 372 (10th Cir. 1989) (*citing Paul v. Davis*, 424 U.S. 693, (1976); *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 492 (1975); and *Scheetz v. The Morning Call, Inc.*, 946 F.2d 202, 207 (3rd Cir. 1991)).

Here, Weber County booking officers mistakenly uploaded arrest records—a mugshot and a description of the crimes for which I.F. was arrested – to an internet webpage of which the local news media had access. (Compl. ¶¶ 23-27). The information published by the newspaper is a record of a judicial proceeding, since the mugshot and fingerprinting were done pursuant to a juvenile court order. (Compl. ¶¶ 11, 18).

The United States Supreme Court, ruling on the privacy of arrest information, has declined to make the Constitution a "font of tort law" to be used when state laws already exist to redress actionable wrongs. *Paul v. Davis*, 424 U.S. 693, 694 (1976). The decision in *Paul* supports limiting the constitutional right to privacy to fundamental rights (e.g., matters relating to marriage, procreation, contraception, family relationships, child rearing, and education). Not limiting the constitutional privacy right in this way "would seem almost necessarily to result in every legally cognizable injury which may have been inflicted by a state official acting under 'color of law' establishing a violation of the Fourteenth Amendment." *Id.* at 699. Instead, the Supreme Court has carefully avoided creating a broad, fundamental privacy right, noting that general individual privacy rights are issues that should be "left largely to the law of the individual States." *Katz v. United States*, 389 U.S. 347, 351 (1967).

State laws and/or state court orders that protect certain court records (e.g., expunged records, juvenile records) do not create a federal constitutional right to privacy for those records. "An expungement order does not privatize criminal activity. While it removes a particular arrest and/or conviction from an individual's criminal record, the underlying object of expungement remains public." *Nilson,* 45 F.3d at 372. And, "[w]hile state statutes and regulations may inform our judgement regarding the scope of constitutional rights, they 'fall far short of the kind of proof necessary' to establish a reasonable expectation of privacy. Mere allegations that an official failed to abide by state law will not suffice to state a constitutional claim." *Id.* (quoting *Flanagan v. Munger,* 890 F.2d 1557, 1571 (10th Cir. 1989)).

The Sixth Circuit may have the clearest expression of the law regarding juvenile records. "In applying *Davis*, we have held that 'there is no constitutional right to privacy in one's criminal record,' and that juveniles do not have a 'constitutional right to nondisclosure of juvenile court records,' 'the Constitution does not encompass a general right to nondisclosure of private information,' we reasoned in *DeSanti*, leaving most privacy-rights protection 'to the states or the legislative process,'" *Bailey v. City of Port Huron,* 507 F.3d 364, 367-68 (6th Cir. 2007) (*quoting Cline v. Rogers,* 87 F.3d 176, 179 (6th Cir. 1996), and *J.P. v. DeSanti,* 653 F.2d at 1088, 1090-1091 (6th Cir. 1981). So, even if Weber County violated state law by releasing information it collected pursuant to a juvenile court order, that infringement does not trigger a constitutional violation, or any other federally protected right. And without a federally protected right, Plaintiff cannot bring a cause of action under 42 U.S.C. § 1983.

Plaintiffs make several privacy-related arguments about the inaccuracy of I.F.'s published booking information. (Compl. ¶¶ 49, 51-52, and 54). Information accuracy, however, is not an

element of a constitutional right to privacy claim. "Simply put, falsity is not an element of an invasion of privacy claim under § 1983." *Gallo-Loeks v. Reynolds*, 34 Fed. Appx. 644, 648 (10th Cir. 2002). In fact, "It is irrelevant to a constitutional privacy analysis whether these allegations are true or false; 'the disclosed information itself must warrant constitutional protection.'" *Id.*, quoting *Stidham v. Peace Officer Standards & Training*, 265 F.3d 1144, 1155 (10th Cir. 2001). Since falsity is not relevant to a constitutional privacy claim, the accuracy of the information published here will not support a claim under *§ 1983*.

One reason a person does not have a right to privacy for arrest records and court proceedings (even those a state may want to protect) is because many others already know the information surrounding those records. Disclosing an expunged record, for instance, does not offend the constitution because an arresting officer, "ha[s] first-hand knowledge of [the plaintiff's] arrest and conviction. The expungement order d[oes] not erase this knowledge." *Nilson*, 45 F.3d at 372.

Here, the Plaintiffs caused many people to know about I.F.'s crime by telling "close friends and family members" about it prior to the publication of I.F.'s booking information. (Compl. ¶13). Additionally, beyond the juvenile justice case, the incident was the subject of disciplinary proceedings at the school-district level. "The School District understood the nature of the proceedings" and "authorized administrators and parties" knew the details of those proceedings. (Compl. ¶ 14). Plaintiffs also caused employees at the Weber County Jail to know about the situation by presenting at the Jail for fingerprinting and booking, instead of taking advantage of the juvenile court's allowance that the fingerprinting could be done by the state of Utah's "Juvenile Justice Services," through which all the legal proceedings had taken place and whose records are

not "open to inspection by the general public." (Compl. ¶ 11, 12). It was the choice of the Juvenile and his parents to take their child to the Weber County Jail, where adults are commonly booked.

From a constitutional view, I.F.'s arrest and court records are public, not private records. Because Weber County uploaded arrest records, and/or records of a judicial proceedings, privacy for such records are not protected by the constitution. Therefore, I.F.'s federal constitutional rights were not violated and the First Cause of Action must be dismissed as to Weber County.

### B. Plaintiffs allege no facts showing Weber County prevented I.F.'s parents from making decisions concerning the care, custody, and control of I.F.

The Fourteenth Amendment protects the fundamental right of parents to make certain decisions concerning the care, custody, and control of their children. *Troxel v. Granville*, 530 U.S. 57 (2000). Here, Plaintiffs incorrectly allege that Weber County has interfered with their "right to the raising and rearing of the minor child without state intervention." (Compl. ¶ 48). As a matter of law, Weber County officials took no action that could have possibly deprived the Plaintiff Parents of their right to raise their child.

In this case, although alleging parental interference, Plaintiffs admit Weber County officials supported the Plaintiffs' parenting decisions. County workers acquiesced to the parents when they presented I.F. (along with a valid court order) at the Weber County Jail for booking. (Compl. ¶¶ 15-18). Support from county workers came despite the unusual nature of the parents' request to have I.F. booked at the adult jail instead of fingerprinted at a juvenile facility. The state juvenile court allowed a 120-day window for I.F. to complete the booking process and specifically mentioned the Utah Division of Juvenile Justice Services at the Weber County Juvenile Center as an option for fingerprinting. (Compl. ¶¶ 10-11, 12, 15-18). Additionally, once made aware of the mugshot posting, Weber County workers immediately removed it from the county's website at the

request of the Parents. (Compl. ¶ 31). Weber County workers did not interfere with the parents' efforts to have the booking information removed from other websites outside Weber County's control or enroll I.F. in counseling to help him deal with depression. (Compl. ¶¶ 32, 36). Even if Plaintiffs did provide facts supporting a parental interference claim, parenting rights do not extend to control of the release of records not protected by the Fourteenth Amendment. The Plaintiffs, then, have not stated facts to support a valid parental interference claim under Section 1983 and the Due Process clause and their parental interference claim must be dismissed.

### C. Plaintiff I.F.'s parents lack standing to allege a violation of their own constitutional rights when the alleged injury happened to their child.

To the extent the Plaintiff Parents are arguing that their parental rights have been infringed because their child's privacy was compromised, they lack standing to do so. "[O]ne does not have standing to assert a violation of rights belonging to another, since the person entitled to a right is the only one who can be directly injured by its deprivation." *Doyle v. The Oklahoma Bar Ass'n, 998 F.2d 1559, 1566 (10th Cir. 2008)*. Because I.F. is the only person who holds I.F.'s right to privacy, I.F.'s parents can't claim an injury to themselves for a breach of I.F.'s privacy. "A federal court's jurisdiction therefore can be invoked only when ***the plaintiff himself*** has suffered 'some threatened or actual injury resulting from the putatively illegal action.'" *Warth v. Seldin, 422 U.S. 490, 499 (1975) emphasis added*. Because the parents lack standing to make a claim based on a violation of I.F.'s right to privacy, Plaintiffs' parental interference claim must be dismissed.

### II. Plaintiffs' State Law Claims Must be Dismissed as Required by State Law.

Plaintiffs' second, third, fourth, fourth (Plaintiffs have two Fourth Causes of Action) fifth, and sixth causes of action allege state tort law claims for defamation, false light, public disclosure of embarrassing private facts, intentional infliction of emotional distress, and breach

9

of fiduciary duty. (Compl. ¶¶ 57-73). However, Plaintiffs cannot recover under these claims because they are barred by the Governmental Immunity Act of Utah and because Plaintiff failed to file an undertaking and a notice of claim as required by state statute.

### A. Plaintiffs Failed to Serve a Notice of Claim before this Suit was Filed.

Plaintiffs failed to properly serve a notice of claim on Weber County as required by Utah Code Ann. § 63G-7-401 before bringing suit. Even if Plaintiffs had valid claims for violations of state law, they still must comply with procedural mandates prior to filing suit. Failure to strictly comply with notice of claim requirements mandates dismissal of all state claims against Weber County and its employees. *See Madsen v. Borthick*, 769 P.2d 245, 249-50 (Utah 1988) *(holding that notice is required regardless of whether the suit is against the governmental entity or its employees and is a jurisdictional requirement to filing suit). See also Jensen v. Reeves*, 45 F. Supp. 2d 1265 (D. Utah 1999). Since they failed to file a notice of claim, this Court lacks subject matter jurisdiction over the state law claims and they must be dismissed.

### B. Plaintiff's State Law Claims are Barred by Governmental Immunity.

Even if Weber County could be liable to Plaintiffs' for alleged negligent actions, it is shielded by governmental immunity. The Governmental Immunity Act of Utah provides immunity from suit to all governmental entities for any injury that results from the exercise of a governmental function. *See* Utah Code Ann. § 63G-7-201(1).

There is a three-step analysis for determining whether a governmental entity is entitled to immunity under the Governmental Immunity Act of Utah. To determine whether immunity exists for a particular activity, a court must establish: (1) whether the activity is a governmental function for which blanket immunity has been granted; (2) if the activity is an immunized

governmental function, whether blanket immunity is waived in another section of the Act; and (3) if immunity has been waived, whether there is an exception to the waiver that would result in the retention of immunity despite the waiver. *Ledfors v. Emery County School District*, 849 P.2d 1162, 1164.

First, when Weber County operates a county jail, books persons pursuant to court orders, and works with the media and public to distribute arrest information, it is performing governmental functions. Utah Code § 63G-7-101(2)(a) states that the waivers and retentions of immunity apply to "all functions of government, no matter how labeled." Governmental function is statutorily defined as "each activity, undertaking, or operation of a governmental entity," and includes "a governmental entity's failure to act." Utah Code Ann. § 63G-7-102(5). Weber County's actions here are governmental functions under Utah law, and as such have been granted blanket immunity because they relate to the administration of the County Jail.

Second, the Governmental Immunity Act of Utah does not provide a waiver to blanket immunity in this instance. Valid waivers exist for things such as: contractual damages, property damages, water rights violations, injuries from unsafe structures or thoroughfares, improper liens, governmental takings, attorney's fee arguments, and certain employment disputes. See Utah Code Ann. § 63G-7-301. Since Plaintiffs' claims do not arise from any action that has a wavier under the Governmental Immunity Act of Utah, immunity is not waived.

Third, even if immunity was waived, there are still applicable exceptions to any such waiver. For example, examining the code shows that when "a negligent act or omission" is alleged, there are specific exceptions to the waiver of immunity. One such exception is if, as Plaintiffs allege here, the injury arises from "infliction of mental anguish, or violation of civil

rights." *See* Utah Code Ann. § 63G-7-201(4)(b).

Because Plaintiffs' claim against Weber County expressly arises out of a governmental function, and immunity is not waived, their claim is barred by the Governmental Immunity Act of Utah and must be dismissed with prejudice as a matter of law.

### C. Plaintiff failed to file an undertaking as required by Utah Code § 63G-7-601.

Plaintiff also did not file an undertaking as a necessary prerequisite to suit. Utah Code Ann. § 63G-7-601 (2016) requires all plaintiffs to file an undertaking in a sum fixed by the Court that is not less than $300 when bringing suit against a governmental entity and its employees under state law. The purpose of this undertaking is to provide security for paying taxable costs in the event Plaintiffs failed in their claims against a governmental entity. Appellate courts have ruled that a plaintiff must file an undertaking contemporaneously with the complaint to be timely under previously codified sections. *See Rippstein v. City of Provo*, 929 F.2d 576 (10th Cir. 1991).

In this case, the Complaint was filed on about August 21, 2017, without an undertaking or the required official notice of undertaking as required by the statute. Utah Code Ann. § 63-7-601(2) (2016), requires a plaintiff to not only file "not less than $300" as an undertaking, but also they must file it "conditioned upon payment by the plaintiff of taxable costs incurred by the governmental entity in the action if the plaintiff fails to prosecute the action or fails to recover judgment." *See* Utah Code Ann. § 63G-7-601(2)(b) (2016). Plaintiff did not even attempt to comply with the act.

"Strict compliance" with all provisions of the Utah Governmental Immunity Act is mandatory when suing a government employee or agency. *See Hall v. Utah State Department of Corrections*, 24 P.3d 958 (Utah 2001). Plaintiff's failure to strictly comply with the notice of filing

the undertaking is an independent failure to comply with the Act, requiring dismissal of state claims. Plaintiff may not cure this undertaking defect after the suit was filed. Therefore, all of Plaintiff's state claims may be dismissed on this basis as well.

### D. Plaintiffs failed to file a bond for attorney fees as required by Utah Code § 78B-3-104.

Utah Code Ann. § 78B-3-104 (2016) requires a plaintiff to file a sufficiently large bond to guarantee payment of all costs, including "a reasonable attorney's fee" as a "condition precedent" to filing suit against any person charged with the enforcement of criminal laws in this state. This statute is not part of the government immunity act, but it provides that a court should award attorney fees when a plaintiff sues a law enforcement officer and fails to prevail in his claims. This is a unique statute that only applies to suits against law enforcement officers and agencies under state law. The scope of this statute is not limited by the nature of the claim in that the focus is solely upon the identity of the defendant officer, regardless of the type of suit.

In this case, Plaintiffs are suing Weber County for actions taking by its Correctional Deputies in the County Jail, yet Plaintiffs failed to file a bond when their Complaint was filed. The bond must be sufficiently large to cover all attorney fees and costs incurred by Defendants in defending against the claims. However, Plaintiffs completely failed to file a bond for attorney fees in any amount. Such a failure requires dismissal of all state law claims as a matter of law. *See Kiesel v. Dist. Court of Sixth Judicial Dist.*, 84 P.2d 782 (Utah 1938). Mandatory compliance with this act is constitutional. *Snyder v. Cook*, 688 P.2d 496 (Utah 1984). Therefore, failure to comply with this law requires dismissal of all state law claims as to all defendants. In addition, the Court should award attorney fees as required by this statute to the Defendants.

E.     **A statutory violation does not automatically create a common law cause of action.**

Breaking a state law does not inevitably create civil liability. The Tenth Circuit Court of Appeals has noted that "the question of implication of private remedies is now viewed as a strict question of 'statutory construction' to determine 'whether [a legislative body] intended to create the private right of action asserted.'" *Rawson v. Sears, Roebuck & Co.*, 822 F.2d 908, 921 (10th Cir. 2008) quoting *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1978). Here, Plaintiffs allege that a violation of Utah Code 78A-6-209, which governs juvenile records and seeks to keep them private in certain circumstances. However, Plaintiffs have not pointed to any part of Section 209 that suggests the Utah State Legislature "intended to create" civil liability for violations and there is no explicit language in Section 209 allowing for civil liability. Because Plaintiffs haven't shown how the "statutory construction" of Section 209 shows the legislature's intent to create the types of actions they are bringing, their state law claims should be dismissed. Furthermore, there is no reason that monetary damage claims would not be prevented by the Governmental Immunity Act, even if a cause of action existed under this state statute.

**WHEREFORE:**  The Court should grant Defendant Weber County's Motion to Dismiss and Plaintiff should be ordered to pay Defendant's attorney fees and costs under 42 U.S.C. § 1988 and Utah Code § 78B-3-104 for state law claims.

Dated this 30th day of October, 2017.

/s/ *Frank D. Mylar*

Frank D. Mylar
Attorney for Defendant Weber County