Brian K. Jackson (15296)
BRIAN K. JACKSON, LLC
341 S. Main St. Suite 500
Salt Lake City, Utah 84111
Phone: (801) 441-8922
Fax: (801) 534-1948
brianj@bjacksonlaw.com

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| In Re Interest of I.F. a minor child; Sherrie and Michael Fazzio,<br><br>          Plaintiffs,<br><br>v.<br><br>The Standard Examiner.,<br>Sandusky Newspaper Inc.,<br>Weber County,<br>Records Finder,<br>          Defendants. | **OPPOSITION TO THE STANDARD EXAMINER'S AND SANDUSKY NEWSPAPER Inc., 12(b)(6) MOTION TO DISMISS**<br><br>Civil No.: 1:17-cv-00132-RJS<br><br>Judge Robert J. Shelby<br><br>Magistrate Dustin B. Pead |

Come now, I.F. a minor child, Sherrie and Michael Fazzio, Plaintiffs by and through their

attorney of record, Brian K. Jackson of Brian K. Jackson, LLC in the United States District Court

Northern Division, State of Utah before the Honorable Robert J. Shelby and Dustin B. Pead and

hereby response in opposition to The Standard Examiner and Sandusky Newspaper Inc.'s

12(b)(6) motion in the following manner and request that the court deny Weber County's motion

based on the following:

Plaintiff's Response  to The Standard Examiner
and Sandusky Newspaper Inc.
12(b)6 Motion to Dismiss
1:17-cv-00132-RJS-DBP 1

## LEGAL ISSUES

I.   **The first amendment is not applicable in this matter. The first amendment does grant absolute immunity and protect claims of defamation or false light from private actions. The first amendment only protects the abridgement of speech from state action and gives a heightened burden of proof in civil actions for public officials and public figures who bring a defamation suit.**

II.   **The privilege that Defendants are claiming and protections under the first amendment stem from Utah Code Section 45-2-3(4) of which Defendants have omitted an important element to which they base their defense and is in referenced to privileged information regarding statements or a complaint to a public official which did not occur in this case, mere allegations of criminal misconduct, false factual publications, the civil nature of juvenile proceedings are also not protected under the statute.**

III.   **Plaintiffs have adequately pleaded intentional and extreme and outrageous behavior in their complaint.**

IV.   **Plaintiffs properly pleaded a cause of action under Utah law for slander per se and does not have to plead negligence as he was not a "limited purpose public figure"**

V.   **Plaintiff properly stated a claim for false light under the applicable standard and Plaintiff properly pleaded negligence.**

## INTRODUCTION

The bill of rights and the first amendment protects private individuals from government intrusion not against private individuals from common law causes of action. Plaintiffs alleged in their complaint that Defendants, Sandusky Newspaper and the Standard Examiner posted false factual information regarding I.F. a minor child when he went to the adult detention center for fingerprinting after resolving his juvenile proceedings with the Weber County Juvenile Court. Plaintiff's alleged the information they posted claimed he had just been charged, jailed and booked on crimes and that he was innocent until proven guilty in the Weber County Adult

Plaintiff's Response to The Standard Examiner
and Sandusky Newspaper Inc.
12(b)6 Motion to Dismiss
1:17-cv-00132-RJS-DBP 2

detention center.

Defendants allege in their motion to dismiss pursuant Rule 12(b)(6) of the Federal Rules of Civil Procedure that the matter should be dismissed because they are protected under the first amendment and statutory provisions wherein they are privileged from posting such information.

However, the first amendment and other statutory privileges does not protect defendants from private causes of action under common law nor does it create and absolute bar from posting false information regarding a private individual. The first amendment and the state constitution on freedom of speech on the contrary allows individuals to bring actions for slander and libel. Plaintiff, is alleging that what was published was false and as such, Defendant's claims to the first amendment privilege are unwarranted and their claims in their should be dismissed the only defense in such a case like this is truth of the publication. Defendant cites many cases attempting to prove a first amendment protection. Those cases cited involve state action infringement of the first amendment, such as gag orders and prior restraint laws and an analysis of the 14th and 1st amendment for strict scrutiny on a state law. Those cases are not applicable in this matter as there is no state action from a common law cause of action from private Plaintiffs.

Defendant also argues privilege pursuant Utah Code Section 45-2-3(4). Defendant omitted an important part of that statute as it relates to claims of defamation by public officials which demonstrates the statute is echoing the language of *New York Times Co. v. Sullivan* which gave a heightened standard to public officials in slander and libel actions with the need to prove actual malice. As a result of this omission, Defendant, failed to properly plead this defense in their motion. Also, since I.F. is a minor child there is no way the facts can infer he is a public official and Defendants made no argument that he is a public official.

Plaintiff's Response  to The Standard Examiner
and Sandusky Newspaper Inc.
12(b)6 Motion to Dismiss
1:17-cv-00132-RJS-DBP 3

Moreover, the statute is not applicable because this action does not involve official criminal charges, it involves mere allegations of criminal charges that Plaintiffs maintain are false charges which the statute does not protect. This case also does not involve criminal charges of which a warrant was issued and an arrest was made under the language of the statute. Given the nature of juvenile proceedings and that Plaintiffs are alleging the charges are false pursuant to Utah law, it is impossible to claim that this matter involved criminal proceedings of which an arrest and warrant was issued that would warrant a dismissal. The statute also does not protect false factual statements, it only protects false commentary and Plaintiffs are alleging false factual statements in this case so the state again would not have any applicability.

Defendants also claim that the defamation claim is incomplete because it has failed to show negligence, however, that is not a necessary element for a case involving a private individual, and charges of criminal conduct, Plaintiff only needs to show that the information was published and that it was defamatory under slander per se regarding publication of criminal conduct malice and or fault and damages are implied regarding a claim from a private individual.

Defendants also claim that Plaintiff has failed to show negligence in their false light claim and Plaintiff maintains a showing of negligence is adequately pleaded. Also, Plaintiff never pleaded strict liability for false light as Defendant maintains.

## FACTUAL SUMMARY

This case involves an action that I.F. a minor child brought through his legal guardians and for actions brought by the legal guardians regarding criminal charges that I.F. had resolved prior. Information was posted, as well as his mugshot, as if I.F. had adult criminal charges pending against him and that he was booked and jailed in the Weber County Adult Detention

Plaintiff's Response to The Standard Examiner
and Sandusky Newspaper Inc.
12(b)6 Motion to Dismiss
1:17-cv-00132-RJS-DBP 4

Center on those charges on April 10th, 2017.  In Plaintiff's complaint, Plaintiff alleged among other things, the following facts with the corresponding paragraph numbers in the complaint:

This is the first time I.F. had ever been in any kind of trouble and the legal guardians and parents of I.F. decided to handle the matter privately. (*Complaint at 13*)

The legal proceedings, charges, history and court documents with I.F. through the Weber County Juvenile Center were not open to inspection by the general public pursuant to Utah Code 78A-6-209 and the judge that presided over the matter had not consented to any dissemination of the minor child's information to the general public. As well as under Utah Code Ann. 78A-6-1206 in regards to liability dealing with a youth. (*Complaint at 12*)

On Monday, April 10th, I.F. and his mother attended a legal proceeding with the Juvenile Court that ultimately resolved the issues. *(Complaint at 10)*

Part of the resolution included I.F. to get fingerprinted by an employee and Juvenile Justice Services or local law enforcement with 120 days as ordered by the Juvenile Court. *(Complaint at 11)*

On ... April 10th, I.F. went to the Weber County Adult Detention center operated and controlled by Weber County and the Weber County Sheriff's office for fingerprinting.

As a result, the Weber County detention center cleared the booking area of all adults. There the booking officer asked if I.F.'s mother was the legal guardian of the minor child of which I.F.'s mother affirmed and handed the booking officer the information regarding the minor child. *(Complaint at 17)*

The booking officer had a copy of the order from the judge indicating that two of the three charges were dropped and the other two were resolved. *(Complaint at 18)*

Plaintiff's Response  to The Standard Examiner
and Sandusky Newspaper Inc.
12(b)6 Motion to Dismiss
1:17-cv-00132-RJS-DBP 5

The following night, on Tuesday, April 11th, 2017, I.F. received a social media message from two different friends with his full name, three adult criminal charges and his picture attached. *(Complaint at 19)*

The information was found on the local Standard Examiner newspaper on their section of the local website called "Mugshots." *(Complaint at 20)*

The picture also had the stamp which included: "Weber County Sheriff's Office" and below the picture was attached the phrase, "Jailing on: 04/10/17" as well as the phrase, "Booked in Jail" indicating that the individual had been booked into the County Jail and either was in jail or spent time in jail and if they were no longer in jail, that they had been released through a bond amount or that a judge ordered that they were released on their own recognizance. *(Complaint at 23)*

A statement on the website also states that "Those appearing here have not been convicted of the arrest charge and are presumed innocent" indicating that I.F. still had pending charges against him at that time. *(Complaint at 24)*

Two of the charges that were attached to I.F. had been dropped that day and was no longer facing those charges. Also, the charges for minor children are civil in nature and not criminal charges. *(Complaint at 27)*

One of the charges on the website also included the phrase after the charge, "by a minor." *(Complaint at 25)*

The Weber County Sheriff's Office had implemented a policy with the use of software that disseminates recent bookings with the Weber County Sheriff's Office to various news sources for their use. The implementation of this software and this policy of dissemination of

Plaintiff's Response  to The Standard Examiner
and Sandusky Newspaper Inc.
12(b)6 Motion to Dismiss
1:17-cv-00132-RJS-DBP 6

information to new sources which was approved by Weber County and the Sheriff's is what led to the dissemination of this court-protected information without the Juvenile Judge's prior consent of disseminating this information.  *(Complaint at 29)*

The Weber County Sheriff's Office also has a website where they publish recent bookings of individuals into the Adult Detention Center and I.F. was included on that website. *(Complaint at 30)*

The Fazzio's contacted the Standard Examiner about the situation in the early morning on April 11th, 2017. The information stayed up all day as of 4 PM. The picture was taken down as of 10 PM that night but the information remained. *(Complaint at 32)*

At his own High School, many of I.F.'s classmates found out about the mugshot and was subject to teasing, bullying, mocking and heckling at his school which has resulted in I.F.'s strong negative feelings of self-worth. I.F. is currently attending counseling these issues.

Under the false light allegation Plaintiff pleaded, "And inferring that at that time, he was processed for new charges brought against him, which instead he had resolved the day before in Juvenile Court." *(Complaint at 34)*

**In Plaintiff's cause of action for defamation of Character, Plaintiff pleaded the following:**

For publishing unprivileged and unlawfully obtained information that was judicially sealed and protected and was not open to the general public without prior consent of the juvenile court regarding the identity of I.F., his countenance and image through photograph and the charges that were used in the Juvenile proceeding on each defendant's website respectfully. (Complaint at 57)

The information of which was false as I.F. at that time had no legal charges pending

Plaintiff's Response  to The Standard Examiner
and Sandusky Newspaper Inc.
12(b)6 Motion to Dismiss
1:17-cv-00132-RJS-DBP 7

against him. (Complaint at 58)

He had no legal adult criminal charges pending against him or any charges pending from

the state. *Id at a.*

He had not been booked into the adult detention center and was only there for

fingerprinting as ordered by the court.  *Id at b.*

He had not served time in the Adult Detention Center for the proceedings and he was not

out on bail for his charges nor was he released by a judge on his own recognize on these charges.

*Id at c.*

One of the had been dropped prior to the dissemination of the information and

the others had been resolved. *Id at d.*

Despite this, the Defendant's published information indicating that I.F. had been booked

for those criminal charges brought by the Weber County Sheriff's Adult Detention Center and

that those criminal charges were pending against him. *Id at e.*

For failing to cite the distinction to the general public that I.F. was a minor child and that

he had Juvenile civil proceedings brought against him and not adult criminal proceedings. *(see*

*Utah Code Ann. 78A-6-116 (1) and (2) Minor's cases considered civil proceedings --*

*Adjudication of jurisdiction by juvenile court not conviction of crime -- Exceptions -- Minor not*

*to be charged with crime -- Exception -- Traffic violation cases -- Abstracts to Department of*

*Public Safety)). Id at f.*

**For false light Plaintiff included the following (Plaintiffs did not plead strict liability**
**in this claim):**

For creating a publicity which placed I.F. in a false light in the public eye. (Complaint at

64). When he was placed onto the adult booking page, indicating false information that I.F. was

Plaintiff's Response  to The Standard Examiner
and Sandusky Newspaper Inc.
12(b)6 Motion to Dismiss
1:17-cv-00132-RJS-DBP 8

arrested and booked into an adult detention center on April 10th. Id at i. *Juveniles cannot be placed in an adult detention center without a prior court order (see Utah Code 78A-6-7-703(12) (Id at i1) "A minor 16 years of age or older whose conduct or condition endangers the safety or welfare of others in the juvenile detention facility may, by court order that specifies the reasons, be detained in another place of confinement considered appropriate by the court, including jail or other place of confinement for adults." (Id at i1)*

And inferring that at that time, he was processed for new charges brought against him, which instead he had resolved the day before in Juvenile Court. *(As already noted, Juvenile proceedings for state and federal criminal statutory violations are not criminal proceedings, they are civil proceedings (see Utah Code Ann. 78A-6-116 (1) and (2)). (Id at ii)* Which by natural consequence caused actual damages. *(Complaint at 61)* Of which defendants should be found strictly liable. *(Complaint at 62)*

Thereafter, Sandusky and The Standard Examiner filed a motion to dismiss for failure to state a claim.

## LEGAL ARGUMENT

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the … claim is and the grounds upon which it rests," *Conley* v. *Gibson*, 355 U. S. 41, 47. While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, it only needs to show "plausibility." *ibid.,* … "Asking for plausible grounds does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement. The need at the

Plaintiff's Response  to The Standard Examiner
and Sandusky Newspaper Inc.
12(b)6 Motion to Dismiss
1:17-cv-00132-RJS-DBP 9

pleading stage for allegations plausibly suggesting (not merely consistent with) agreement reflects Rule 8(a)(2)'s threshold requirement that the "plain statement" possess enough heft to "show that the pleader is entitled to relief." *Bell Atlantic Corp. v. Twombly* 550 U.S. 544 (2007).

As a procedural matter, courts are "reluctant to dismiss complaints based on affirmative defenses at the pleading stage and before any discovery has been conducted." Generally, a court may grant a motion to dismiss on the basis of an affirmative defense "if the facts conclusively establish the defense as a matter of law."  A motion to dismiss will be granted only if "the face of the complaint demonstrates that relief is barred by an affirmative defense" and "the plaintiff's own allegations show that a defense exists that legally defeats the claim for relief." *see Tyson v. Assa Abloy Door Group, LLC,* Case No. 2:16-cv-02143-STA-cgc (2016).

I.     **The first amendment is not applicable in this matter. The first amendment does grant absolute immunity and protect claims of defamation or false light from private actions. The first amendment only protects the abridgement of speech from state action and gives a heightened burden of proof in civil actions for public officials and public figures who bring a defamation suit.**

       a.     **There are no applicable state or constitutional protections regarding a bar for defamation of character of a private individual in this case and the first amendment does not protect or bar libel and slander claims.**

*In American Bush v. City of South Salt Lake*, 140 P.3d (2006), the Utah Supreme Court interpreted and compared the state's freedom of speech constitutional provision with the federal constitutional provisions under libel, slander and public indecency. The court found that the first amendment was analogous to the federal provisions of the federal constitution  and in stating that the "United States Supreme Court in decisions contemporaneous to the drafting of the Utah Constitution has reflected this view in dicta." *See Robertson v. Baldwin*, 165 U.S. 275, 281, 17 S.Ct. 326, 41 L.Ed. 715 (1897) ("Thus, the freedom of speech and of the press (art. I) does not

Plaintiff's Response  to The Standard Examiner
and Sandusky Newspaper Inc.
12(b)6 Motion to Dismiss
1:17-cv-00132-RJS-DBP 10

permit the publication of libels, blasphemous or indecent articles, or other publications injurious

to public morals or private reputation."); *American Bush v. City of South Salt Lake*, 140 P.3d at

1251. The court in its finding specifically cited the floor statement of Thomas Cooley at the

constitutional convention of the United States and noted that the freedom of the press signifies:

> The liberty to utter and publish whatever the citizen may choose, and to be protected
> against legal censure and punishment in so doing, *provided* the publication is not so far
> injurious to public morals or to private reputation as to be condemned by the
> common-law standards, by which defamatory publications were judged when this
> freedom was thus made a constitutional right.... Blasphemous and indecent publications,
> and the exhibition of indecent pictures and images, were always punishable at the
> common law ....

*Id.* (Citing Thomas M. Cooley, *The General Principles of Constitutional Law in the United*

*States of America* 285-86 (2d ed. 1891) "While, in this passage, Cooley specifically refers to the

freedom of the press clause in the United States Constitution, he elsewhere makes the same

observation of the freedom of speech provisions found in state constitutions." *Cooley,*

*Constitutional Limitations, supra* ¶ 13, at 422, emphasis added))[1]

    The one case that Defendants cite in their motion that has attenuance to this private action

is the case  of *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964). The case of  *New York*

*Times Co. v. Sullivan* created a different standard of proof of liability for slander with public

officials. With public officials, the court found that given their fame and notoriety and thrusting

himself into the public spotlight that they as a result would have to prove actual malice on top of

publication. In light of that, the court in *New York Times Co. v. Sullivan* held that

> The constitutional guarantees require, we think, a federal rule that prohibits a public
> official from recovering damages for a defamatory falsehood relating to his official
> conduct unless he proves that the statement was made with 'actual malice' -- that is, with
> knowledge that it was false or with reckless disregard of whether it was false or not. An

---

[1] Defendant alleges that *Provo City Corp v. Willden*, 768 P. 2d 455, 456 (Utah 1989) gives the Utah free speech provision added protection. That case did not deal with libel and slander and privilege, that case dealt with the abridgement of free speech from state action from a city ordinance and is not applicable to this analysis.

Plaintiff's Response  to The Standard Examiner
and Sandusky Newspaper Inc.
12(b)6 Motion to Dismiss
1:17-cv-00132-RJS-DBP 11

oft-cited statement of a like rule, which has been adopted by a number of state courts. *New York Times Co. v. Sullivan.* 376 U.S. 254 at 280 (1964).

In *New York Times Co. v. Sullivan,* there is no finding that there is a bar to file claims for defamation of character and false information. There is only a heightened burden of proof to public figures and officials to further protect the media from state action and keep the government from imposing on what can and cannot be published but still maintaining the common law principle of remedy for false statements. It is based on the principles of fear of government reprisal against the media. Government officials and public figures have put themselves into the public domain and are subjects of conversation and scrutiny which inherently creates public conversation and debate. Public officials and public figures also have forums and access to mediums where they can rebut and respond to anything defamatory made. The law recognizes that private individuals do not have that forum which allows private individuals to still bring causes of action under slander and libel per se absent a showing of fault. [2]

The cases that Defendants cite in their brief are cases that deal with state intrusion on the first amendment and the abridgment of speech with state statutes or gag orders that criminalized or found contemptuous certain specific types of speech. The discussion and analysis on those cases in Defendant's brief have no applicability to the issues in this private action for libel and slander. Under libel and slander claims, the first amendment only protects truth. As a result, the first amendment bar that defendants are attempting to invoke is not a legally feasible reason or theory for this case to be dismissed based on what Plaintiff has alleged which is absent of state action. *(See The Standard Examiner's Brief at 9 - 15 up to subsection A)*

### b. The first amendment protects the free exchange of ideas involving true

---

[2] See, e.g., Monitor Patriot Co. v. Roy, 401 U.S. 265, 91 S.Ct. 621, 28 L.Ed.2d 35 (1971);   Ocala Star-Banner Co. v. Damron, 401 U.S. 295, 91 S.Ct. 628, 28 L.Ed.2d 57 (1971);   St. Amant v. Thompson, 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968);   Curtis Publ'g Co. v. Butts, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967);   Rosenblatt v. Baer, 383 U.S. 75, 86 S.Ct. 669, 15 L.Ed.2d 597 (1966);

Plaintiff's Response  to The Standard Examiner
and Sandusky Newspaper Inc.
12(b)6 Motion to Dismiss
1:17-cv-00132-RJS-DBP 12

**Statements and statements that do not injure the reputation of another individual in a defamation claim, as truth is a defense that can be raised but not a reason to dismiss on any immunity on a 12(b)(6) motion.**

As discussed above, the first amendment was created for the free exchange of ideas absent fear of reprisals of the government. There is no first amendment protection for false statements that damage a private individual's reputation. The only defense is "The Truth."

> It is true that in defamation actions, where the protected interest is personal reputation, the prevailing view is that truth is a defense; and the message of *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964); *Garrison v. Louisiana*, 379 U.S. 64 (1964); *Curtis Publishing Co. v. Butts,* 388 U.S. 130 (1967), and like cases is that the defense of truth is constitutionally required where the subject of the publication is a public official or public figure.

*Cox Broadcasting Corp. v. Cohn,* 420 U. S. 469 (1975) The only way the first amendment has a play in libel and slander claims are defenses and a heightened burden of proof if defendant can prove the individual was a public official or public figure which would increase the burden thereafter to actual malice. In this case, Plaintiffs are not contending they are public officials or public figures nor has Defendant claimed that Plaintiff's alleged they are public officials or public figures and as such.

The burden is on the Defendant to prove the opposite and truth which is not appropriate in a 12(b)(6) motion since Plaintiffs have properly alleged falsity of the published statements.

**c. Defendant cites cases in its brief cases that involve state action based on court gag orders and statutes that criminalized and abridged freedom of speech and found contemptuous for speech and causes of action brought for the violation of speech against the state which is not applicable in this matter.**

Defendant cited the following cases below to show first amendment protections which are not applicable in this matters as those cases involved state action infringement and abridgement on freedom of speech. This is what the constitution ultimately protects. Actions

Plaintiff's Response  to The Standard Examiner
and Sandusky Newspaper Inc.
12(b)6 Motion to Dismiss
1:17-cv-00132-RJS-DBP 13

against the state for first amendment violations from, they did not involve slander, libel and false light allegations from a private individual:

The case of *Oklahoma Pub. Co. v. District Court, 430 U.S. 308 (1977)* is not applicable because this case involved an action from the state on the media for violating an ambiguous court gag order that prohibited the truthful publication of the proceedings of a juvenile action that were open to the public. Additionally, this case and the claims did not regard a libel or slander claim.

*Smith v. Daily Mail Pub. Co., 443 U.S. 97 (1979)* also involved an action from the state against the media from a state statute that criminalized the publishing of truthful juvenile proceedings absent a court order. This matter deals with prior restraint on speech which the first amendment forbids, it did not involve a libel or slander claim or private action.

The case of *Bowly v. City of Uniontown Police Department,* 404 F.3d 783 (2005) was also an action from the state imposed on the media that involved the publication of a truthful statement and a statute that criminalized the disclosure of juvenile records.

The case of *Cox Broadcasting Corp. v. Cohn,* 420 U. S. 469 (1975) was an action from the state and a narrow holding that the state could not impose sanctions on *truthful* and the accurate publication of the name of a rape victim of a public record available for inspection "which was publicly revealed in connection with the prosecution of the crime." The case involved a first amendment constitutional question on state law that made it a misdemeanor to broadcast a victim's name and a cause of action for invasion of privacy in connection to the state law.

The case of *Best v. Berard*, 776 F. Supp.2d 752 (ND Ill. 2011) was again a look into violations of law that involved matters of public concern and the publishing of truthful

Plaintiff's Response  to The Standard Examiner
and Sandusky Newspaper Inc.
12(b)6 Motion to Dismiss
1:17-cv-00132-RJS-DBP 14

information. The court noted that "The First Amendment's core purposes … are implicated when the government – either directly or through a legal standard that imposes civil liability – 'imposes sanctions on the publication of truthful information of public concern.'"

The case of *Florida Star v. B.J.F.*, 491 U.S. 524 (1989)  was a private action suit for invasion of privacy and intentional infliction of emotional distress. The private suit claimed that the company had negligently violated a Florida statute that made it criminal to "'print, publish, or broadcast . . . in any instrument of mass communication' the name of the victim of a sexual offense.'" As a result, this case also involved state action for a statute that infringed free speech. The liability the newspaper was held under in the private action, involved criminal and civil liability for violating the state statute that imposed prior restraint on specific speech. The court narrowly held that the *state* cannot punish *lawfully obtained* and *truthful* information if it does not serve a state interest of the highest order. *Id.* at 541.[3]

As Defendants note in their brief  "*State action* to punish the publication of truthful information seldom can satisfy constitutional standards." *Daily Mail Publ'g,* 443 U.S. at 102, 99 S.Ct. 2667. This is what the cases above involved *state action* for the publication of *truthful* information. This case involves an allegation of false information with no state action and as such, Defendant's analysis and use of law in its motion in its brief misstates this cases are irrelevant to the allegations raised on Plaintiff's complaint.

Furthermore, if Defendants were able to make a claim for first amendment protection from state action against a private suit, that would make a chilling precedent for a right to

---

[3] In footnote 8, the majority noted that *unlawful* acquisition of information and whether it could be punished was not decided. The court also noted that a claim for libel and slander were not applicable in this holding with the cases their cited cases. *Id* at 533. (endorsing absolute defense of truth "where discussion of public affairs is concerned," but leaving unsettled the constitutional implications of truthfulness "in the discrete area of purely private libels")

Plaintiff's Response  to The Standard Examiner
and Sandusky Newspaper Inc.
12(b)6 Motion to Dismiss
1:17-cv-00132-RJS-DBP 15

recover for injuries for a private person made from that speech, especially dealing with libel and slander claiming that all speech is privileged from private civil actions as they are somehow state actors. As noted in footnote 3, the U.S. Supreme Court has never decided that question so claims of first amendment protections for libel, slander and false light are unwarranted. The first amendment does not protect false statements. Even public officials can bring suit for defamation without an absolute bar under the first amendment.

All of the cases involved causes of action for private actions or state actions under state laws that punished particularized types of speech. The state statute in this matter, namely, the libel and slander statute does not punish a particularized type of speech such as the name of a victim in a sexual assault case, court proceedings in a case that were open to the public, or other proceedings.

There is no state statute in this case. The policy in this case is state common law that allows private individuals to bring an action for punished defamatory remarks that lower to reputation of an individual absent a particularized type of publication. This is outside first amendment protections except for publications regarding public officials and Defendants have not raised a claim that the state common law cause of action for libel and slander per se violates their first amendment rights.

In short, there is no first amendment analysis necessary here because there is no state action alleged in the complaint that abridged the free speech for the posting of truthful information.

> **i. The argument that liability is not narrowly tailored to a state interest is inapplicable for a case involving a lawsuit from a private individual.**

Plaintiff's Response  to The Standard Examiner
and Sandusky Newspaper Inc.
12(b)6 Motion to Dismiss
1:17-cv-00132-RJS-DBP 16

Defendant also argues that liability is not narrowly tailored to serve a state interest. As noted in the cases above, this does not involve a state law or gag order that criminalized speech or any state action to make a determination if that state action was narrowly tailored. Defendant is referring to the analysis that courts must do when there is lawsuit against the state for infringing on a fundamental right through the 14th and 1st Amendment.

The court is to determine whether or not the state law is constitutional based on a strict scrutiny standard. There is no state law in question on this matter. Only common law for libel and slander which as noted in Section I of this brief, is not protected and this argument is irrelevant and unwarranted. [4] *(See The Standard Examiner's Brief at 9 - 15 up to subsection II).*

Here, Defendant has alleged what was published was false. Any analysis under private causes of action and the first amendment are not warranted and protections afforded above those outlined in *New York Times v. Sullivan* and what defendant asking for in this case*,* absolute immunity would also go beyond any protections that are warranted for claims of defamation and slander.

**II.    The privilege that defendant is claiming and protections under the first amendment stem from Utah Code Section 45-2-3(4) of which Defendant has omitted an important element to which they base their defense and is in referenced to privileged**

**information regarding statements or a complaint to a public official which did not occur in this case, mere allegations of criminal misconduct, false factual publications, the civil nature of juvenile proceedings are also not protected under the statute.**

The statute that Defendant cited in his brief states the following:

---

[4] Additionally, Defendant, in its brief points out that the first amendment is applicable because of the 14th Amendment of the Federal Constitution. The 14th amendment also would not apply in this case. In order to claim protection and redress from the 14th amendment, there must be state action from a deprivation of a right. Defendant in this matter does not make a claim of state action and Plaintiff is not a state actor so again, all claims for first amendment protections are not warranted..

Plaintiff's Response  to The Standard Examiner
and Sandusky Newspaper Inc.
12(b)6 Motion to Dismiss
1:17-cv-00132-RJS-DBP 17

A privileged publication or broadcast which shall not be considered as libelous or slanderous per se, is one made:

> By a fair and true report, without malice, of a judicial, legislative, or other public official proceeding, or of anything said in the course thereof, or of a charge or complaint *made by any person to a public official,* upon which a warrant shall have been issued or an arrest made.

*(See Utah Code Ann. Section 45-2-3(4) omitted part of the statute by defendant is emphasized)*

This a defense that defendant can not attempt to raise in this case, which would  put a heightened burden on Plaintiff.  However, Plaintiffs do not need to put this statute in their complaint to state a claim for defamation or slander, they are not public officials and the published statements were not regarding a public official or complaints made concerning a public official. The only language that Defendants refer to for a defense claim is under the omitted statute language "of a charge or complaint made … upon which a warrant shall have been or an arrest made."

### i. Plaintiffs are not public officials nor were the officers at the adult detention center public officials

The omission of the language "made by any person to a public official" creates the language as to assume that any criminal charge involving any individual is qualified privileged. Defendants in their brief, omitted the language referencing a public official. This interpretation and omission, undermines the entire analysis that State and Federal courts have made in relation to the first amendment and creates a "rogue" state law that does now follow the underlying principles and guidelines of jurisprudence for libel and slander.  As already noted, the first amendment does not protect defamation and slander and only gives a heightened level of scrutiny to public officials.

*Official action* based upon a finding of probable cause is the basis for the application of this privilege. By setting the boundaries as it did, the Legislature

Plaintiff's Response  to The Standard Examiner
and Sandusky Newspaper Inc.
12(b)6 Motion to Dismiss
1:17-cv-00132-RJS-DBP 18

> must have intended that allegations of criminal conduct *not* buttressed by official action should not be included within the privilege. Indeed, allegations of criminal conduct, being particularly damaging to a reputation, have historically been treated as slanderous per se under the common law.

*Seegmiller v. KSL,* 626 P.2d 968, 978 (1981)(emphasis added). If the language that was omitted is inserted, then it is realized as *Seegmiller* recognizes, that all the statute is doing here is echoing the exception that the courts carved out in *New York Times Co. v. Sullivan,* regarding public officials and that actual malice must be shown regarding statements libelous and slanderous statements concerning a public official. This is also congruent with the earlier analysis that the free speech provisions under the state and federal constitution offer the same protections. It is also congruent that the statute at issue here was amended in 1975 after the *New York Times Co. v. Sullivan* ruling.

The Utah Supreme Court in *O'Connor v. Burningham*, 2007 UT 58, 165 P.3d 1214 (2007) went through and based parameters on what a public official was and found that they had misinterpreted that a police officer was a public official in a prior decision and found that a high school basketball coach was not a public official in their opinion they noted:

> A central maxim of these cases is that in the realm of defamation law all persons are not treated equally. Those who by choice or mishap acquire the status of a public official or public figure surrender a sizeable measure of their right to recover damages from those who defame them. Statements directed against public officials or public figures require proof that the speaker acted with actual malice and is thus more at "fault" than one whose defamatory statements were the product of a less malignant state of mind.

Id at ¶ 8. In this matter, I.F. is not a public official. He is a minor child who at this point in his life does not have the right to vote or run for public office, without that public official status, there is no way these charges could be "buttressed" by official action. (See *O'Connor v.*

Plaintiff's Response  to The Standard Examiner
and Sandusky Newspaper Inc.
12(b)6 Motion to Dismiss
1:17-cv-00132-RJS-DBP 19

*Burningham*, 165 P.3d at 1220).[5] Furthermore, since I.F. is alleging that he was there for fingerprinting from resolved charges prior and the only information that was given at that time was the resolved charges to an officer at the adult detention center, then this also did not involve a new charge or complaint or an arrest nor was the information published truthful. Additionally, even the official to whom information for fingerprinting was given is not a public official and there were no complaints concerning that officer or any public official regarding criminal misconduct alleged in the complaint.

Defendants are essentially arguing, with the omission of the language of the statute, that the statute gives heightened protection to the state and federal provisions on free speech where no court or legislature has defined or amended the constitution to have such protections. If the court was to grant Defendant's motion, it would be adding to the constitutional protections where publishing agencies are immune from defamation and libel on a private individual instead of a public official. This is not the correct interpretation. All the statute is doing is echoing the principles already outlined under *New York Times Co. v. Sullivan* related to published information regarding a public official which requires actual malice for such officials for recovery under libel and slander claims.

A minor child does not have the same forum as a public official to respond to a claim of criminal charges, the minor child was not a subject of public citizens for a heightened protection, a minor child is not the government attempting to quash the media from their public scrutiny. As a result, the interpretation of The Standard Examiner concerning does not meet the logical, historical and legal sense given the underlying purpose of what the first amendment is set to

---

[5] "This was indeed the implication of Madsen where we declined to hold that all police officers were public officials, but determined that a police officer who was involved in a line of duty shooting could, and did, become a public official. This proposition is wrong" (overturning the definition of public official in *Madsen v. United Television, Inc.*, 797 P.2d 1083 (Utah 1990))).

Plaintiff's Response  to The Standard Examiner
and Sandusky Newspaper Inc.
12(b)6 Motion to Dismiss
1:17-cv-00132-RJS-DBP 20

protect, namely, the shield from state action regarding public scrutiny. If the statute was to be

deemed, then that would implicate that defendants are privileged from defaming a defenseless

private minor child pursuant to libel and slander jurisprudence and that the minor child has to

prove malice to recover just as if he was a governor or representative of a state or the nation.

Their interpretation would create a shield from all published matters with or without

scrutiny and without state action and could essentially give individuals the power to slander and

defame private individuals regarding any criminal charges they may have had in the past.

### ii. Allegations of criminal conduct are not privileged and there were no officials charges of criminal conduct alleged in the complaint.

Additionally, allegations of criminal conduct are not privileged under the statute. In

*Russell v. Thomson Newspapers, Inc* the Utah Supreme Court noted,

> The concept of a qualified privilege to mere allegations of criminal conduct is
> impermissible.... [S]ince § 45-2-3(4) and § 45-2-10(3) limited the privilege to actual,
> official charges of criminal conduct, there is a clear implication that mere allegations of
> conduct which *might* be violative of the criminal law should not be construed to fall
> within the privilege. *Russell v. Thomson Newspapers, Inc.*, 842 P.2d 896 (1992).
> *(emphasis added)*

A juvenile proceeding with sealed records is not a public official proceeding and the

report made was not based off what occurred in any juvenile proceeding, it was based off what

occurred in the adult detention center which was also not a public proceeding with a public

official. As noted in the complaint, all adults had to be cleared when I.F. was fingerprinted.

There was no warrant or arrest made officially on April 10th, 2016. I.F was there for

fingerprinting. The Standard Examiner claimed he was jailed and booked and had adult criminal

proceedings pending without a judge making that determination prior. Weber County took the

information they posted down thereafter indicating that it was a mere allegation *and false*

Plaintiff's Response to The Standard Examiner
and Sandusky Newspaper Inc.
12(b)6 Motion to Dismiss
1:17-cv-00132-RJS-DBP 21

allegation.

Furthermore as to falsity, the entire nature of juvenile process under Utah law indicates that juvenile proceedings are not criminal proceedings.[6]

A minor may not be charged with a crime or convicted in any court except as provided in Sections 78A-6-701, 78A-6-702, and 78A-6-703, and in cases involving traffic violations. When a petition has been filed in the juvenile court, the minor may not later be subjected to criminal prosecution.

As such, the fact that a minor child cannot be charged with a criminal offense, cannot be detained in an adult detention center, cannot have a warrant for their arrest issued against them absent a court order and that the nature of the charges are classified as a protected record would further render any application of this statute moot in this case.

The report of the arrest was a false report that Plaintiffs alleged with the statements claiming that I.F. had been arrested under adult charges and was booked in the adult detention center on those pending charges. This was not an official arrest but was instead a mere allegations of an arrest of criminal misconduct which is not protected under the statute. This is also congruent with the finding in *Seegmiller* as to the applicability of the statute concluding that the facts of that case contained "no claim of any dereliction of duty by law enforcement officers." *Seegmiller v. KSL, Inc.,* 626 P.2d 968 (Utah 1981) *(This was before the court's finding in Madsen that law enforcement officers weren't public officials).*

Also, even if these were actual criminal adult charges, they are still just mere allegations

---

[6] *see Utah Code Ann. 78A-6-116 (1) and (2) Minor's cases considered civil proceedings -- Adjudication of jurisdiction by juvenile court not conviction of crime --  Minor not to be charged with crime)."*
*see also 78A-6-106.5, "a court may not issue a warrant of arrest for a minor for:a status offense; or an infraction. (b) If the minor is taken into custody or detention for a violent felony, as defined in Section, the officer shall, the school superintendent of the district in which the minor resides or attends. (i) The notice shall disclose only: (A) the name of the minor; Utah Code Page 18 (B) the offense for which the minor was taken into custody or detention. (ii) The notice shall be classified as a protected record under Section 63G-2-305 (c) A minor may not be admitted to detention unless the minor is detainable based on the guidelines or the minor has been brought to detention pursuant to a judicial order or division warrant pursuant to Section 62A-7-504."*
*see also 78A-6-113(8) (a) A child under 16 years of age may not be held in a jail, lockup, or other place for adult detention except as provided by Section 62A-7-201 or unless certified as an adult pursuant to Section 78A-6-703.*

Plaintiff's Response  to The Standard Examiner
and Sandusky Newspaper Inc.
12(b)6 Motion to Dismiss
1:17-cv-00132-RJS-DBP 22

because I.F. had not been officially charged through screening of the county attorney's office or

through a finding of probable cause with a state judge, without judicial action, these could not be

official proceedings and given that nothing was further done on the allegations, then there is no

claim to privilege here.

### iii. False assertion of facts are not privileged under the statute, only commentary of facts are privileged.

Also, under the fair comment privilege, the Utah Supreme Court also found that false

statements of facts cannot be protected and that the statute only protects comments on factual

statements. "Accordingly, it simply is not a protected 'comment,' but is a false assertion of fact

outside the scope of the fair comment privilege." *Russell v. Thomson Newspapers, Inc.*, 842 P.2d

at 903. As such, a false fact would also not be protected under the the privilege statute.[7]

### iv. Defendants Failed to plead an affirmative defense in their 12(b)(6) motion under the Utah privilege statute.

Additionally, since The Standard Examiner omitted an important portion of the statute in

their motion, specifically, "of a complaint made by any person to a public official" they also

failed to plead and make claim under their 12(b)(6) motion pursuant to rule 8(a)(2) of the Federal

Rules of Civil Procedure in their facial affirmative defense they raised which states that the

pleading must show, "a short and plain statement of the claim showing that the pleader is entitled

to relief."

Absent addressing that portion of the statute, Defendants cannot show that they are

entitled to relief in their pleading under their affirmative defense of privilege and failed to assert

and plead that it regarded a complaint by any person to a public official. They alleged that (1) it

---

[7] The first amendment and the common law protect debate and commentary, not false assertions of fact. (see *West v. Thompson Newspapers*, 872 P.2d 999, 1012 (1994).

Plaintiff's Response  to The Standard Examiner
and Sandusky Newspaper Inc.
12(b)6 Motion to Dismiss
1:17-cv-00132-RJS-DBP 23

was a report of a charge upon which an arrest was made with I.F.'s mugshot, (2) that it was a fair and true report and (3) that Plaintiff did not allege malice. *(Defendant's brief at 19, 20, 21)*

This is not the correct interpretation of the Utah Statute and federal and state precedent and any first amendment and privilege claims that defendant is asserting should be dismissed for failure to plead an affirmative defense in their motion.

**a. Plaintiff has alleged this was not lawfully obtained information, accurately reported information and a fair and true report of the fingerprinting proceedings on April 10th, 2017.**

**i. This was not a fair and true report of the proceedings which Plaintiff alleged.**

Plaintiffs claim The Standard Examiner published that I.F. was "jailed" and "booked" into an adult detention center with pending criminal charges when he was just there for fingerprinting is not a fair and accurate report. His juvenile proceedings were resolved with the court earlier that day.

Plaintiff in their complaint noted that the Standard Examiner and Weber County took the information down when they were notified by I.F.'s parents. This shows that both Defendants knew that the information published was not a fair and true report of any proceedings against the minor child. The whole reason Plaintiffs are bringing this action is *cruxed* on the fact that it wasn't a fair and true report of the proceedings.

Defendants hold out to claim that they fairly reported the report that was given them. That is not the standard or test. The report must be fair *and true* to the *proceedings* not to a report of the proceedings. The proceedings that occurred that day was I.F. being fingerprinted. If they would have reported that I.F. went to the adult detention center to be fingerprinted on his resolved juvenile proceedings on April 10th, 2017 that would have been a fair and true report.

Plaintiff's Response  to The Standard Examiner
and Sandusky Newspaper Inc.
12(b)6 Motion to Dismiss
1:17-cv-00132-RJS-DBP 24

If there were cub scouts that were fingerprinted or elementary kids or individuals looking to get a concealed weapons permit or a background check for a federal job or for applying to the military or to sit for the bar and it was thereafter reported that they were booked on new criminal charges then the report is not fair and it is not true.

Defendants cannot make a claim that they can rely on the report that was given them. Contrary to this assertion, as news reporters, they have a duty to properly investigate and fact-check and follow-up on the facts that are given them regarding a proceeding.

### ii. Plaintiff pleaded that the information was not lawfully obtained and was not a fair and true report of the proceedings.

Furthermore, the information was not lawfully obtained by defendants of which Plaintiff alleged. Plaintiff is alleging that Weber County acted under the color of the law and violated many of Plaintiff's rights when the information was falsely and unlawfully disseminated. Plaintiff alleged:

> The legal proceedings, charges, history and court documents with I.F. through the Weber County Juvenile Center were not open to inspection by the general public pursuant to Utah Code 78A-6-209 and the judge that presided over the matter had not consented to any dissemination of the minor child's information to the general public. As well as under
> Utah Code Ann. 78A-6-1206 in regards to liability dealing with a youth.

> On ... April 10th, I.F. went to the Weber County Adult Detention center operated and controlled by Weber County and the Weber County Sheriff's office for *fingerprinting*.

> As a result, the Weber County detention center cleared the booking area of all adults before booking I.F. There the booking officer asked if I.F.'s mother was the legal guardian of the minor child of which I.F.'s mother affirmed and handed the booking officer the information regarding the minor child. *(emphasis added)*

> In light of the above-referenced allegations in the complaint, it has been pleaded that it

Plaintiff's Response  to The Standard Examiner
and Sandusky Newspaper Inc.
12(b)6 Motion to Dismiss
1:17-cv-00132-RJS-DBP 25

was information that was not lawfully obtained and was not a fair and accurate report of the proceedings.

     **b.**    **Plaintiff has alleged malice in this complaint so even if the statute did apply, the complaint cannot be dismissed.**

Furthermore, even if the statute was in someway applicable, Plaintiff in their complaint have alleged malice through their claims of intentional infliction of emotional distress as discussed further in this brief. Intentional infliction of emotional distress has the same elements of actual malice, namely, 1) knowingly acting on alleged conduct or 2) exercising reckless disregard for the truth. As such, even if the statute was applicable and Plaintiff had to allege the statute in their complaint, there is enough evidence in the complaint inferred to the Plaintiff that wouldn't require this complaint to be dismissed on a failure to state a claim.

Even still, the courts have noted, "The actual malice standard apparently does not apply to private figure plaintiffs." *Russell v. Thomson Newspapers, Inc.*, 842 P.2d at 907. This again also further undermines the applicability of this statute in this instant case.

In light of the factual allegations raised, the pleadings show that the information was not lawfully obtained, it wasn't a fair and accurate report of the proceedings, there was no warrant or criminal charges issued to I.F. on April 10th, 2017, he is not a public official and defendant's claim for privilege further fails.

Even if the statute was applicable in this instant case, it is still an affirmative defense, and Plaintiffs cannot make a claim to dismiss this case under the defense with the facts alleged. If Defendants raised this defense and could prove the applicability of the statute on their defense, then the burden would shift to Plaintiff to show evidence of actual malice. It is not a defense that would require dismissal based on the fact alleged in the complaint.

Plaintiff's Response  to The Standard Examiner
and Sandusky Newspaper Inc.
12(b)6 Motion to Dismiss
1:17-cv-00132-RJS-DBP 26

In this case, there are concerns of the applicability of the statute in this case and that

Defendants have failed to allege and plead essential elements to the statute. Plaintiff also

contends that this statue isn't applicable in this matter as the private Plaintiffs do not have to

show actual malice on their libel and slander claims, that this case involves allegations of

criminal conduct and not official charges of criminal misconduct, that what was published were

false facts and not false commentary, that the information was not lawfully obtained, that it was

not a fair and accurate report of the proceedings and that what was published did not involve

actual criminal charges where an arrest was made and a warrant was issued given the nature of

juvenile proceedings and the falsity of the report and that there were no complaints made by any

person to a public official and that this case does not involve a public official or a public official

plaintiff. As such, Defendant's claim must fail as a matter of law.

## III.     Plaintiffs have adequately pleaded intentional and extreme and outrageous behavior in their complaint.

Defendant also claims that Plaintiff has not adequately pleaded a degree of fault and

extreme and outrageous behavior. The law states that the conduct must be "extreme in degree as

to go beyond all possible bounds of decency and to be regarded as atrocious and utterly

intolerable in a civilized community. *Amos v. Corp of Presiding Bishop*, 594 F. Supp. 791, 831

(D. Utah 1984). Defendant must also show "reckless disregard" of inflicting emotional distress

where any reasonable person would have known that such result would occur and that severe

emotional distress occurred as a result. *Rethereford v. AT&T Commc'ns of Mountain States, Inc.*,

844 P.2d 949, 970-71 (Utah 1992).

> It is conceivable that the mere publication of falsehoods concerning an individual could
> constitute extreme and outrageous conduct warranting a remedy for the ensuing
> emotional distress.

Plaintiff's Response  to The Standard Examiner
and Sandusky Newspaper Inc.
12(b)6 Motion to Dismiss
1:17-cv-00132-RJS-DBP 27

*Russell v. Thomson Newspapers, Inc.*, 842 P.2d at 907. In this case, it is alleged that Defendants had a section tab on the front page of their website for "Mugshots." Defendant is also in the business of reporting news. Based on applicable standards on the protection of juvenile information there is no question that the posting of the mugshot and charges of I.F. went beyond the possible bounds of decency. Also, I.F. claims that the charges are false. I.F. was not jailed or booked at the Weber County Detention Center or had pending criminal charges. I.F. alleges he was there for fingerprinting.  Many people go to detention centers for fingerprinting to receive concealed weapon permits, receive a background check, for a scouting or school trip ect. If it was reported that I.F. was there for fingerprinting that would mitigate some of the indecency, but it still involved posting information of a minor child. The detention center went through great lengths to prove his identity was protected absent posting charges on their website.

There was no court order from the juvenile judge to disseminate this information and the court proceedings were not open to the public. Minor children are also inherently susceptible mentally to the publishing of such information and the aftermath that I.F. claims in his complaint after the information was published demonstrates that. The charges noted, "of a minor child." This was the first time the minor child had ever gotten into any kind of trouble. Newspapers have the duty to investigate and fact-check their stories and determine whether or not the stories they post are "newsworthy." This was not a newsworthy story and there was no story attached to what they published.

The company, before posting this information to the website, should have known or inquired into why a minor child was booked and jailed in an adult detention center. The facts do not allege any inquiry. The purpose of the "Mugshots" section is through inference, essentially a

Plaintiff's Response  to The Standard Examiner
and Sandusky Newspaper Inc.
12(b)6 Motion to Dismiss
1:17-cv-00132-RJS-DBP 28

way for viewers to go to their website and get a kick out of whoever was booked or jailed that

day no matter if it was a warrant for failure to pay a fine on a infraction, if it was someone

struggling with drug dependency and violated terms of their probation and no matter if that

person is ultimately not found guilty of those charges and to get users to click through all the

individual's pictures. The company also never inquired with the parents on whether or not it was

OK to post the minor child's information in the news and the newspaper never posted a

"newsworthy" story in connection to what was posted, just his mugshot and the "pending"

charges.

      The allegations demonstrate and infer that the newspaper didn't care about the story

behind the charges, they cared about the mugshot. The mugshots received clicks to their website.

With more clicks to the website, a company can go to their advertisers and show them it is worth

it advertise with them based on their clicks, this term is generally known as "clickbait."

      In sum, the facts alleged in the complaint adequately demonstrate a showing of reckless

disregard and extreme and outrageous behavior and the assertion that this case should be

dismissed based on failure to plead does not have merit.

**IV.   Plaintiffs properly pleaded a cause of action under Utah law for Defamation of Character against the media and does not have to plead negligence as Plaintiffs are not "limited purpose public figures."**

      Furthermore, the Defendant claims that Plaintiff has not alleged the requisite degree of

fault for defamation of character. In their brief they state the following:

> Plaintiffs have failed to adequately plead any facts establishing the proper standard of negligence. Regarding the publication, Plaintiffs simply allege that the Standard Examiner published I.F.'s mugshot and charges after receiving the information from the Weber County Sheriff's Office. *(The Standard Examiner's Brief at 23).*

Plaintiff's in their complaint for defamation alleged the following:

Plaintiff's Response  to The Standard Examiner
and Sandusky Newspaper Inc.
12(b)6 Motion to Dismiss
1:17-cv-00132-RJS-DBP 29

Despite this, *[referencing that the information was false given the nature of why he was there and what was posted]* the Defendant's published information indicating that I.F. had been booked for those criminal charges brought by the Weber County Sheriff's Adult Detention Center and that those criminal charges were pending against him. (*Complaint at 58e).*

For failing to cite the distinction to the general public that I.F. was a minor child and that he had Juvenile civil proceedings brought against him and not adult criminal proceedings. *(Complaint at 58f)*

The Fazzio's contacted the Standard Examiner about the situation in the early morning on April 11th, 2017. The information stayed up all day as of 4 PM. The picture was taken down as of 10 PM that night but the information remained. *(Complaint at 32)*

Also, Plaintiff pleaded the nature of how his information was posted with claims from The Standard Examiner that they were pending criminal charges and he had just been booked an jailed on them.

### A. Even if there was a negligence standard, there are sufficient facts to show that Defendants acted negligently.

As mentioned in the section regarding intentional infliction of emotional distress, it is further implied that they acted with a degree of fault as Plaintiff has to prove (and properly alleged) reckless disregard for the truth. As a result, there is sufficient evidence alleged in the defamation claim that the newspaper acted negligently. Defendants are claiming that Plaintiff has to allege that they had a duty to verify the information and a duty of the information given them given by the police. Plaintiff can only plead the facts and from those facts, inferences are made and the facts alleged properly infer that The Standard Examiner was negligent in posting this information regarding a minor child regarding criminal charges brought against him.

Also, Defendants claim that they are shielded under dicta from *Florida Star* and *Uranga.* Those cases involved invasion of privacy claims and the publishing of truthful information

Plaintiff's Response  to The Standard Examiner
and Sandusky Newspaper Inc.
12(b)6 Motion to Dismiss
1:17-cv-00132-RJS-DBP 30

which is not applicable in this case as this involves the publication of false information and as noted in Footnote 3, the Supreme Court has never made a decision that there is constitutional protections from libel and slander in a private action. From this, Defendants are claiming that they have no duty to fact-check information received to them from governing authorities. This is not the law. Plaintiffs, properly showed that they failed to draw the distinction between adult and criminal charges when it was posted, that they continued to keep the information up despite being informed by the Fazzio's, for claiming that criminal charges had been brought against him, as well as them thereafter retracting the picture that was posted.

**B. Despite this, Plaintiffs do not have to prove negligence in this cause of action as I.F. was not a limited purpose public figure.**

Under the appropriate state law, "In order to constitute slander per se, without a showing of special harm, it is necessary that the defamatory words fall into one of four categories: [one of which is] (1) charge of criminal conduct …" *Allred v. Cook*, 590 P.2d 318, 320 (1979).[8]

> Slander per se does not require a showing of special damage because damages and malice are implied. Whether defamatory words constitute slander per se depends on their injurious character. That is, the words must be of such common notoriety that the injury can be presumed from the words alone …
>
> When language is used concerning a person or his affairs which from its nature necessarily must, or presumably will, as its natural and proximate, consequence, occasion him pecuniary loss, its publication is libelous per se.

*Id at 321.* As noted above, the proper cause of action for slander per se is noted. Negligence or malice are not required as it involves a charge of criminal conduct. Plaintiffs need to only show that the information was published and the information was false. Plaintiff in this case claims that the publication regarded a charge of criminal conduct. As a result, Plaintiffs properly

---

[8] The court upholding this cause of action after the enactment of Utah Code Section 45-2-3(4) (the statute that Defendants are claiming privilege on) ( the case was issued in 1979, the statute was enacted in 1975)) would also undermine that the statute would apply to I.F. in this case. If the statute was applicable to all private individuals, then this cause of action would be rendered moot in its applicability for private actions.

Plaintiff's Response  to The Standard Examiner
and Sandusky Newspaper Inc.
12(b)6 Motion to Dismiss
1:17-cv-00132-RJS-DBP 31

pleaded their cause of action in this matter.

The statute that Defendant cites under Utah Code Section 45-2-3(4) for privilege also notes that if the statute is applicable, then a newspaper organization is not liable under slander or libel per se, which in the alternative, would also imply that if the statute is not applicable, then they would be liable for libel and slander per se. If there was an different interpretation and need to show negligence instead, it would undermine and defy the plain meaning of the statute.

### i. The case Defendants cite refer to electronic broadcasting through television and Radio.

Defendant claims that Plaintiff must prove negligence under the language of *Seegmiller v. Garth*, 626 P.2d 968 (1981). That case involved a television broadcast and the statute Under Code Section 45-2-7. Due to the unpredictable nature of such broadcasts and the media's inability to control what an individual may say or do in an interview or in the background of a broadcast the statute was passed to curtail that unpredictability in interviewing individuals regarding specifically "broadcasting over a radio or television station." *Id.* The statue goes on to state:

> In no event, however, shall any such person, firm, or corporation be liable for any damages for any defamatory statement or act published or uttered in or as a part of a visual or sound broadcast unless it shall be alleged and proved by the complaining party that such person, firm, or corporation has *failed to exercise due care* to prevent the publication or utterance of such statement or act in such broadcast.

*Id. (Emphasis added)* In *Seegmiller* the question before the court was what kind of due care should be determined relating to a television or radio broadcast since the statute was silent and the degree of due care. As a result, the court gave a negligence standard to private individuals. However, this case involves a newspaper story and the stories published in a new story are predictable and the company has time to properly fact-check before publication. As a

Plaintiff's Response  to The Standard Examiner
and Sandusky Newspaper Inc.
12(b)6 Motion to Dismiss
1:17-cv-00132-RJS-DBP 32

result, the statue would not be applicable.

**ii. The case Defendants refer to in *Seegmiller* also involves speech that is a matter of public interest and is not applicable in this case.**

Also, the case of *Seegmiller v. Garth*, 626 P.2d 968 (1981) involved a narrow question of what level of fault to apply involving a private individual  and a private action for a story that was of  "public interest." This was *Seegmiller* applying a degree of fault from differance given to the states from the U.S. Supreme Court under *Gertz v. Robert Welch, Inc.,* 418 U.S. 323 (1974).

However, the Utah Supreme Court and the U.S. Supreme Court later clarified the *Seegmiller and Gertz* rulings noting "the U.S. Supreme Court in *Dun & Bradstreet Inc. v. Greenmoss Builders, Inc.,* 472 U.S. 749, 105 S.Ct. 2939, 86 L.Ed.2d 593 (1985), made clear that the constitutional requirement of fault in a private plaintiff defamation case applies only if the subject matter of the defamatory falsehood pertains to a matter of "public concern." *Cox v. Hatch*, 761 P.2d at 559, 556 (1988). The court went to not that "If the defamatory falsehood does not relate to a matter of 'public concern,' state law could constitutionally continue to apply the common law doctrine of strict liability in a defamation action." *Id.*[9] This "public concern" doctrine was used to determine if a private individual, based on the subject matter of the topic, made the private individual a "limited-purpose" public figure that would not fall under the protections of strict liability but instead under a higher level of scrutiny, which the court, in *Seegmiller,* determined was negligence.

The Utah Supreme Court defined "public concern" in *Wayment v. Clear Channel Broadcasting, Inc.*, 116 P.3d at 284 (2005) as the following:

> We agree with the vast majority of courts that have understood a "public controversy," in the context of limited-purpose public figure determinations, to be "not simply a matter of

---

[9] The court in *Seegmiller* also declined to rule on the effect of slander and libel per se under the state statute in their ruling under footnote 4 of the majority opinion.

Plaintiff's Response  to The Standard Examiner
and Sandusky Newspaper Inc.
12(b)6 Motion to Dismiss
1:17-cv-00132-RJS-DBP 33

interest to the public;   it must be a real dispute, the outcome of which affects the general public or some segment of it in an appreciable way." *Waldbaum*, 627 F.2d at 1296;   *see also Lerman,* 745 F.2d at 138 ("A public 'controversy' is any topic upon which sizeable segments of society have different, strongly held views."). In other words, "persons actually [must have been] discussing some specific question. A general concern or interest will not suffice."   *Waldbaum*, 627 F.2d at 1297.   "If the issue was being debated publicly and if it had foreseeable and substantial ramifications for nonparticipants, it was a public controversy.

Also, person who engages in criminal conduct does not automatically became a public figure. "Generally speaking, a person who engages in criminal conduct does not automatically become a public figure." *Russell*, 842 P.2d at 907 *(citing Seegmiller, 626 P.2d at 972).*

In this case, the unlawful posting of I.F.'s charges wasn't a matter that was in real dispute which affected the general public in an appreciable way, this wasn't a public controversy in which society had different, strongly held views, there wasn't discussion on the specific question of I.F.'s charges prior. The posting of the charges could only be deemed at its maximum as a general concern which is not sufficient under the analysis.

In the, end, this was not a matter of public controversy. This was the posting of the mugshot of a minor child, the picture of which was between two other adults with pending criminal without further comment. It was, as mentioned in the IIED section, plausibly inferred as a way to get clicks on their website without putting any effort into an actual story.

As a result, the claim of negligence is not required in this case.

**V.    Plaintiff properly stated a claim for false light under the applicable standard and Plaintiff adequately pleaded negligence.**

False light claims from private Plaintiffs do not require actual malice. "The actual malice standard apparently does not apply to private figure plaintiffs. Therefore, proof of plaintiff's

Plaintiff's Response  to The Standard Examiner
and Sandusky Newspaper Inc.
12(b)6 Motion to Dismiss
1:17-cv-00132-RJS-DBP 34

claim for false light invasion of privacy requires a showing of negligence in the publication of the statements about her." *Russell v. Thomson Newspapers, Inc.*, 842 P.2d at 907.

In this case, Plaintiff properly pleaded a claim when Plaintiff pleaded in the section for False Light in the complaint:

> And inferring that at that time, he was processed for new charges brought against him, which instead he had resolved the day before in Juvenile Court. *(As already noted, Juvenile proceedings for state and federal criminal statutory violations are not criminal proceedings, they are civil proceedings (see Utah Code Ann. 78A-6-116 (1) and (2))*

*(Plaintiff's Complaint at 12 ii)* As such, the inference made with the posting demonstrates negligence and the discussion above concerning intentional infliction of emotional distress further demonstrates negligence. This would quash any claims of which Defendant has made that there "is insufficient factual matter to permit a reasonable inference that the Standard Examiner acted negligently in the publication of I.F.'s mugshot and charges." *(Defendant's brief at 23)* Defendant also claims that Plaintiff has to show that Defendant had a knowledge of the falsity but that would make this tort intentional instead with necessary malice.

No malice is required in this case Plaintiff just has to show that the information placed Plaintiff in a false light. Plaintiff was at the adult detention center for fingerprinting.

**i. Plaintiffs did not allege strict liability on their false light claim.**

Defendant also alleges that Plaintiff is claiming strict liability on the false light claim. There are no claims for strict liability in the complaint under the allegations of false light. Defendant referenced paragraph 62 of the complaint which is under the allegations of defamation of character not false light which does require strict liability.

**ii. Only I.F. would have a claim under false light and libel.**

Plaintiff's Response  to The Standard Examiner
and Sandusky Newspaper Inc.
12(b)6 Motion to Dismiss
1:17-cv-00132-RJS-DBP 35

Defendant's in their brief state that it is unclear on who is alleging false light and slander in this matter and maintain that any allegations made by the parents' need to be dismissed. I.F. cannot bring a claim on his behalf because he is a minor child and the only claim under false light and slander are through I.F. and his claims.

## CONCLUSION

There are no privilege or first amendment protections that Defendant can assert in this matter because there are no statutes or state action criminalizing what was published. Defendant also failed to properly plead a claim under the privilege statute in their motion omitting a portion of the statute and even still, the statute is not applicable to a private plaintiff or to the factual allegations in this complaint. Plaintiff adequately pleaded plausible grounds for their false light, slander / libel per se and intentional infliction of emotional distress claims which are factually and legally supported and the Defendant's motion should be dismissed in light of this motion being construed most favorable to the Plaintiff.

Submitted this 13th day of December, 2017

_____

Brian K. Jackson
Brian K. Jackson, LLC
Attorney for Plaintiffs

Plaintiff's Response to The Standard Examiner
and Sandusky Newspaper Inc.
12(b)6 Motion to Dismiss
1:17-cv-00132-RJS-DBP 36

## <u>Certificate of Service</u>

I certify under penalties of perjury subject to the Utah State Code that I mailed a true and correct copy of the Opposition to The Standard Examiner's and Sandusky Newspaper Inc's 12(b)(6) Motion to Dismiss Defendants via electronic filing with the CMF e-filing system which sent notice to all Defendants who have made an appearance on this matter on December 22nd, 2017:

/s/ Brian Jackson_____
Brian K. Jackson
Brian K. Jackson, LLC
Attorney from Plaintiffs

Plaintiff's Response  to The Standard Examiner
and Sandusky Newspaper Inc.
12(b)6 Motion to Dismiss
1:17-cv-00132-RJS-DBP 37