Randy L. Dryer, USB #0924
Richard E. Mrazik, USB #10623
J. Adam Wright, USB #16202
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone:  801.532.1234
Facsimile:  801.536.6111
RDryer@parsonsbehle.com
RMrazik@parsonsbehle.com
AWright@parsonsbehle.com
ecf@parsonsbehle.com

*Attorneys for Defendants the Standard Examiner and Sandusky Newspaper Inc.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, NORTHERN DIVISION**

| | |
|---|---|
| In Re Interest of I.F. a minor child; Sherrie and Michael Fazzio,<br><br>        Plaintiffs,<br><br>vs.<br><br>The Standard Examiner, Sandusky Newspaper Inc., Weber County, and Acucom Corporation, aka Records Finder,<br><br>        Defendants. | **DEFENDANTS THE STANDARD EXAMINER AND SANDUSKY NEWSPAPER INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>Case No. 1:17-cv-00132-RJS<br><br>The Honorable Robert J. Shelby |

The Standard Examiner and Sandusky Newspaper Inc. (collectively the "Standard Examiner) submit this Reply in support of their Motion to Dismiss [ECF No. 24].

## INTRODUCTION

There is a "public interest in a vigorous press." *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 495 (1975). The First Amendment serves that interest by permitting the press breathing room to operate without unwarranted fear of defamation liability. The First Amendment principle

applicable to this case is straightforward: liability for the accurate publication of information made public by the government is impermissible unless such liability is narrowly tailored to a state interest of the highest order. *See The Florida Star v. B.J.F.*, 491 U.S. 524, 533 (1989); *see also Cohn*, 420 U.S. at 490-91. Plaintiffs contend that that standard—indeed, the entire First Amendment—is inapplicable here because this dispute involves no state actor. This argument has been explicitly rejected by the Supreme Court.

In their Response, Plaintiffs further argue that Utah's statutory fair report privilege applies only to public figure plaintiffs, and that, in any event, the Standard Examiner's publication was not a fair and accurate report. Plaintiffs' statutory interpretation is contradicted by a plain reading of the statute. Further, there is no plausible allegation in the Amended Complaint that the Standard Examiner inaccurately published I.F.'s charge information which the Weber County Sheriff's Office previously published and disseminated.

Finally, Plaintiffs argue that they are not required to plead negligence in order to state a plausible defamation claim, or, in the alternative, that they have adequately plead negligence. Utah law is clear: a private plaintiff suing the media must allege negligence. *Seegmiller v. KSL, Inc.*, 626 P.2d 968, 973 (Utah 1981). Plaintiffs' allegation that the Standard Examiner simply republished the information which the government made public does not plausibly allege negligence.[1]

---

[1] Plaintiffs' failure to sufficiently plead negligence is also fatal to their false light invasion of privacy and intentional infliction of emotional distress claims.

# ARGUMENT

## I. THE FIRST AMENDMENT IS APPLICABLE BECAUSE PLAINTIFFS SEEK COURT-IMPOSED LIABILITY ON THE STANDARD EXAMINER.

Plaintiffs contend that "there is no first amendment analysis necessary here because there is no state action alleged in the complaint . . . ." Pls.' Resp. at 16. In short, Plaintiffs believe that a defamation lawsuit between two private parties does not implicate the First Amendment. *Id.* at 10-17. They are incorrect. Plaintiffs' Amended Complaint requests state action—namely, imposition of a money judgment against the Standard Examiner via the state judicial system—for the newspaper's alleged violation of state common law.

The Supreme Court settled this issue in *New York Times Co. v. Sullivan*, 376 U.S. 254, 265 (1964), a case on which Plaintiffs rely heavily: "Although this is a civil lawsuit between private parties, the [state] courts have applied a state rule of law which petitioners claim to impose invalid restrictions on their constitutional freedoms of speech and press. It matters not that that law has been applied in a civil action and that it is common law only . . . . The test is not the form in which state power has been applied but, whatever the form, whether such power has in fact been exercised."[2] The Court should not credit Plaintiffs' attempt to disregard the First Amendment simply because this case involves private litigants.

## II. THE FIRST AMENDMENT BARS LIABILITY FOR ACCURATELY PUBLISHING INFORMATION THE GOVERNMENT MAKES PUBLIC.

Plaintiffs suggest that the Standard Examiner is advocating for an "absolute bar from posting false information regarding a private individual." Pls.' Resp. at 3. That is inaccurate. The

---

[2] *See also Wayment v. Clear Channel Broad., Inc.*, 2005 UT 25, ¶ 19 ("[S]tate defamation law, like any governmentally sanctioned 'formulae for the repression of expression,' must be bound 'by standards that satisfy the First Amendment.'" (quoting *Sullivan*, 376 U.S. at 269)).

Standard Examiner is simply asking the Court to apply the long-standing First Amendment principle that liability against a news outlet may not be premised upon an accurate publication of information made publicly available by the government, even where such information is false, unless imposing liability is narrowly tailored to a state interest of the highest order. *See Florida Star*, 491 U.S. at 533, 539; *see also Cohn*, 420 U.S. at 495 (recognizing that "a public benefit is performed by the reporting of the *true contents* of [public] records by the media." (emphasis added)).

In its Motion, the Standard Examiner cited numerous Supreme Court cases articulating this well-settled principle. Plaintiffs attempt to distinguish these cases by noting that they did not involve defamation claims. Pls.' Resp. at 13-15. However, this First Amendment doctrine is not limited to a specific cause of action. "The test is not the form in which state power has been applied, but, whatever the form, whether such power has in fact been exercised." *Sullivan*, 376 U.S. at 265. Thus, Plaintiffs have implicated the First Amendment by seeking to impose court-ordered liability on the Standard Examiner for its publication, no matter the specific cause of action they assert.

For example, in both *Cohn*, 420 U.S. 469, and *Florida Star.*, 491 U.S. at 533, the Court held that imposing damages on the media for accurately publishing information which the government made publicly available violates the First Amendment. Neither the *Cohn* Court nor the *Florida Star* Court premised its holding on the specific cause of action asserted. No matter the vehicle for seeking to impose liability on the accurate publication of information which the government makes publicly available, the First Amendment applies with equal force.

Further, Plaintiffs err in arguing that "the only defense" under the First Amendment "is The Truth." Pls.' Resp. at 13.[3] Ample authority makes clear that the First Amendment's protections attach to true *reports* of information which the government makes publicly available, irrespective of the truthfulness of the underlying information the government disseminated. For example, in *Florida Star*, the Court recognized that where a newspaper "merely reproduce[s] the news release prepared and released by the [government], imposing civil damages would surely violate the First Amendment."[4] 491 U.S. at 539.

Here, Plaintiffs do not dispute that the Standard Examiner accurately published I.F.'s mugshot and charge information that the Weber County Sheriff's Office had previously made available on its own website and disseminated to the Standard Examiner and other media outlets. That is, there is no allegation that the Standard Examiner's publication of I.F.'s charges was a truthful report of information that the Sheriff's Office made public. *See* Am. Compl. ¶ 28 (alleging that the Sheriff's Office policy "led to the dissemination of this court-protected information"). And despite conclusory statements to the contrary, there is no plausible allegation that the Standard Examiner unlawfully obtained I.F.'s information by receiving it from the

---

[3] In support of this position, Plaintiffs cite a passage from *Cohn* in which the Court discusses whether a true publication may ever be constitutionally punished. *Id.* (quoting *Cohn*, 420 U.S. at 489-90). But that analysis is immaterial to whether truth is a necessary prerequisite to First Amendment protection.

[4] S*ee also Cohn*, 420 U.S. at 495 (recognizing that "a public benefit is performed by the reporting of the *true contents* of [public] records by the media." (emphasis added)); *Greenbelt Co-op. Pub. Ass'n v. Brelser*, 398 U.S. 6, 12-13 (1970) (concluding that defamation liability was constitutionally impermissible where newspaper "was performing its wholly legitimate function as a community newspaper when it published full reports of these public debates in its news columns"); *Uranga v. Federated Publications, Inc.*, No. 25162, 2000 WL 1056095, at *5 (Idaho Ct. App. Aug. 2, 2000) (holding, "[T]he underlying policy expressed [by the Supreme Court] in *Cox Broadcasting* and its progeny calls for a rejection of [the plaintiff's] contention that the press may be subject to liability for accurately reporting the untruthful content of court records."); *cf. Medico v. Time, Inc.*, 643 F.2d 134, 145 (3d Cir. 1981) (acknowledging that "courts have, as a matter of federal law, expressed reluctance to hold the press responsible for publication of defamatory statements originally uttered by others[,]" especially "when the source of newsworthy defamation is a government official or report."); *Edwards v. Nat'l Audubon Soc., Inc.*, 556 F.2d 113, 120 (2d Cir. 1977) (stating, "Nor must the press take up cudgels against dubious charges in order to publish them without fear of liability for defamation.").

Sheriff's Office. In these circumstances, the First Amendment requires that imposition of liability be narrowly tailored to a state interest of the highest order. *See Florida Star*, 491 U.S. at 541. Plaintiffs make no argument that that exacting standard is met here. *See* Pls.' Resp. at 16 ("The argument that liability is not narrowly tailored to a state interest is inapplicable for a case involving a lawsuit from a private individual." (emphasis omitted)).

The First Amendment bars Plaintiffs' claims arising out of the Standard Examiner's accurate publication of information it lawfully obtained from the Weber County Sheriff's Office. Holding otherwise would result in unwelcome self-censorship and impose liability on news outlets for engaging in common reporting techniques. *See Florida Star*, 491 U.S. at 538 (noting that the newspaper "gained access to the information in question through a government news release makes it especially likely that, if liability were to be imposed, self-censorship would result. Reliance on a news release is a paradigmatically routine newspaper reporting techniqu[e]." (internal quotation omitted)).

### III. UTAH CODE § 45-2-3 DOES NOT ONLY APPLY TO PUBLIC OFFICIAL PLAINTIFFS.

In addition to First Amendment protections, Utah Code § 45-2-3 also bars Plaintiffs' causes of action. *See* the Standard Examiner's Mot. at 18-21. Among other things, the statute privileges "fair and true report[s], without malice . . . of a charge or complaint made by any person to a public official, upon which a warrant shall have been issued or an arrest made." Utah Code § 45-2-3(4). In arguing that the statutory privilege is inapplicable here, Plaintiffs contend that the privilege simply "echo[es]" the *Sullivan* standard by requiring public official defamation plaintiffs to prove actual malice. Pls.' Resp. at 18-19. Plaintiffs argue that this interpretation is mandated by the language, "made by any person to a public official." *Id.* at 18. However,

4820-3439-5482v2

Plaintiffs' conclusion does not follow from that language, and they misconstrue the purpose of the statute.

The statute is not susceptible to an interpretation that it only imposes a higher burden on public official plaintiffs. Indeed, it does not even do that. The language "made by any person to a public official" simply describes the type of "complaint" which qualifies for the privilege. The Utah Supreme Court has made clear that "[f]or a statement to qualify for privilege under this statute, it must fulfill the following elements: It must be a report of . . . a charge or complaint upon which a warrant shall have been issued or an arrest made; it must be a fair and true report of the proceeding or charge; and it must be made without malice." *Russell v. Thomson Newspapers, Inc.*, 842 P.2d 896, 900 (Utah 1992). The privilege applies irrespective of I.F.'s status as a private individual.

As Plaintiffs acknowledge, "[o]fficial action based upon a finding of probable cause is the basis for the application of this privilege." Pls.' Resp. at 18 (quoting *Seegmiller v. KSL, Inc.*, 626 P.2d 968, 977 (Utah 1981)). Plaintiffs argue that the Standard Examiner published mere allegations of criminal conduct not buttressed by official action, which are not subject to the privilege. Pls.' Resp. at 23. Again, the allegations in the Amended Complaint show this argument is wrong.

Plaintiffs allege that I.F. was officially charged "through the Weber County Juvenile Center." Am. Compl. ¶ 12. Throughout the Amended Complaint, Plaintiffs repeatedly reference I.F.'s "charges." *See* Am Compl. ¶¶ 18, 27, 28, 54 (referring to I.F.'s "pending criminal charges"), 57 (referencing I.F.'s "charges that were used in the Juvenile proceeding"); *see also* Pls.' Resp. at 31 ("Plaintiff in this case claims that the publication regarded a charge of criminal

4820-3439-5482v2

conduct."). The statutory privilege explicitly applies to accurate reports of "official charges of criminal conduct." *Seegmiller*, 626 P.2d at 978. I.F. was charged with controlled substance, dangerous weapon, and theft charges. *See* Ex. A to the Standard Examiner's Mot. These were official charges of criminal conduct brought by the state, and not simply unsubstantiated allegations of criminal conduct. The privilege applies.

IV. **PLAINTIFFS DO NOT ADEQUATELY DISPUTE THAT THE STANDARD EXAMINER'S PUBLICATION WAS A FAIR AND ACCURATE REPORT OR THAT THE STANDARD EXAMINER LAWFULLY OBTAINED THE INFORMATION IT PUBLISHED.**

Without citing any authority, Plaintiffs claim that Utah Code § 45-2-3(4) is inapplicable where a newspaper accurately publishes a governmental release which itself contains factual errors. Pls.' Resp. at 25. Utah law is to the contrary. "If the report correctly and accurately reflects the proceedings it covers, then it will maintain the privilege, absent malice, regardless of the falsity of the statements or allegations made in the proceedings themselves." *Russell v. Thomson Newspapers, Inc.*, 842 P.2d 896, 902 (Utah 1992).[5]

Plaintiffs allegations make clear, and they do not dispute in their briefing, that the Standard Examiner accurately published I.F.'s charge information that the Weber County Sheriff's Office previously published on its own website and distributed to media outlets. There

---

[5] Courts consistently apply this principle across jurisdictions. *See Porter v. Guam Publications, Inc.*, 643 F.2d 615, 616 (9th Cir. 1981) (finding that the fair report privilege protected accurate report of daily police bulletin which contained false charges filed against the plaintiff); *McDonald v. Raycom TV Broad., Inc.*, 665 F. Supp. 2d 688, 690 (S.D. Miss. 2009) (collecting cases, and noting that "so long as the article is a fair and accurate republication of an official report, the article is protected, even if the official report is itself false or inaccurate."); *Cobin v. Hearst-Argyle Television, Inc.*, 561 F. Supp. 2d 546, 558 (D.S.C. 2008) (finding fair report privilege protects accurate report of police report describing domestic violence charges against the plaintiff, regardless of whether contents of police report were true); *DMC Plumbing and Remodeling, LLC v. Fox News Network, LLC* No. 12–cv–12867, 2012 WL 5906870, *4 (E.D. Mich. Nov.26, 2012) (holding that the fair report privilege provides protection for articles based on police department press releases and other police reports of criminal incidents.); *Archibald v. Metro. Gov't of Nashville and Davidson County*, No. 3:11–0728, 2012 WL 3000137, *4 (M.D. Tenn. July 23, 2012) ("The fair report privilege applies to news reports made in reliance on police communications regarding the arrest of a criminal suspect.").

8

is no plausible allegation that the Standard Examiner unlawfully obtained this information or that the publication was the result of malice. In these circumstances, the statutory privilege bars Plaintiffs' claims against the Standard Examiner.

V. **PLAINTIFFS HAVE FAILED TO PLEAD THE REQUISITE DEGREE OF FAULT FOR EACH OF THEIR CAUSES OF ACTION.**

In addition to the First Amendment and statutory protections, Plaintiffs' claims against the Standard Examiner fail because they have not plausibly alleged the requisite degree of fault. First, Plaintiffs are incorrect in arguing that they are not required to plead negligence to state a claim for defamation. Pls.' Resp. at 31-32. The Utah Supreme Court in *Seegmiller* explicitly held "that the necessary degree of fault which must be shown in a defamation action brought by a 'private individual' against the media is negligence." 626 P.2d at 973; *see also Wayment v. Clear Channel Broad., Inc.*, 2005 UT 25, ¶ 32 n.13 (noting that "a defamation plaintiff who is not a public figure must still establish negligence on the part of the defendant in order to recover damages."). The court did not limit this standard to radio and television broadcasts, as Plaintiffs suggest. *See* Pls.' Resp. at 32-33.[6] Further, Plaintiffs' allegation of "slander per se" do not allow them to avoid pleading negligence. Adequate allegations of slander per se only obviate the plaintiff's need to plead special damages, not the required degree of fault. *See Seegmiller*, 626 P.2d at 977 ("Slander is classified per se and actionable at common law without proof of special damages . . . ."); *see also Diamond Ranch Acad., Inc. v. Filer*, No. 2:14-CV-751-TC, 2016 WL 633351, at *7 (D. Utah Feb. 17, 2016) (requiring evidence of the requisite degree of fault in order to prevail on a libel per se claim). Plaintiffs specifically plead strict liability as the basis for

---

[6] Further, the *Seegmiller* holding did not limit the negligence standard only to cases involving matters of public concern, as Plaintiffs contend. *See* Pls.' Resp. at 33. In any event, the Standard Examiner's publication of I.F.'s charge information involved a matter of public concern. *See* the Standard Examiner's Mot. at 13-14.

9

their defamation claim, Am. Compl. ¶ 62, and the Complaint does not otherwise adequately allege that the Standard Examiner was negligent.

### A. Plaintiffs have not alleged that the Standard Examiner had a legal duty to further investigate the information that the Weber County Sheriff's Office disseminated.

Plaintiffs argue that it "is not the law" that news outlets "have no duty to fact-check information received . . . from governing authorities." Pls.' Resp. at 31. First, nowhere in the Amended Complaint do Plaintiffs allege this duty. But more fundamentally, Plaintiffs cite no authority for its proclamation of the law.[7] In fact, there is substantial authority holding that a newspaper's reliance on a reliable source, such as the government, establishes due care as a matter of law.[8]

This makes sense. "Reliance on a news release is a paradigmatically routine newspaper reporting technique. The government's issuance of such a release, without qualification, can only convey to recipients that the government considered dissemination lawful, and indeed expected

---

[7] Plaintiffs also allege that the Standard Examiner defamed I.F. by "failing to cite the distinction to the general public that I.F. was a minor child and that he had Juvenile civil proceedings brought against him and not adult criminal proceedings." Am. Compl. ¶ 58e; Defs.' Mem. at 24. Again, Plaintiffs cite no authority for its position that the Standard Examiner had a duty to supplement its publication of the information disseminated by Weber County with more detailed information regarding I.F.'s criminal charges.

[8] For example, in *Lovett v. Citizen*, 584 So. 2d 1197, 1198 (La. Ct. App. 1991), the court held that "when the media is furnished arrest information from an authorized police source, it is under no obligation to verify from other sources the information so furnished unless it has knowledge which would make it aware further research was necessary to insure the veracity of the information." *See also Crescenz v. Penguin Grp. (USA), Inc.*, 561 F. App'x 173, 180 (3d Cir. 2014) (unpublished) (concluding that "Penguin acted like any other conscientious publisher in releasing [the alleged defamatory publication]: it did not have a duty to independently investigate the book's facts"); *Howe v. Detroit Free Press, Inc.*, 555 N.W.2d 738, 741 (Mich. Ct. App. 1996) (granting summary judgment because "the local news organization has no duty to independently verify the accuracy of the wire release and cannot be negligent, as a matter of law, for failing to do so"); *Brown v. Courier Herald Publ'g Co.*, 700 F. Supp. 534, 537 (S.D. Ga. 1988) (holding that to impose a duty to verify would be to require "extraordinary care, not ordinary care"); *Appleby v. Daily Hampshire Gazette*, 395 Mass. 32, 39 (1985) ("[W]e conclude that a newspaper ordinarily has exercised due care in gathering information . . . when it publishes material taken from a reputable wire service." (internal quotation, citation, and alteration omitted)); Lackland H. Bloom, Jr., *Proof of Fault in Media Defamation Litigation*, 38 Vand. L. Rev. 247, 371 (1985) ("[A] reporter's reliance on law enforcement personnel . . . often will undermine any possible inference of negligence.").

the recipients to disseminate the information further." *Florida Star*, 491 U.S. at 538–39 (internal quotation and citation omitted). In their Amended Complaint, Plaintiffs allege that the Standard Examiner simply republished information the Weber County Sheriff's Office published itself and sent to media outlets. This allegation is insufficient to plead negligence on the part of the Standard Examiner. This failure precludes Plaintiffs' claims for defamation, false light invasion of privacy, and intentional infliction of emotional distress. *See* The Standard Examiner's Mot. at 24-27.[9]

## CONCLUSION

Based on the foregoing reasons and the reasons stated in its Motion to Dismiss, the Standard Examiner requests that the Court grant the Motion, and dismiss Plaintiffs' claims against the Standard Examiner with prejudice.

DATED January 12, 2018.

/s/ Randy L. Dryer
Randy L. Dryer
Richard E. Mrazik
J. Adam Wright
PARSONS BEHLE & LATIMER

*Attorneys for Defendants the Standard Examiner and Sandusky Newspaper Inc.*

---

[9] Plaintiffs' intentional infliction of emotional distress claim also fails for failure to allege extreme and outrageous conduct or purposeful action. On those points, the Standard Examiner rests on its arguments in its Motion to Dismiss. *See* the Standard Examiner's Mot. at 25-27.

11

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of January, 2018, I caused the foregoing **REPLY IN SUPPORT OF MOTION TO DISMISS** to be filed electronically with the Clerk of the Court using the CM/ECF system, which sent notification of the filing to counsel of record, as follows:

Brian K. Jackson
BRIAN K. JACKSON, LLC
341 S. Main St. Suite 500
Salt Lake City, UT 84111
Telephone: 801.441.8922
Facsimile: 801.534.1948
brianj@bjacksonlaw.com

*Counsel for Plaintiff*

Frank D. Mylar
2494 Bengal Blvd.
Salt Lake City, Utah 84121
Telephone: 801.858.0700
mylar-law@comcast.net

*Counsel for Defendant Weber County*

In addition, on the same date, I caused a true and correct copy of the foregoing to be served by regular first class United States Mail on the following:

Accucom Corporation
c/o D. Gill Sperlein
RANDAZZA LEGAL GROUP
345 Grove Street
San Francisco, CA 94102

/s/ Randy L. Dryer

4820-3439-5482v2