Ronald D. Green (*pro hac vice*)
RANDAZZA LEGAL GROUP, PLLC
4035 S. El Capitan Way
Las Vegas, Nevada 89147
Telephone: (702) 420-2001
ecf@randazza.com

W. Andrew McCullough (2170)
6885 S State Street, Suite 200
Midvale, Utah 84047
Telephone: (801) 565-0894
Facsimile:  (801) 565-1099
wandrew48@ymail.com

*Attorneys for Defendant*
*Accucom Corporation*

**RANDAZZA** | LEGAL GROUP

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| IN RE INTEREST OF I.F., a minor child; SHERRIE and MICHAEL FAZZIO;<br><br>          Plaintiffs,<br><br>     v.<br><br>THE STANDARD EXAMINER; SANDUSKY NEWSPAPER, INC.; WEBER COUNTY; ACUCOM CORPORATION, a/k/a RECORDS FINDER,<br><br>          Defendants. | **DEFENDANT ACCUCOM CORPORATION'S MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11(C)**<br><br><br>Case No.: 1:17-cv-132-RJS-DBP<br><br>Honorable Robert J. Shelby |

**RELIEF SOUGHT**

Defendant Accucom Corporation ("Defendant" or "Accucom") d/b/a Records Finder[1] respectfully requests this Honorable Court impose sanctions upon Plaintiffs and their counsel pursuant to Fed. R. Civ. P. 11(c).  Plaintiffs' frivolous claims are not warranted by law.

**RELEVANT FACTS**

In their Amended Complaint (Dkt. No. 19), Plaintiffs Sherrie and Michael Fazzio, and their allegedly minor child, I.F.,[2] alleged claims of defamation, false light, and intentional infliction of emotional distress against Defendant Accucom Corporation.

As alleged, Accucom publishes a website at <http://policearrests.com>.  *See* Dkt. No. 19, ¶5.  Defendant publishes official reports of arrests provided by law enforcement authorities, stating:

> The information presented on the Site is sourced from records made freely and publicly available by state and local offices, agencies, or departments. PoliceArrests does not warrant or guarantee that the information presented is current or accurate, and you therefore should not use the Site to verify any individual's arrest, booking, or criminal records.  For the most recent information regarding any record presented on the Site, contact the relevant state or local office, agency, or department.  ALL INDIVIDUALS APPEARING ON THE SITE ARE INNOCENT UNTIL PROVEN GUILTY IN A COURT OF LAW.

*See* Exhibit 1.

On or about February 21, 2017, I.F. was charged with violating the law, though the allegations were ultimately resolved in I.F.'s favor.  *See id.* at ¶¶9-10.  Plaintiffs allege that I.F.'s mugshot and charges appeared on <http://policearrests.com>.  *See id.* at ¶28.  Plaintiffs claim the Defendants published information that I.F. was booked for certain adult criminal charges that were then-pending, though they assert they were juvenile proceedings, with at least one charge already resolved at the time of publication.  *See id.* at ¶60.  Plaintiffs allege that Accucom acted with

---

[1]   Plaintiffs misspell Defendant's name as "Acucom".
[2]   According to the Weber County Sheriff's Office, "I.F." is an adult. *See* <http://www3.co.weber.ut.us/sheriff/off_search/roster_details.php?pcp=321506>.

reckless disregard in posting "protected juvenile information on [its] website[] without prior authorization through the juvenile courts." *See id*. at ¶68.  Such allegations are based on the Weber County Sheriff's Office having disseminated the information about I.F. that was allegedly published by Accucom.  *See id*. at ¶¶29-30 & <u>Exhibit 2</u>.

<u>**SUPPORTING AUTHORITY**</u>

Pursuant to Rule 11 of the Federal Rules of Civil Procedure, the signature of Plaintiffs' counsel on the Amended Complaint (Dkt. No. 19) constitutes a certification that it was not presented for any improper purpose, that any legal contentions were warranted by existing law, and that the factual contentions had evidentiary support.  Fed. R. Civ. P. 11(b).  None of the allegations in Plaintiffs' Amended Complaint were warranted; Plaintiffs were warned prior to serving Defendant, but they, nonetheless, proceeded to effect service.  "If a court determines that a party has violated Rule 11(b), it may, in its discretion, impose sanctions." *Lundahl v. Home Depot, Inc.*, 594 F. App'x 453, 455 (10th Cir. 2014).  Sanctions should be levied for violating Rule 11.

<u>**ARGUMENT**</u>

Plaintiffs are pursuing legally meritless claims.  None of their claims are cognizable under law.[3]  Further, the alleged publication was privileged.  Plaintiffs knew of these issues prior to amending the complaint to correct Defendant's identity and serve it,[4] but did so anyway.

**1.0   Plaintiffs Lack a Meritorious Defamation Claim**

Under Utah law, to establish a claim for defamation, "the plaintiff must demonstrate that (1) the defendant published the statements [concerning the plaintiff]; (2) the statements were false; (3) the statements were not subject to privilege; (4) the statements were published with the requisite degree of fault; and (5) the statements resulted in damages." *DeBry v. Godbe*, 1999 UT 111, 992

---

[3]   To the extent applicable, Defendant hereby incorporates by reference the motion to dismiss filed by The Standard Examiner and Sandusky Newspaper, Inc. (Dkt. No. 24).
[4]   Plaintiffs' original complaint misidentified Defendant.  However, prior to service, Defendant notified Plaintiffs' counsel of this.  Defendant further advised Plaintiffs' counsel of the glaring deficiencies.  *See* <u>Exhibit 3</u>.

P.2d 979, 982 (Utah 1999).  In Utah, "false and defamatory statements are not actionable if they are protected by a legal privilege."  *Id.* at 983.

First, Defendant is not alleged to have published any statements concerning Sherrie or Michael Fazzio, let alone false ones.

Second, Defendant did not publish any false statement about I.F. with the requisite degree of fault, as balanced against Defendant's First Amendment rights.  "[T]he necessary degree of fault which must be shown in a defamation action by a 'private individual' against the media is negligence."  *See Seegmiller v. KSL, Inc.*, 626 P.2d 968, 973 (Utah 1981).  Surprisingly, Plaintiffs do not even claim negligence, rather they wrongly claim strict liability. Dkt. No. 19 at ¶62.  There is no duty for Defendant to comb through every casefile upon which it reports, to winnow out facts the arrestee disputes.  Defendant could not be negligent for republishing what the Weber County Sheriff's Office provided.

Third, Defendant's report was privileged under Utah Code §45-2-3(4), the fair report privilege.  Qualifying statements "must be a report of a judicial, legislative, or other public official proceeding or of anything said in the course thereof or of a charge or complaint upon which a warrant shall have been issued or an arrest made; it must be a fair and true report of the proceeding or charge; and it must be made without malice."  *Russell v. Thomson Newspapers*, 842 P.2d 896, 900 (Utah Sup.Ct. 1992).  Defendant reported on a judicial proceeding.  Defendant fairly and truly reported on the charges set forth by the Sheriff's office,[5] without editorializing.  The actual malice standard in Utah is a high barrier: it is "an absolute privilege for a defendant's statements unless the statements were made with ill will, were excessively published, or the defendant did not reasonably believe his or her statements were true."  *Id.* at 905.  There was no ill-will in the automated publishing, there was no excess in the publishing, and Defendant reasonably believed

---

[5]   Plaintiffs do not specifically set forth any explicitly false statement appearing on Defendant's website. I.F. was charged with unlawful conduct. "Minor inaccuracies do not amount to falsity so long as the substance, the gist, the sting of the defamatory charge can be justified." *Schwartz v. Am. Coll. of Emergency Physicians*, 215 F.3d 1140, 1146 (10th Cir. 2000) (internal quotation marks omitted).

the Sheriff's report was a true report of the proceedings against I.F.  Thus, the privilege applies, as Plaintiffs were informed, and sanctions are appropriate.

## 2.0    Plaintiffs Lack a Meritorious False Light Claim

Recasting the defamation claim as a false light claim fares no better.  "A false light claim is closely allied with an action for defamation and the same considerations apply to each."  *Stien v. Marriott Ownership Resorts, Inc.*, 944 P.2d 374, 380 (Utah Ct. App. 1997) (internal quotation marks omitted).  In Utah, "[a] prima facie case for false light requires a plaintiff to demonstrate that (1) the defendant publicized a matter concerning the plaintiff that placed the plaintiff before the public in a false light, (2) the false light in which the plaintiff was placed would be highly offensive to a reasonable person, and (3) the defendant knew or recklessly disregarded the falsity of the publicized matter and the false light in which the plaintiff was placed."  *Jacob v. Bezzant*, 2009 UT 37, 212 P.3d 535, 544 (Utah 2009).  However, "a false light claim predicated on publication of a defamatory statement is subject to First Amendment protections" and thus "requires a showing of negligence in the publication of the statements."  *Russell, supra* at 907.

First, as with defamation, Defendant publicized nothing concerning I.F.'s parents, false or otherwise.

Second, for a "publication" to be effective, the statements must be "distributed to a large number of persons, or any broadcast over the radio, or a statement made in address to a large audience."  *Watkins v. Gen. Refractories Co.*, 805 F. Supp. 911, 918 (D. Utah 1992).  As has been recognized, "some web sites are rarely viewed or read by anyone other than the person who maintains the site."  *Yath v. Fairview Clinics, N. P.*, 767 N.W.2d 34, 52 (Minn. Ct. App. 2009) (Johnson, J., concurring).  In fact, Plaintiffs do not claim publicity by Defendant, only in the Sandusky Examiner.  *See* Dkt. No. 19 at ¶¶19-20.  Here, there were only 14 unique pageviews on

Defendant's website, including Plaintiffs themselves.[6]  *See* Exhibit 4.  Had Plaintiffs done their diligence, they would have learned there was insufficient publication.

Third, Defendant was not negligent.[7]  Merely republishing government data cannot be negligence.  In fact, it is a textbook example of what the press is privileged to do.  Moreover, Defendant warns that the information provided by law enforcement could be inaccurate.

Fourth, I.F. actually was charged with violating the law.  Plaintiffs take issue with the incremental difference between "adult criminal" and "juvenile civil" proceedings.  As the First Amendment protects the media, per *Russell, supra,* the issue is whether the incremental change is highly offensive.  No reasonable person would think it was.  There is no factual difference between a minor and an adult charged with the same crimes; the only difference is how the state will treat the defendant.

Nor is it offensive to not provide a follow-up as to the dispensation of the charges; there is no obligation for a media entity to publish a follow-up.  *See Miami Herald Pub. Co., Div. of Knight Newspapers, Inc. v. Tornillo*, 418 U.S. 241, 256-57 (1974) (prohibiting compelling the press to publish replies).  It offends the First Amendment to dictate that the press must report additional information.  *See Hurley v. Irish-American Gay*, 515 U.S. 557, 573 (1995) ("the general rule, that the speaker has the right to tailor the speech, applies … equally to statements of fact the speaker would rather avoid").  Thus, as Plaintiffs had no meritorious basis to pursue the false light claim, sanctions are warranted.

**3.0    Plaintiffs Lack a Meritorious Emotional Distress Claim**

Plaintiffs claim of intentional infliction of emotional distress also subjects them to sanctions.  To state a claim, a plaintiff must show that the defendant:

> intentionally engaged in some conduct toward the plaintiff, (a) with the purpose of inflicting emotional distress, or, (b) where any reasonable person would have

---

[6]    The most page views were around May 31, 2017, when Mrs. Fazzio contacted Defendant asking for the page to be removed.  *See* Exhibit 4 & 5.  Defendant promptly complied.  *See* Exhibit 6 & 7.

[7]    For the same reasons given in *Russell, supra,* regarding emotional distress claims, the fair report privilege could be found to apply to false light claims as well.

known that such would result; and his actions are of such a nature as to be considered outrageous and intolerable in that they offend against the generally accepted standards of decency and morality.

*Jackson v. Brown*, 904 P.2d 685, 687-88 (Utah 1995). "Outrageous and intolerable" conduct is conduct that offends generally accepted standards of decency and morality or, in other words, conduct that is so extreme as to exceed all bounds of what is usually tolerated in a civilized community. *See Samms v. Eccles*, 11 Utah 2d 289, 293, 358 P.2d 344, 346-47 (Sup.Ct. 1961) Conduct that is merely unreasonable, unkind, or unfair does not qualify. *See Franco v. Church of Jesus Christ of Latter-Day St.s*, 2001 UT 25, ¶28, 21 P.3d 198, 207 (Sup.Ct.). Here, Defendant is alleged to have published an official account of charges as provided by the Sheriff. That is neither indecent nor immoral. Arrest reports are commonplace in our society. It may be unfair that the Sheriff provided the wrong information, but the press covering the official statements from law enforcement is proper in a society with a free press.[8]

Further, "where a private figure plaintiff brings suit against a media defendant, alleged defamatory words do not give rise to a cause of action for emotional distress absent a showing of negligence as to the falsity of the statement published." *Russell v. Thomson Newspapers*, 842 P.2d 896, 906 (Utah Sup.Ct. 1992) (accounting for First Amendment protections). As discussed above, Defendant was not negligent for merely republishing information provided by law enforcement.

Finally, the fair report privilege "extend[s] to a claim of intentional infliction of emotional distress tied to the same operative facts that gave rise to defamation claims." *Jensen v. Sawyers*, 2005 UT 81, ¶52, 130 P.3d 325, 336 (Sup.Ct.). Thus, as the privilege barred the defamation claim, it also precludes the emotional distress claim.

## 4.0   Sanctions are Necessary to Prevent Further Misconduct and Compensate for Plaintiffs' Abuse

Plaintiffs have an absurd understanding of the law, as set forth in their opposition to the motion to dismiss filed by the Sandusky Examiner. *See* Dkt. No. 30. *Dodd Ins. Servs., v. Royal Ins. Co.*, 935 F.2d 1152, 1155 (10th Cir. 1991) ("In deciding whether to impose Rule 11 sanctions,

---

[8]   Defendant engaged in no conduct toward I.F.'s parents by publishing the report about I.F. Thus, their claims never had any merit.

a district court must apply an objective standard; it must determine whether a reasonable and competent attorney would believe in the merit of an argument."); *Coffey v. Healthtrust, Inc.*, 1 F.3d 1101, 1104 (10th Cir. 1993) ("The attorney has an affirmative duty to inquire into the facts and law before filing a pleading. His inquiry must be reasonable under the circumstances.")

Plaintiffs actually take the position that the First Amendment has no application to a suit seeking damages from speech. *See* Dkt. No. 30 at pp. 11-16. They blatantly misinterpret the statute governing the fair report privilege. *See id.* at pp. 17-23. They appear to have no understanding of the applicable standard of fault, nor have they made a reasonable inquiry into what that is. *See id.* at pp. 31-32. The Sandusky Examiner neatly attends to each of these fallacies in its reply memorandum, incorporated herein by reference. *See* Dkt. No. 33.

Plaintiffs possessed both the letter from Defendant's counsel and the arguments of the Sandusky Examiner when they chose to serve Defendant – despite being given ample opportunity to reconsider. They knew, or should have known, that their claims lacked merit. Yet, they persisted. "Although the primary goal of sanctions is to deter misconduct, sanctions also serve to punish litigation abuse and compensate victims of such abuse." *Starlight Int'l, Inc. v. Herlihy*, 190 F.R.D. 587, 595 (D. Kan. 1999).

Plaintiffs may be upset that the charges were brought and given light. But Defendant did not legally wrong them and there is no non-frivolous reason why they were sued, other than to punish them for the exercise of their First Amendment rights, or to perhaps try and extract a nuisance value settlement. A proper deterrent and compensation would be to award Defendant its attorneys' fees, to be submitted upon affidavit of counsel within 14 days of the allowance of this motion.

. . .

. . .

. . .

WHEREFORE Defendant respectfully requests this Honorable Court sanction Plaintiffs and their counsel pursuant to Fed. R. Civ. P. 11(c).

DATED this 31st day of January 2018.

Respectfully submitted,

/s/ Ronald D. Green

Ronald D. Green (*pro hac vice*)
RANDAZZA LEGAL GROUP, PLLC
4035 S. El Capitan Way
Las Vegas, Nevada 89147

W. Andrew McCullough (2170)
6885 S State Street, Suite 200
Midvale, Utah 84047

*Attorneys for Defendant*
*Accucom Corporation*

RANDAZZA | LEGAL GROUP

Case No. 1:17-cv-132-RJS-DBP

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 27, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I further certify that a true and correct copy of the foregoing document being served via transmission of Notices of Electronic Filing generated by CM/ECF.

Respectfully submitted,

Employee,
Randazza Legal Group, PLLC