1

2                    IN THE UNITED STATES DISTRICT COURT

3              FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

4

5

   IN RE INTEREST OF I.F., a      )
6  minor child; SHERRIE AND       )
   MICHAEL FAZZIO,                 )
7                                  )
   Plaintiffs,                     )
8                                  )
        vs.                        )   Case No:   1:17-CV-0132
9                                  )
   THE STANDARD EXAMINER,          )
10 SANDUSKY NEWSPAPER INC.,        )
   WEBER COUNTY, ACUCOM            )
11 CORPORATION, AKA RECORDS        )
   FINDER,                         )
12
           Defendants,
13 _____

14

15

16

17

18

19              BEFORE THE HONORABLE ROBERT J. SHELBY

20                        May 29, 2018

21                        MOTION HEARING

22

23

24
                          Reported by:
25           KELLY BROWN HICKEN, RPR, RMR
                        801-521-7238

```
 1                        APPEARANCES OF COUNSEL

 2

 3    FOR THE PLAINTIFF:        BRIAN K. JACKSON, LLC

 4                             BY:  BRIAN K. JACKSON

 5                                  Attorney at Law

 6                             341 S. MAIN ST, SUITE 500

 7                             SALT LAKE CITY, UTAH  84111

 8

 9    FOR STANDARD EXAMINER:    PARSONS BEHLE & LATIMER

10                             BY:  RANDY L. DRYER

11                                  Attorney at Law

12                             201 S. MAIN ST, STE 1800

13                             SALT LAKE CITY, UTAH  84145

14

15    FOR WEBER COUNTY:         MYLAR LAW PC

16                             BY:  ANDREW R. HOPKINS

17                                  Attorney at Law

18                             2494 BENGAL BLVD

19                             SALT LAKE CITY, UTAH  84121

20

21    FOR ACUCOM:               RANDAZZA LEGAL GROUP PLLC

22    (APPEARING BY TELEPHONE)  BY:  RONALD D. GREEN

23                                  Attorney at Law

24                             2764 LAKE SAHARA DR, STE 109

25                             LAS VEGAS, NV  89117
```

1              SALT LAKE CITY, UTAH, TUESDAY, MAY 29, 2018

2                          *   *   *   *   *

3              THE COURT:  All right.  Good afternoon.  Of course,

4    everyone.  We'll call Case Number 1-17-CV-132.  This is our

13:34:45  5    Fazzio vs. Standard Examiner and others hearing.  Ryan Jackson

6    is here in behalf of the plaintiffs.  And Andrew Hopkins for

7    Weber County?

8              MR. HOPKINS:  Yes.

9              THE COURT:  I think we have Ronald Green on the

13:35:03 10    phone.

11             Mr. Green, remind me who you represent.  You're

12    just listening today, I think.

13             MR. GREEN:  That is correct, Your Honor.  I

14    represent Acucom.

13:35:12 15             THE COURT:  Acucom.  That's right.  Thank you.

16             Mr. Dryer, you're here, but I don't think you're

17    planning on entering an appearance today.

18             MR. DRYER:  That's correct, Your Honor.

19             THE COURT:  Okay.  Well, welcome to all of you.

13:35:24 20             This is going to be a roundabout way to get to this

21    point in just a moment.  When I took the bench I thought it

22    was -- my belief is this courtroom belongs to the litigants

23    who are in front of us.  And I've long believed that before

24    somebody risks losing a claim or a defense or a case they have

13:35:46 25    a right to be here in the courtroom, and what I hope is to

1      observe a judicial proceeding with a judge who's well

2      prepared, who's taken the material seriously, who's unbiased

3      and impartial and committed to applying the rule of law fairly

4      and evenly.  And so we had hearings always as a matter of

13:36:09  5   course on motions to dismiss because claims were always at

6      issue and could be lost.

7           At some point I realized that that created an

8      artificialness to some hearings because often times in a

9      12(b)(6) motion I've read the complaint, and the words of the

13:36:27 10   complaint don't change, and if we're in general agreement

11     about the law that applies I ought to know before I get here

12     whether I think the claim is adequately pled or not and why.

13     And so sometimes we would come here and have awkward argument

14     where it appeared I clearly had my mind made up, and, in fact,

13:36:48 15   I did and so the argument wasn't helpful.

16          So we don't always have hearings always anymore on

17     motions to dismiss.  There's often times still things to talk

18     about, and so sometimes it's helpful.  We have things to talk

19     about today, but not really Weber County's motion for this

13:37:06 20   reason.

21          It is clear to me, Mr. Jackson, that the amended

22     complaint does not adequately state a claim against

23     Weber County for a lot of reasons.  And I have an oral ruling

24     prepared that I'll provide to you at the conclusion of this

13:37:23 25   hearing that I hope will provide a clear explanation about why

1    I think it's insufficient.

2         But what I wanted to talk -- I did think we needed

3    to talk today, and I want to talk about a couple things.  More

4    than anything what I really hope we can all do is get on the

5    same page moving forward in this case.  So let me begin with

6    the opposition to Weber County's motion to dismiss.

7         Mr. Jackson, lest this begin to fill like piling on

8    or picking on you let me just express at the beginning of this

9    discussion, I have two purposes in mind for this discussion.

10   One is to try to aid us as we move forward, to try to

11   streamline what's in front of us; and second is to try to just

12   out of respect for you and out of feeling of obligation to be

13   just really candid I think your -- I'm just guessing by your

14   bar number you don't have a lot of years of experience as a

15   lawyer, but I don't know that.  Maybe you practiced elsewhere

16   before you came here.  So the things that I'm about to say to

17   you are not intended to -- they are not threats, they're not

18   intended to intimidate you or harass you or scare you or

19   anything else.  But I do want to educate you about my

20   experience with this case as a judge because I'm neutral.  I

21   don't have a stake in the outcome in a case.  And I don't know

22   you.  I've had a couple cases with you.  And, of course, we

23   had argument, was it last week or the week before in a case?

24   I have no judgment about you, except I want to explain that as

25   somebody who doesn't have a stake in the outcome of this case

1    it was quite surprising to read your opposition to Weber

2    County's motion.  Mindful that you're an officer of the Court

3    and you have an obligation of candor to the Court I was

4    stunned, candidly, reading how many times in your opposition

13:39:33  5    you asserted that the plaintiffs have pleaded claims for

6    violations of the Fourth, Fifth, Sixth, 10th and

7    14th Amendments.  Those words don't appear in the amended

8    complaint, also a claim under the Family Federal Educational

9    Rights and Privacy Act.

13:39:55  10         The words 10th Amendment appear one time.  The

11   words 14th Amendment appear one time in the complaint.  There

12   is no mention in the complaint of the Fourth Amendment, Fifth

13   Amendment, Sixth Amendment or the Family Federal Educational

14   Rights and Privacy Act.  It is either -- at best it is

13:40:19  15   misleading to say that those claims are asserted in the

16   complaint and at worse it's just untrue.

17         I don't think you were trying to deceive me because

18   I've read the complaint, and I know what the complaint says.

19   And I've read your opposition, and I see where argue that

13:40:43  20   claims under those amendments should be inferred based on

21   facts contained in the amended complaint.  And there's a long

22   passage here in your brief that begins at Page 18 and goes on

23   to Page -- I guess it's through Page 21 where you recite

24   statements from the complaint and then you indicate after each

13:41:10  25   that you believe that that statement infers a cause of action

1   based on one of the constitutional amendments.  I don't share

2   that view, and maybe you and I just have a disagreement or a

3   misunderstanding about what it means to infer a claim.

4         I don't know how to make sense of some of it,

5   candidly.  For example, and this is slightly unfair because

6   I'm pulling statements now in isolation out of your paper, and

7   I'm not reading them in context with your other statements.

8   But here's a sentence that's on Page 21 of your memorandum in

9   opposition.  It's just an example.  You recite a short

10   sentence, quote:

11         For violating his right to privacy as a minor

12   child, end quote.  And then in parens, you seem to say that

13   that sentence infers a violation of the right to privacy under

14   the Fourth and Fifth Amendments as well as under the

15   10th Amendment, the 14th Amendment and the Federal Family

16   Educational and Privacy Rights Act.  I can't in any way read

17   that statement as suggesting that to me or to anyone else on

18   the plain language of the words in the amended complaint.

19         If it was your view that you meant to assert claims

20   under the Fourth and Fifth and Sixth and 10th and 14th

21   Amendments then one thing you might have done when you

22   received Weber County's motion to dismiss is you might have

23   said, oh, my goodness, if that was unclear just allow me an

24   opportunity to amend.  I'll be clear about it.

25         That's not what you said.  Instead you said that

7

1    those claims were there, even though they're nowhere

2    mentioned, and that's a problem.

3         Some of these claims I think are barred by law,

4    which is another potential problem, and it's not necessarily a

13:43:21  5    problem right now today.  I want to be clear about this.  And

6    I'm about to transition into a discussion about Rule 11 not

7    for the reason of telling you that I'm going to impose any

8    Rule 11 sanctions, though one of the defendants in the case

9    already asked for sanctions and I denied that motion without a

13:43:42  10   hearing.

11        Remember that Rule 11, and I'm painting with broad

12   strokes now.  I'm not reading directly from the rule.  Rule 11

13   ensures that when a lawyer signs a pleading that there's a

14   legal and factual basis for the relief and the theory that's

13:43:55  15   asserted or at a minimum upon discovery there would be factual

16   support for the facts; or, and/or that there's a good faith

17   argument for an expansion of the law.

18        I'm just only going to pick, let's pick two of the

19   proposed amendments that you say in your opposition give rise

13:44:18  20   to a 1983 claim.  One is the 10th Amendment.  And I will tell

21   you I didn't go surveying the legal landscape to figure out

22   whether any cases ever said that the 10th Amendment gives rise

23   to a private right of action or constitutional rights for

24   individuals.  The 10th Amendment, of course, as Weber County

13:44:43  25   points out in its reply memorandum is designed to give the

1    States independence from the federal government.  It would be

2    a surprise to me if there is any legal basis for asserting

3    that an individual citizen has a 10th Amendment claim against

4    a state or a 10th Amendment right that a state can violate.

13:45:04  5    Maybe, maybe there's a good faith legal argument for it.  I'm

6    not aware of any.

7         And it may be that the County just misconstrues the

8    nature of your Sixth Amendment claim, and maybe I do, also.

9    It's unclear to me that there would be any basis to assert a

13:45:20  10    Sixth Amendment claim against Weber County here because it's

11    the state that charges juveniles, not the county.  So even if

12    they were -- even if the minor in this case was charged in a

13    wrong jurisdiction, which I don't think is the case, that

14    wouldn't be a claim as a matter of law that could be asserted

13:45:40  15    against the county.  There would be no legal basis for that

16    theory.  And Rule 11 requires that you have engaged in

17    reasonable inquiry to satisfy yourself that you can assert

18    these claims based on the facts that you advance.  All of that

19    is by way of talking about a potential amendment in the case.

13:46:02  20         This is the first time we've seen each other in

21    this case.  This is the first time a court has weighed in on

22    the viability of these claims and theories, and so I have

23    little doubt in my mind that the plaintiff should be afforded

24    an opportunity to amend their complaint if they want.  So

13:46:19  25    we're not dismissing the claims with prejudice today.  To the

1    contrary, I'm dismissing the claims without prejudice so that

2    they have an opportunity to amend.

3              What I do want to say is this.  Did I already

4    mention attorney's fees?

13:46:38   5         MR. HOPKINS:  No.

6              THE COURT:  The County asks for costs and

7    attorney's fees in its motion.  We're not granting costs or

8    attorney's fees today.  If we find ourselves back here again,

9    and it's not clear -- and let me step back for a moment.

13:46:56  10             Some of the other defendants have also filed

11   motions that raise issues about the sufficiency of the claims

12   with respect to those defendants.  I'll tell you in complete

13   candor, I haven't read a word of any of those papers.  I need

14   to talk about why, and I will in a moment.  And I haven't read

13:47:17  15   your response, and I haven't gone to look at the complaint and

16   try and figure out whether it's susceptible to attack for the

17   reasons stated in those papers.  But this brings me all back

18   to this point.

19             I'm going to allow you to file an amended complaint

13:47:29  20   if you wish.  You don't have to, but you're welcome to.  You

21   and I will talk about a reasonable time period for putting

22   that together and filing it.  It can't be filed here unless

23   there's a federal claim in support of that complaint.  You

24   might just choose to re-file in state court on the state law

13:47:48  25   claims or you might choose to amend your 1983 claim and

1    re-file it here along with the state claims over which we have

2    supplemental jurisdiction.

3            Whatever you choose to do, if we're back here again

4    and we're testing the viability of this complaint and your

13:48:07  5    1983 claim again fails for the reasons, especially if it's on

6    the basis of any of the arguments that Weber County has

7    already put forward in its papers, which I think are nearly

8    completely legally right, and the law I think that the county

9    set forward is a correct statement of the law, or if we're

13:48:30  10    here on a new round of motions to dismiss by the other

11    defendants drawn to the amended complaint, if, for example,

12    one of them has identified a clear legal defect in the

13    pleading or the cause of action asserted against one of them

14    and you reassert that and there is no basis in law, then we

13:48:51  15    begin to have a Rule 11 problem or an attorney's fees issue

16    that I would very much like for us not to have to reach.

17            Let me stress again, please, I'm not -- that's not

18    a threat.  I'm just trying to give you fair notice so that we

19    make sure that when you go back to the drawing board, if you

13:49:08  20    do, you study very carefully the arguments and the authorities

21    that the defendants have already provided all of us, and you

22    can disagree with their arguments.  So you don't have to

23    assume that they're right.  You don't have to change your

24    claims because one of them says it's incorrect.  You won't

13:49:24  25    know until we meet.  But if it's clear that the law prohibits

1   or bars or claim for reasons that they've articulated and you

2   might know that had you just read a case that they cited and

3   you don't read it, then we're having a different conversation.

4          Now let me explain why we're here having this

13:49:44   5   conversation here today on Weber County's motion.  The

6   10th Circuit has been very clear I think in its guidance to

7   trial courts in this circuit that where state law claims and

8   federal claims are here together that I'm required to

9   scrutinize the federal basis for jurisdiction.  And if the

13:50:08  10   federal claim or claims that provide the basis for

11   jurisdiction fail, then I'm ordinarily told I should send the

12   state law claims back to state court because the state courts

13   have an interest in developing and deciding their own law, not

14   that we can't and we do when we're here on supplemental

13:50:31  15   jurisdiction, but if your 1983 claim fails and we're only left

16   with state law claims I won't reach the merits of those

17   claims.  We'll instead direct the complaint to state court.

18          And I can't now remember, I think you filed in

19   federal court in the first action, so I think I would dismiss

13:50:48  20   because there's nothing to remand and there would be a

21   dismissal without prejudice.  So that's why we're starting

22   today with the Weber County motion because it's the only one

23   that implicates federal jurisdiction.

24          I will say there are -- you also make in your

13:51:04  25   complaint a passing reference to diversity jurisdiction under

1    1332, and it's insufficiently pled to provide any way for the

2    Court to evaluate whether there is separately diverse

3    jurisdiction.  Nobody has raised that issue, though the

4    10th Circuit has told me I'm required to raise it on my own.

13:51:24 5    So I'll just point out that if I was just -- if the 1983 claim

6    were dismissed today with prejudice I would conclude that the

7    complaint lacks the factual allegations necessary to provide a

8    basis for diversity jurisdiction, and I would dismiss the

9    complaint.  So if you choose to amend you might also think

13:51:46 10   about whether you are, in fact, seeking to assert diversity

11   jurisdiction.  And if so on what basis.  And then there's a

12   good case from the 10th Circuit, let me think for a minute

13   what it's called.  The name escapes me right now.  But if you

14   look you'll find some good case law from the 10th Circuit in

13:52:09 15   the last year or two describing the kinds of factual

16   allegations that are required to support a claim of diversity

17   jurisdiction.

18            Mr. Jackson, before I give an oral ruling, do you

19   have any questions about what we've just talked about or do

13:52:26 20   you wish to provide any thoughts or feedback about it?  It's

21   not a happy message to get at the beginning of a hearing.

22            MR. JACKSON:  I appreciate it, though, Your Honor.

23   And I guess -- from the complaint I guess just to back my

24   assertions and what we put in the complaint, and I think in

13:52:53 25   there we noted the guidance from this court in regards to

1   filing a 1983 action where the specific citing of the

2   amendment isn't necessary.  But I understand how this can be

3   confusing because in our response we put a bunch of inferences

4   in there from one claim in trying to rebut it instead of

13:53:18  5   saying, well, this is -- this is just -- this is the

6   Constitution that we're talking about, not just trying to

7   throw everything under the sun.

8           So I understand that, Your Honor.  And so that's

9   kind of the mindset the complaint was prepared going into it

13:53:39  10  with noting the violations and the language, but not

11  specifically citing constitutional violations.  But -- and

12  again, I understand that it probably would have been easier

13  instead of trying to be prideful and back what I put to just

14  amend the complaint.  But I appreciate the Court's willingness

13:54:04  15  to allow us to amend and re-file and whatnot.

16          I guess one question I have in regards to the

17  response, and I don't know if the Court is willing to go into

18  this, is it specifically based on the failure to state a claim

19  or are there other issues?  Because I know there's a specific

13:54:25  20  issue as to -- I was kind of prepared going into this as to

21  whether or not the dissemination of juvenile protective

22  information is a constitutionally protected interest.  I don't

23  know if the Court went there or not.

24          THE COURT:  Before you and I have that discussion,

13:54:45  25  why don't I read my ruling, and I think it will explain the

14

1    basis for my ruling.  I do want to just say, let me just

2    briefly address the issue that you raised first, though.

3          I said that I think the County has correctly stated

4    the law on at least -- and that's true I believe as to the

13:55:07  5    points the County addressed.  I will say I didn't do any 1983

6    litigation as a lawyer before I came to the court, and I've

7    been surprised at how complex it is and how nuanced.  It is a

8    difficult minefield for a plaintiff, any plaintiff to

9    navigate, I mean, it is really a challenging work, and the

13:55:30 10    different theories that have to be advanced against different

11    kinds of defendants.  And then we haven't yet begun to talk

12    about qualified immunity.

13          Part of the reason that I think -- let me first

14    say, I think that the County has correctly stated the case

13:55:44 15    law, the standard that I'm required to apply in evaluating the

16    sufficiency of the pleading in this context.  The 10th Circuit

17    has said this.  This is in the ruling I'll read in a minute,

18    but it's the Robbins vs. Oklahoma decision from the

19    10th Circuit that very unambiguously tells us:

13:56:03 20          Whatever Rule 8 requires, whatever Rule 12 requires

21    we know that if you're asserting a Section 1983 claim, quote,

22    a plaintiff must allege facts sufficient to show assuming

23    they're true that the defendant plausibly violated his or her

24    constitutional rights and that those rights were clearly

13:56:22 25    established at the time.  This is the 10th Circuit speaking

1    again.  This requires enough allegations to give, I would say,

2    each defendant notice of the theory under which his or her

3    claim is made.

4              I think that's the legal standard, and that's what

13:56:38  5    I'll be reviewing -- that's the lens through which I'll be

6    reviewing an amendment if one is forthcoming.  And the reason

7    that is going to be helpful to all of us including you is, and

8    I'm not coaching anybody, I'm not saying anything that anybody

9    in this courtroom doesn't know, the next motion that usually

13:56:58  10   comes is the qualified immunity motion.  And we won't be able

11   to go engage in that exercise if the claims and theory

12   supporting the claims aren't adequately alleged in the

13   complaint itself.  So that could prevent a hurdle for all of

14   us.  I just advise you of that at the outset.

13:57:15  15             Let me read my ruling, and then I'll answer any of

16   the questions you have, mindful that I'm not permitted to

17   coach parties, but I do think we should make use of our time

18   here to give you sense for what at least this judge, how I'm

19   viewing things so that you can try and work around that or go

13:57:33  20   somewhere else if you don't like me.

21             So all right.  Here's the ruling.  You don't need

22   to keep detailed notes.  We'll enter a minute entry in the

23   next few days referencing this portion of the transcript as

24   the Court's ruling and the basis for the Court's ruling.

13:57:49  25             So before the Court today is Weber County's motion

1        to dismiss.  It's filed at Docket 16.  Just briefly by way of

2        background, IF is a minor, and he was charged through the

3        Weber County Juvenile Center on charges involving a controlled

4        substance, possession of a dangerous weapon by a minor and

13:58:15    5        theft.  Because IF was a minor his court proceedings were not

6        open to the public.  And as part of the resolution of that

7        case in Weber County IF was ordered to get his fingerprints

8        taken.

9                On April 10th -- I should have said at the outset

13:58:33   10        these facts are drawn from the complaint.  There's no factual

11        record before us, but these are the allegations in the

12        complaint which are assumed to be true for purposes of our

13        hearing today.

14                On April 10th of last year IF and his mother went

13:58:48   15        to the Weber County Adult Detention Center for fingerprinting.

16        The Weber County Sheriff's Office then published IF's mugshot

17        and information about the charges against IF, all of that

18        published on its website.  And that information was then

19        disseminated to news sources, some of whom are defendants in

13:59:13   20        this case on theories that they unlawfully rebroadcast that

21        information.

22                The Fazzios then filed this complaint and later

23        amended the complaint alleging that the publication of IF's

24        mugshot and charging information caused emotional and

13:59:34   25        reputational damage for both IF and his parents.

17

1          I'm going to pause right there for just a moment

2     because we didn't talk about this in our earlier conversation.

3     But this is an important thing to keep in mind if there's a

4     further amendment and we're back reviewing the sufficiency of

13:59:54  5     a claim.

6          In this context, in the 1983 context, it will be

7     important if not essential that each claim identify which

8     claimant is asserting the claim and on what theory or basis

9     because there may be different theories or bases that would be

14:00:11  10     available to some plaintiffs and not others and against which

11     defendant for the same reason.  That's going to be an integral

12     part of any viable 1983 claim here.

13          So returning to this case and this ruling at issue

14     today are the Fazzios' claims against Weber County, first

14:00:38  15     alleging a violation of IF's civil rights under Section 1983;

16     and then also claims for defamation; publication of

17     information in a false light; public disclosure of

18     embarrassing private facts; intentional infliction of

19     emotional distress; and breach of fiduciary duty.

14:01:01  20          And I'll pause again for a minute about some

21     procedural history.  The Fazzios amended their complaint after

22     Weber County filed its motion to dismiss.  But I observe that

23     the amended complaint added only Acucom as a defendant and did

24     not change any of the allegations against Weber County.  Weber

14:01:19  25     County asks in its reply that we redirect the motion to

18

1    dismiss toward the amended complaint, and I think that's

2    appropriate here.  There's no unfair notice.  The result would

3    be the same, and so that's how I'm construing the motion.

4           So turning next, then, to the legal standards that

14:01:37    5    I'm required to apply today, Rule 12(b)(6) of the Federal

6    Rules of Civil Procedure requires a plaintiff to state a claim

7    upon which relief can be granted.  And to do so a complaint

8    must allege sufficient facts to make the claims for relief

9    plausible on their face.  And, of course, that's familiar

14:01:57   10    language from Iqbal and Twombly.

11           And Rule 8 requires enough specificity in a

12    complaint to inform the defendants of the actual grounds of

13    the claims against them.  I'm reading there from

14    Robbins vs. Oklahoma in the 10th Circuit, 2008.  And as we all

14:02:16   15    know, in reviewing a motion to dismiss I'm required to accept

16    the well-pleaded allegations of the complaint as true and to

17    construe those allegations in the light most favorable to the

18    plaintiff.  I cite for support Cressman vs. Thompson from the

19    10th Circuit, 2013.

14:02:34   20           However, I'm told I need not accept the complaint's

21    legal conclusions nor threadbear recitals of the elements of a

22    cause of action supported by mere conclusory statements.  Of

23    course, that's language from the Iqbal decision in 2009 from

24    the Supreme Court.  So in light of those legal standards,

14:02:56   25    we'll evaluate the claims here.

1          The amended complaint contains as I've said earlier

2     only one federal claim.  That is an alleged violation of

3     42 United States Code Section 1983.  Because subject matter

4     jurisdiction over this entire lawsuit is predicated on the

14:03:16  5     survival of the Section 1983 claim that's where we'll begin.

6          A plaintiff who claims a Civil Rights violation

7     under Section 1938 must allege a person acting under color of

8     state law has deprived the plaintiff of a right secured by the

9     US Constitution or federal law.  I'm citing here the statute

14:03:39 10     itself, Section 1983.  To establish Section 1983 liability for

11     a municipality such as Weber County a plaintiff must show,

12     one, the existence of a municipal custom or policy; and number

13     two, a direct causal link between the custom or policy and the

14     violation alleged.  That's quote from <u>Jenkins vs. Wood</u> from

14:04:06 15     the 10th Circuit 1996.

16          I'm going to pause here again for a moment to visit

17     about allegations in the complaint in Rule 11 for just a

18     moment.  One of the allegations in the amended complaint as I

19     recall, Mr. Jackson, is that the County had a policy -- I want

14:04:36 20     to find the language.  It was important language.

21          MR. HOPKINS:  Paragraph 29, I believe, Your Honor.

22          THE COURT:  Well, that's the opening paragraph.

23          MR. HOPKINS:  Yeah.

24          THE COURT:  Isn't there another one where it's

14:04:46 25     alleged that the policy is to disseminate juvenile

1    information?

2              MR. HOPKINS:  That's what 29 says.

3              THE COURT:  I think I was also -- I think I was

4    thinking of the second paragraph, 37.  That's something else

14:05:11  5    we should devote our attention to in another amendment.  Let's

6    make sure that we don't have duplications of the paragraph

7    numbers.  There were two paragraphs numbered 37 in different

8    places in the complaint.  The second one says:  For having a

9    procedure or policy in place whether through administrative

14:05:27 10    rules or implementation of software and programs that

11    disseminate statutory, protected and judicially protected

12    juvenile information into the public domain regarding a

13    juvenile civil proceeding brought against them.

14              I'm not sure what that means, but I read that to

14:05:44 15    mean that you think that the County has a policy of

16    disseminating private information about juvenile minors and

17    their cases.  And I think that's not an allegation that

18    appears to be pled on information and belief.  And I will be

19    surprised if there's a factual basis for an allegation like

14:06:05 20    that.  In fact, I think your complaint rests on -- I think

21    your complaint rests on a theory that the policy is not to do

22    that, but you did it, anyway, and that was unlawful.  But I'll

23    leave it to you to decide what your theories are.

24              I just want to ensure that we have -- that we're

14:06:23 25    mindful of our Rule 11 allegations not only with respect to

1    the legal theories and whether they're viable, but whether the

2    facts are supported or would be supported after a reasonable

3    opportunity for discovery.

4        All right.  Returning now again -- I'm sorry to be

14:06:41  5    jumping in and out, returning to my ruling and the basis for

6    that ruling.  In their amended complaint the Fazzios allege

7    Weber County had, quote, a procedure or policy in place that

8    disseminates statutory protected and judicially protected

9    juvenile information into the public domain regarding a

14:07:02  10    juvenile proceeding brought against them.  That's

11    Paragraph 37.

12        And the Fazzios allege that policy, quote, violated

13    the rights, privileges and immunities via secured by the state

14    and Federal Constitution and laws.  That's Paragraph 38.

14:07:21  15        However, it's unclear what rights the Fazzios argue

16    were violated.  The amended complaint specifically mentions

17    only one constitutional right and maybe two.  I'm not sure.

18    The 10th Amendment is referenced, but not in -- I think in

19    Paragraph 4, not in the part of the complaint that talks about

14:07:39  20    the theories or claims.

21        The one constitutional right that is mentioned is

22    the 14th Amendment.  And the Fazzios argue the 14th Amendment

23    protects IF's parents', quote, right to the raising and

24    rearing of the minor child without state intervention, end

14:07:58  25    quote.  And then the Fazzios allege that Weber County violated

1    that right.  That's in Paragraph 48.

2         The amended complaint also alleges IF has, quote,

3    due process rights to have the State bring or declare to bring

4    criminal charges to the public against IF through the

14:08:16  5    constitutional and criminal procedures set forth under Utah

6    and federal law, end quote; and then goes on to say that,

7    Weber County violated IF's right to privacy as a minor child.

8    Those allegations are set forth in Paragraphs 51 and 53 of the

9    amended complaint.  And I'll take up all of those then in turn

14:08:38 10    starting with parental rights.

11         The Fazzios allege Weber County violated their

12    rights under the 14th Amendment which protects parents' right,

13    quote, to make decisions concerning the care, custody and

14    control of their children, end quote.  That's from the Supreme

14:08:57 15    Court Troxel vs. Granville in 2000.  The Fazzios have not

16    alleged any facts relating to Weber County's interference with

17    the care, custody and control of IF.  The Fazzios argue

18    Weber County, quote, unilaterally and unlawfully, end quote,

19    made the decision for the Fazzios whether to release

14:09:16 20    information about the case to the public.  That's in the

21    opposition memorandum filed by the Fazzios at Page 22.  But

22    I'll observe that the Fazzios have presented no legal or

23    factual authority for the proposition that a governmental

24    entity's decision to release juvenile arrest records

14:09:36 25    implicates a protected parental right.  And for that reason I

23

1       preclude that that claim is not adequately pled.

2                    Turning to due process.  The Fazzios' clearest

3       allegation of a due process violation is that IF has, quote,

4       due process rights to have the state bring or declare to bring

14:09:53  5     criminal charges to the public against IF through the

6       constitutional and criminal procedures set forth under Utah

7       and federal law.  That's Paragraph 51 again of the amended

8       complaint.

9                    However, that allegation appears to be one viable

14:10:13  10    only against the state which is the entity that brings

11      criminal charges against juveniles in the state of Utah, not

12      the County.  And for that reason, it fails to adequately state

13      a claim against Weber County.

14                   The complaint also appears to allege a due process

14:10:28  15    violation stemming from reputational harm.  The Fazzios allege

16      Weber County first -- excuse me -- Weber County published

17      false information about IF which deprived IF of liberty and

18      property interests related to his reputation.  That's

19      Paragraph 49.

14:10:48  20                  It is true that reputational harm when combined

21      with an injury to a right or status established by state law

22      may be vindicated for the due process clause of the

23      14th Amendment, so said the 10th Circuit in Doe vs. Bagan in

24      1994.  However, it is unclear from the complaint at least on

14:11:13  25    what grounds the Fazzios are pursuing this claim because they

1   have not alleged that IF experienced an altered status as a

2   matter of state law.

3           Additionally in the Fazzios' opposition to motion

4   to dismiss they characterized this allegation as implicating

14:11:30  5   not just the Fifth and 14th Amendments but also the Fourth

6   Amendment which does not provide grounds for a due process

7   claim concerning reputational harm or damage.  That discussion

8   was set forth on Pages 19 and 20 of the opposition brief.

9           Given the lack of clarity about the grounds on

14:11:47 10   which the claim rests the Court concludes this claim does not

11   satisfy Rule 8's notice requirement that the complaint

12   informed the defendants of the actual grounds of the claim

13   against them.  And I cite for additional support again the

14   Robbins vs. Oklahoma decision.  And for those reasons I

14:12:06 15   conclude that a due process claim is not adequately pled.

16           Turning next to the right to privacy.  Weber County

17   also argues the Fazzios have failed to state a claim for a

18   violation of a right to privacy.  And in their opposition to

19   the motion to dismiss the Fazzios state they do not allege a

14:12:26 20   right to privacy and disclosure of arrest records, judicial

21   proceedings and police reports.  This is Note 4, Page 29 of

22   the opposition memorandum.  Instead the Fazzios assert that

23   they are alleging the right to privacy from state action

24   without a finding of probable cause on the charges that were

14:12:44 25   posted.  That's also on Page 29 of the opposition memorandum.

1          But the Fazzios have presented no argument why

2     Weber County which did not arrest or charge IF was required to

3     have probable cause to post the charges.  And for that reason,

4     allegations of a right to privacy on that basis fail to state

14:13:05   5     a valid claim.

6          I observed that in their opposition to their motion

7     to dismiss the Fazzios argue that their amended complaint also

8     advances claims for violations of the Fourth, Fifth, Sixth and

9     10th Amendments as well as the Federal Family Educational

14:13:25  10     Rights and Privacy Act.  However, none of these allegations

11     are sufficiently pleaded in the amended complaint.  And, in

12     fact, as I've already said the amended complaint never even

13     mentions the Fourth, Fifth or Sixth Amendment.  It mentions

14     the 10th Amendment only in passing when we're describing

14:13:44  15     Weber County as a party in the case and makes no reference at

16     all about the Federal Family Educational Rights and Privacy

17     Act.

18          Weber County is not required to guess which

19     constitutional or federal violations the Fazzios' theories are

14:13:59  20     reliant upon.  Because these claims do not meet Rule 8's

21     notice requirement they have to fail at this stage of the

22     proceeding.

23          Just briefly with respect to the state law claims.

24     The remaining claims asserted against Weber County are all

14:14:14  25     state law claims.  These claims are here in federal court only

1   because the Court can exercise supplemental jurisdiction over

2   state law claims that share a common nucleus of operative

3   facts with federal claims that are already here.  I cite for

4   support Estate of Harshman vs. Jackson Hole Mountain Resort

14:14:38 5   Company from the 10th Circuit in 2004.  But the exercise of

6   supplemental jurisdiction is discretionary.  And as I said at

7   the outset the 10th Circuit has informed me and instructed the

8   trial courts rather in the circuit that when all federal

9   claims have been dismissed the Court may and usually should

14:14:54 10   decline to exercise jurisdiction over any remaining state law

11   claims.  I'm citing there Smith vs. City of Enid, 1998.

12         By having concluded that no federal claim survives,

13   at this stage I decline to exercise supplemental jurisdiction

14   over the state law claims because notions of comity and

14:15:18 15   federalism demand that the state court try its own lawsuits

16   absent compelling reasons to the contrary.  That's a quote

17   from Brooks vs. Gaenzle, 10th Circuit, 2010.  So the state law

18   claims asserted against the County are also dismissed without

19   prejudice.

14:15:34 20         In conclusion, Weber County's motion to dismiss is

21   granted.  That's Docket Number 16.  The Fazzios' amended

22   complaint is dismissed without prejudice.  The Fazzios may

23   file -- well, let's talk about what you might file.  And let's

24   take a minute and take up the claims against the

14:16:02 25   nongovernmental defendants, also.

1          What I came to the bench thinking we should do

2     after our discussion today, Mr. Jackson, is just dismiss the

3     entire complaint without prejudice, not just the claims

4     against the County in view of the fact that there likely would

14:16:18  5     either be an amendment or dismissal of the complaint because

6     there's no longer a 1983 claim, and if there was an amendment

7     I was guessing that you would want an opportunity to address

8     some of the arguments made by the defendants in their motion

9     to dismiss.  So I had in mind just granting you leave --

14:16:37 10     dismissing, the entire complaint and granting you leave to

11     file an amended complaint when it is that you wish to do so.

12          And let me just further say, under the local rules

13     and ordinarily it's my practice that instead of filing an

14     amended complaint we have a motion for leave to file an

14:16:56 15     amended complaint.  That just I think expedites briefing on

16     the viability of the claims, and then it gets us where we need

17     to be more quickly here just because we have other defendants

18     who aren't being heard today have already filed motions to

19     dismiss.  And I can anticipate that if we're back here in

14:17:14 20     federal court we'll be hearing from everybody again.  It

21     seemed to me that maybe the better course here, the more

22     direct path is just to file the amended complaint, and it will

23     take up its viability, and the defendants will either answer

24     or move to dismiss, stating again that there's no requirement

14:17:31 25     that you amend and try to stay here.  You may want to go to

                1    state court.  It's entirely up to you.

                2             But do you have any views about that before we hear

                3    from the County?  And if you do want time to think about

                4    filing an amended complaint, how much time would you like?

14:17:45        5             MR. JACKSON:  Yes, Your Honor.  I think we would

                6    want some time.  Maybe 30 days might be sufficient.  We can

                7    kind of look at it with the jurisdictional claims raised and

                8    everything here.

                9             THE COURT:  That makes sense to me.  And it seems

14:17:58       10    right.

               11             Mr. Hopkins, you must be exhausted from all the

               12    argument you've had to make today.  I can imagine the County

               13    would potentially pick a different path than the one that I've

               14    outlined.  I think this is the one that is most fair and makes

14:18:17       15    most sense in view of where we are.  But your view?  Your

               16    response?

               17             MR. HOPKINS:  Yeah.  I wish it would have been with

               18    prejudice, but I understand your view.  I just don't think

               19    they're not going to be able to show invasion of privacy claim

14:18:29       20    with the facts they have in this case.  And so then we'll

               21    probably be back here again, but hopefully more on the

               22    substance of that issue.

               23             THE COURT:  We'll see.  I won't prejudge a

               24    complaint that we haven't seen yet.  It may look different

14:18:42       25    than the one we have in front of us.  If it's going to survive

1    it needs to look different in some ways, for sure.

2            So the other defendants who aren't here arguing

3    today may also oppose what I'm doing.  But I also don't think

4    it makes sense to have motions to dismiss drawn to a complaint

14:18:58  5    that now is infirm.  And so I'm -- I'll probably -- I'm sure

6    what I'll do is deny their motions to dismiss without

7    prejudice to re-file them after the second amended complaint

8    is filed, if there is one.  So those arguments can be

9    reasserted in another motion to dismiss or --

14:19:16  10            MR. HOPKINS:  Your Honor, does that go for the

11    motion for summary judgment that has been filed, as well?

12            THE COURT:  It does.  I mean, we're going to have

13    new claims in front of us and potentially new theories, and

14    we'll take them all up at that time.

14:19:28  15            Mr. Dryer, does that change your desire to be heard

16    today?

17            MR. DRYER:  Yes, Your Honor.  If I might make a

18    brief inquiry.  Thank you for asking if I have any views on

19    this.

14:19:38  20            THE COURT:  Would you kindly just come up to the

21    podium so our court reporter can hear you more clearly?  Thank

22    you.

23            MR. DRYER:  Thank you, Your Honor.  My inquiry

24    would be, I would presume and it would be helpful I think

14:19:54  25    perhaps for counsel and the rest of us if the Court could

1   confirm my presumption that the cautions that you've outlined

2   today about Rule 11 and the pleading requirements of that

3   would also be -- although they were made in the context of the

4   1983 claims, would it be the Court's view that those cautions

14:20:17  5   potentially would also be applicable to the pleading, any

6   re-pleading involving the other parties on the other claims?

7   And I'm specifically referring to the Court's admonition that

8   the alleged harm that each plaintiff has been alleged must be

9   done with specificity and must be specific as to the multiple

14:20:42  10  defendants, as well.

11          THE COURT:  So I probably was not as clear and as

12  direct about that as I would like to have been earlier.  Thank

13  you, Mr. Dryer.

14          Let me answer that question this way.  Mr. Jackson,

14:20:56  15  the way I've been thinking about it a little bit, not a little

16  bit, quite a bit, actually, I think this general point is well

17  illustrated here.  Given how the argument developed, the

18  positions of the parties sort of developed in the course of

19  the briefing on Weber County's motion to dismiss I don't think

14:21:21  20  it would necessarily -- it may or may not be a Rule 11

21  violation, for example, to assert a 10th Amendment claim as a

22  basis for a Civil Rights action.  I have no idea whether there

23  is any legal authority or good faith basis to advance that

24  argument.  But let's imagine that had been done in the

14:21:42  25  complaint and then the defendants file a motion to dismiss.

31

1       That cites authority saying there is no basis for that claim.

2       If the plaintiffs then continue to try to advance that claim

3       in view of clear authority saying that there's no such claim,

4       that begins to raise a Rule 11 concern in my mind.  It's

14:22:01  5   something that you're required to have researched sufficiently

6       in advance.  But it wasn't, for example, in the motion to

7       dismiss with the County until the County's opening breach that

8       we read with about the Fourth, Fifth, Sixth and 10th

9       Amendments in your opposition.  And it wasn't until we got the

14:22:21  10  County's reply that I think the plaintiffs were on fair notice

11      that some of those claims are probably not viable.

12              If some of those claims that are barred by law

13      reappear in an amended complaint, that would begin to raise

14      Rule 11 concerns for me.  And that is true not only with

14:22:37  15  respect to the County, but now that you have the benefit of

16      the briefing from the parties similar arguments, if there

17      was -- I'm mindful that we're not all -- we haven't all been

18      doing Civil Rights litigation and First Amendment litigation

19      for our whole career.  And for some of us that career is a few

14:22:57  20  years and for others, Mr. Dryer, maybe a few decades, I don't

21      know.  But there's room here.  Nobody's dropping any hammers

22      today.

23              But if the defendants have identified controlling

24      authority on a point and the plaintiff continues to advance

14:23:13  25  into the prongs of that authority without a good faith basis

1    for doing so, then, yes, we'll be talking about attorney's

2    fees or sanctions or Rule 11 issues for any of the parties.

3              Mr. Dryer, that was a long answer, but I appreciate

4    you raising the question so we're all clear.

5              MR. DRYER:  Thank you, Your Honor.  And I

6    appreciate that clarification.  My concern is the cost for my

7    client.  They've invested considerable time and effort and

8    expense in fully briefing what we believe are dispositive

9    constitutional based defenses that will be applicable

10   regardless of how the complaint is re-pled.  And I certainly

11   don't want to get into the merits at this point.  But I'm

12   concerned that they're allowed to replead.  They reassert

13   everything.  We re-file a new motion.  And then the Court

14   determines there is no federal jurisdiction, and then it gets

15   bumped over to state court and we've got to go through this

16   whole thing again.  This has certainly had a chilling impact

17   on the newspaper's reporting on this case and other matters

18   with Weber County.

19             And so that would be -- I just wanted to have the

20   Court make it clear to counsel that your admonitions would be

21   applicable on other claims, as well.

22             THE COURT:  Let me add one thing to that,

23   Mr. Dryer, because it was an unstated thought that I had as I

24   thought about this approach.  By dismissing the motions filed

25   by the nongovernment entities without having been heard, I've

1    reassumed -- excuse me -- I have assumed that if the complaint

2    is not substantially different with respect to the claims

3    against those defendants, they'll just be re-filed, so it

4    shouldn't be expensive to re-tee up those issues.  And if

14:24:58  5    there are significant modifications, then really what you've

6    obtained is the benefit of First Amendment in view of some

7    arguments that seem to have had sway.

8         But where it really comes into play for the

9    plaintiffs, Mr. Jackson, just so we're all on the same page,

14:25:16  10    is very little doubt in my mind that plaintiffs have an

11    opportunity to hear from the other side and then hear from the

12    Court and a chance to try and reshape their claims before they

13    lose those claims on the merits.  And the 10th Circuit is

14    quite -- feels quite strongly about that.

14:25:33  15         But I think having had the benefit of briefing,

16    though you haven't yet heard from the Court on those arguments

17    from the nongovernmental defendants this is one of those

18    instances where it becomes less clear or less certain that

19    there be further amendments offered, and if so how many.  We

14:25:48  20    get closer to the end for the reasons that Mr. Dryer

21    articulated.  I hope that's not too obtuse.  I hope I'm clear

22    about that.

23         MR. DRYER:  Thank you, Your Honor.

24         THE COURT:  Thank you, Mr. Dryer.

14:25:59  25         And, Mr. Green, you've had the benefit of that

1    discussion.  I know I said I would allow you to appear by

2    phone only if you didn't argue, so don't argue.  But do you

3    have any questions you want to add or any questions that you

4    want to pose on behalf of Acucom?

14:26:16    5          MR. GREEN:  Not at the moment, Your Honor.  My

6    concerns were similar to those of Mr. Dryer, and you responded

7    to them.

8          THE COURT:  Thank you, Mr. Green.

9          Mr. Jackson, I'm back to you.  What other questions

14:26:24   10    do you have, or what else should you and I take up while we're

11    here?

12          MR. JACKSON:  I guess at this time we wouldn't

13    raise anything additional further.  But I appreciate the

14    Court's time in addressing this matter.

14:26:40   15          THE COURT:  I -- let me add one other thing just

16    briefly, and I want to be clear again, Mr. Jackson.  I'm

17    not -- you're a lawyer and an officer of the Court, and so you

18    already know this, of course.  But I just observe that

19    something that is not entirely uncommon in this context in the

14:27:13   20    context of 1983 claims is to associate other counsel sometimes

21    where these claims are complicated and complex and factually

22    specific and legally -- it's a unique and discrete area of

23    practice, for sure.  I'm not telling you to do that.  I'm just

24    observing that that's not -- it's not uncommon.

14:27:36   25          Okay.  Counsel, thank you for your time and for

                                                                              35

1    your patience today.  I appreciate it.  We'll stand in recess.

2        (Whereupon, the court proceedings were concluded.)

3                    *   *   *   *   *

1    STATE OF UTAH          )

2                           ) ss.

3    COUNTY OF SALT LAKE  )

4            I, KELLY BROWN HICKEN, do hereby certify that I am

5    a certified court reporter for the State of Utah;

6            That as such reporter, I attended the hearing of

7    the foregoing matter on May 29, 2018, and thereat reported in

8    Stenotype all of the testimony and proceedings had, and caused

9    said notes to be transcribed into typewriting; and the

10   foregoing pages number from 3 through 36 constitute a full,

11   true and correct report of the same.

12           That I am not of kin to any of the parties and have

13   no interest in the outcome of the matter;

14           And hereby set my hand and seal, this ____ day of

15   _____ 2007.

16

17

18

19

20           _____
                     KELLY BROWN HICKEN, CSR, RPR, RMR
21

22

23

24

25