Frank D. Mylar (5116)
Andrew R. Hopkins (13748)
MYLAR LAW, P.C.
2494 Bengal Blvd.
Salt Lake City, Utah 84121
Phone: (801) 858-0700
FAX: (801) 858-0701
Mylar-Law@comcast.net

Attorneys for Defendant Weber County

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| IN RE INTEREST OF I.F., a minor child, SHERRIE FAZZIO, and MICHAEL FAZZIO,<br><br>Plaintiffs,<br><br>v.<br><br>THE STANDARD EXAMINER, SANDUSKY NEWSPAPER INC., WEBER COUNTY, and ACUCOM CORPORATION,<br><br>Defendants. | **DEFENDANT WEBER COUNTY'S SECOND MOTION TO DISMISS AND MEMORANDUM IN SUPPORT**<br><br>Case No. 1:17-cv-132-RJS-DBP<br><br>District Judge Robert J. Shelby<br><br>Magistrate Judge Dustin B. Pead |

Defendant Weber County, through its attorneys Frank D. Mylar and Andrew R. Hopkins, respectfully submits this second motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendant Weber County's motion should be granted based upon the pleadings and the following arguments:

## INTRODUCTION

Plaintiffs' suit arises from a situation where the Weber County Jail (which is run by Defendant Weber County) fingerprinted and photographed Plaintiff, a juvenile, pursuant to an

order from a juvenile court. The Weber County Jail does not normally process juveniles, but agreed to in this situation. Subsequent to the Jail's processing of Plaintiff, his booking photo, along with a description of some of the crimes he had been arrested for, appeared on the Jail's website that shares details with the public and press about daily Jail bookings. Plaintiffs' claim this violated their constitutional rights in a variety of ways. However, the release of this information, which was accidental, does not implicate any federally protected right. None of Plaintiffs' claims have merit, and this case should be dismissed with prejudice.

## STATEMENT OF FACTS

1. Defendant Weber County is a political subdivision of the State of Utah and operates the Weber County Jail. (2nd Am. Compl. ¶ 5).

2. Plaintiffs I.F., a juvenile[1], and his legal guardian parents, Sherrie and Michael Fazzio, are residents of Weber County, Utah. (2nd Am. Compl. ¶¶ 1-2).

3. Plaintiff was arrested for incidents that occurred on February 21, 2017. On April 10, 2017 a juvenile court ordered him to be fingerprinted by "Juvenile Justice Services or local law enforcement with 120 days as ordered by the Juvenile Court." (2nd Am. Compl. ¶¶ 12-15).

4. That same day, Plaintiff, with his mother Sherrie Fazzio, went to the Weber County Jail with a copy of the juvenile court order. (2nd Am. Compl. ¶¶ 20-22).

5. The booking area of the Jail was cleared of adults before Plaintiff's fingerprints and picture were taken. (2nd Am. Compl. ¶¶ 23-24).

6. On April 11, 2017 Plaintiff and his parents became aware that Plaintiff's mugshot and arrest information was being circulated in the media. The information had been automatically

---

[1] Unless otherwise noted, when the singular term "Plaintiff" is used it is meant to refer to I.F.

uploaded to a website the Jail uses to distribute mugshots to the media/public. (2nd Am. Compl. ¶ 25).

7.     Michael Fazzio made Chief Deputy Burton at the Jail aware of the mistake and the Jail took the mugshot and arrest information off the website. (2nd Am. Compl. ¶ 46).

8.     Plaintiffs allege that it is Weber County's policy to disseminate recent bookings to various news sources for their use, which is how Plaintiff's information was released. (2nd Am. Compl. ¶¶ 42-43).

9.     Plaintiffs rely on an email from Plaintiff Sherrie Fazzio to her Counsel where she is quoting information from the Weber County Sheriff's webpage. (Pls.' Ex. S). However, this email from Sherrie Fazzio states Weber County's website says "that [a] juvenile's information is not generally released unless they are certified as an adult by the judge . . . ." (Pls.' Ex. S).

## ARGUMENT

Plaintiffs' "Second Amended Supplemental Complaint Fazzio"[2] should be dismissed for failure to state a claim upon which relief can be granted as to Defendant Weber County. The Court recently granted Weber County's Motion to Dismiss without prejudice. (Doc. No. 16). Plaintiffs filed a Motion for leave to re-open the case and file a second amended complaint and attached a redacted version of "Second Amended Verified Complaint Fazzio" as an exhibit. (Doc. No. 70-2). Plaintiffs then filed a different redacted Complaint with an additional thirteen pages titled "Second Amended Supplemental Complaint Fazzio." (Doc. No. 77). Plaintiffs did not file an unredacted version of this Complaint as required by the rules and it references exhibits attached to their earlier improperly filed summary judgment motion. (Doc. No. 49). Despite the Court's warning of filing

---

[2] For simplicity it will generally be called the Complaint from this point forward.

another deficient complaint, Plaintiffs latest Complaint is still inadequate and should be dismissed with prejudice.

Plaintiffs' Complaint has one cause of action against Weber County with ten subparts all grounded in Section 1983. They cannot recover on any of these claims on their face and so their Complaint should be dismissed. A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Plaintiffs' Complaint fails "to state a claim upon which relief can be granted" and, therefore, should be dismissed. Fed. R. Civ. P. 12(b)(6). A complaint must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Legal conclusions can provide a framework for a complaint, but they must be supported by factual allegations. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). Further, in a Section 1983 context "[a plaintiff] must allege facts sufficient to show (assuming they are true) that the [defendant] plausibly violated [his or her] constitutional rights, and that those rights were clearly established at the time. This requires enough allegations to give the [defendant] notice of the theory under which [his or her] claim is made." Robbins v. Oklahoma, 519 F.3d 1242, 1249 (10th Cir. 2008).

Additionally, it is inappropriate for Plaintiffs to lob multiple allegations of constitutional violations arising from the same set of fairly limited factual allegations. This is because when there is "an explicit textual source of constitutional protection," that provision should be the guide for analyzing any claims and not more generalized notions. *Graham v. Connor*, 490 U.S. 386, 395 (1989). In *Graham*, the United States Supreme Court only applied a Fourth Amendment standard in an excessive force claim and not a Due Process violation even though it was alleged. *Id*. Similarly, in this case the Court should only analyze Plaintiffs' privacy claims under the Fourteenth

Amendment and not the other more generalized claims they bring, particularly those claims that are couched as Due Process violations.

Many of Plaintiffs' claims in their new Complaint suffer from the same defects as their initial Complaint. It is often unclear what Plaintiffs are alleging and it is also unclear the theory a claim is brought under beyond a cursory reference to a particular constitutional amendment or how Plaintiffs could recover for a violation under Section 1983. In addition to these fatal shortcomings, all Plaintiffs' claims should be dismissed for the following substantive reasons:

**I.      There is no basis for any Weber County liability.**

Plaintiffs bring a Section 1983 claim against Weber County. However, they cannot recover against the County in this matter. A governmental entity under 42 U.S.C. § 1983 may only be liable "if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person to be subjected to such deprivation. *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (*citing Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 692 (1978)). "But, under § 1983, local governments are responsible only for 'their own illegal acts.' They are not vicariously liable under § 1983 for their employees' actions." *Id.* (internal citations omitted). A plaintiff must prove that "action pursuant to official municipal policy" caused their injury. *Id.* "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Id.* Thus, Plaintiff must show (1) a Constitutionally defective policy or custom, (2) that the final policymaker who implemented the policy or custom acted with "deliberate indifference" to the constitutional rights of the plaintiff, and (3) that the policy or custom "directly caused" and was the "moving

force" behind an underlying constitutional violation that caused constitutional harm to the plaintiff. *See generally Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397 (1997).

Further, "[d]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor [in this case the Sheriff as the final policymaker for the Jail] disregarded a known or obvious consequence of his action." *Id*. at 410. "That a plaintiff has suffered a deprivation of federal rights at the hands of a municipal employee will not alone permit an inference of municipal culpability and causation; the plaintiff will simply have shown that the employee acted culpably." *Id*. at 406-07.

Plaintiffs have not alleged the necessary requirements for Weber County liability. "A [county] may not be held liable under 42 U.S.C. § 1983 simply because it employs a person who violated a plaintiff's federally protected rights." *Jenkins v. Wood, 81 F.3d 988, 993 (10th Cir. 1996)* (*quoting Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 694 (1978)).

Only officials who have "final policymaking authority" may be subject to Section 1983 supervisory liability. *Pembaur v. Cincinnati*, 475 U.S. 469, 482-483 (1986). Persistent practices may amount to policy within a municipality, but they must be "so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 60 (2011). In limited circumstances a failure to train can give rise to a Section 1983 claim. *Id*. at 61. However, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id*. This failure to train must at least amount to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Id.* (internal citations and quotations omitted). "Without notice that a course of training is deficient in a particular

respect, decision makers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.* at 62.

Plaintiffs fails to identify a constitutionally defective policy implemented by the final policymaker (the Sheriff in this case) that directly caused Plaintiffs constitutional injury. Finally, there are no allegations that the Sheriff acted with "deliberate indifference" to the constitutional rights of Plaintiffs in implementing such a policy. Failure of the Plaintiffs to allege these three elements requires dismissal of all claims against Weber County.

### A.    Plaintiffs fail to identify a constitutionally-defective County policy.

Plaintiffs fail to allege in their Complaint a specific policy or training that was "constitutionally defective." It is not sufficient for Plaintiffs to merely claim that the policy was deficient in some way if they have not alleged plausible facts to show it was "constitutionally" deficient. Without the identification of a specific policy, Plaintiffs fail to meet the first prong of *Brown* and all claims against the County must be dismissed on this basis alone. *Brown*, 520 U.S. at 403-404. However, there is no requirement to train or implement policies for rare or unforeseen events. *Walker v. City of New York*, 974 F.2d 293, 297 (2nd Cir. 1992).

Plaintiffs allege that it is Weber County's policy to disseminate recent bookings to various news sources for their use, and therefore it was the policy of the County to release information about minors. (2nd Am. Compl. ¶¶ 42-43). These allegations are insufficient to allege a "constitutionally defective" policy. Plaintiffs present a disingenuous interpretation of the County's policy.

Plaintiffs' allegations also reference exhibits that the Court may consider exhibits in determining a motion to dismiss. *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010). The

exhibit Plaintiffs rely on to reach their conclusion is an email from Plaintiff Sherrie Fazzio to her Counsel where she is quoting information from the Weber County Sheriff's webpage. (Pls.' Ex. S). However, even this email from Sherrie Fazzio states Weber County's website says "that [a] juvenile's information is not generally released unless they are certified as an adult by the judge . . . ." (Pls.' Ex. S). By Plaintiffs' own admission it was the County's policy to not release juvenile information. Therefore, Plaintiffs have not alleged an unconstitutional policy under the first prong of *Brown* and for this reason alone, all claims against Weber County must be dismissed.

> **B.   Plaintiffs do not allege that the final policymaker acted with "deliberate indifference."**

Second, Plaintiffs fail to allege in their Complaint any wrongful acts of the final policymaker, the Weber County Sheriff, that could support a claim that he acted with deliberate indifference to their constitutional rights in implementing an unconstitutional policy or training. Under Utah law the Sheriff is the sole final policymaker regarding jail policy issues for the County (although not for hiring and firing decisions) as a matter of law in that he is charged with keeping the Jail within his county. *See* Utah Code Ann. §17-22-4(1); *see also Morro v. City of Birmingham, 117 F.3d 508, 510 (11th Cir. 1997)*. An official is not responsible to take action to protect against an unknown risk. *See generally Farmer v. Brennan, 511 U.S. 825, 847 (1994)*. In addition, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Id*. at 838. Moreover, officials who know of a substantial risk are free from liability if they responded reasonably to the risk even though harm was not averted. *Id.* at 844.

Plaintiffs do not allege any facts at all in their Complaint about the Sheriff or that the County had any sort of history of illegally disclosing juvenile information. An isolated incident is

insufficient to incur liability against the County. Plaintiffs have not alleged the County's final policymaker, acted with deliberate indifference and, therefore, Plaintiffs' claims against the County must be dismissed.

### C. Plaintiffs fail to allege that a County policy "directly caused" their harm.

Finally, even if Plaintiffs did adequately allege an unconstitutional policy that the Sheriff implemented with deliberate indifference to Plaintiffs' constitutional rights, they would still have to allege "a direct causal link" between an official County policy and the constitutional violation to show county liability under Section 1983. *Board of County Commissioners v. Brown*, 520 U.S. 397, 404 (1997). "That is, a plaintiff must show that the [County] action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Id.* Moreover, *Brown* ruled that when a plaintiff claims injury resulted from the acts of a municipal employee, "rigorous standards of culpability and causation must be applied to ensure that the municipality [or County in this case] is not held liable solely for the actions of its employee." *Id.* at 405. *Brown* further states that claims against a governmental entity which do not involve a claim that the entity directed or authorized the deprivation of federal rights, "present much more difficult problems of proof." *Id.* at 406. Plaintiffs have not alleged these legal requirements in their Complaint.

To hold Weber County liable, Plaintiff cannot merely allege a defect in a policy or training, but must actually allege that a constitutionally defective policy "directly caused" the injury and that the Sheriff made a "conscious choice among various alternatives to implement a policy or training which would and did cause the constitutional deprivation. *See generally City of Oklahoma v. Tuttle*, 471 U.S. 808, 824 (1985).

In this case, Plaintiffs allege they were harmed in a variety of ways. However, there is no "direct link" to Plaintiffs' alleged injury and the alleged constitutional violation. Since Plaintiffs fail to articulate a specific constitutional defect in policy or training, Weber County is left to guess or surmise what the alleged defect could be let alone determine if the policy was the "direct cause" of constitutional harm. It is Plaintiffs' burden to specifically allege a defect in policy and training and then show that the constitutional violation was directly caused by the specific "constitutional" defect. As a matter of law, any perceived defect in policy or training could not have been the direct cause of the alleged injury and therefore, Plaintiff's claims against the County, must be dismissed.

II.     **Plaintiffs have not alleged an underlying constitutional violation from which they could recover.**

Plaintiffs bring several different alleged violations that they claim they can recover from under Section 1983 against Weber County. Many claims are duplicative or very similar to claims they brought in their initial Complaint. The other claims have are not supported by the factual allegations. In fact, many of these theories of constitutional violations are novel and Weber County could not find relevant caselaw applying these alleged facts and claims in a Section 1983 context.

Plaintiffs' claims against Weber County are as follows[3]: (a) alleged violations of the Juvenile Justice and Delinquency Prevention Act (2nd Am. Compl. ¶¶ 82-96); (b) alleged violations of Plaintiff's right to privacy as protected by the Fifth and Fourteenth Amendments (2nd Am. Compl. ¶¶ 97-99); (c) alleged violations of Mr. and Mrs. Fazzio's right to raise and rear their child under the Fourteenth Amendment (2nd Am. Compl. ¶¶ 100-103); (d) alleged violation of

---

[3] Weber County generally has tried to quote the allegations as stated by Plaintiffs even if the allegation should have been worded differently. Also, for the sake of organization, they are addressed in the order they are presented in the Complaint.

I.F.'s right to procedural process under the Fifth and Fourteenth Amendments (2nd Am. Compl. ¶¶ 104-128); (e) alleged violations of the Fourth and Fourteenth Amendments right to reasonable lawful seizures of liberty with due process (2nd Am. Compl. ¶¶ 129-134); (f) alleged violation of I.F.'s right to be free from double jeopardy under the Fifth and Fourteenth Amendments (2nd Am. Compl. ¶¶ 135-137); (g) alleged violation of I.F.'s procedural reputational interest related to public school under the Fourteenth Amendment (2nd Am. Compl. ¶¶ 138-150); (h) alleged violation of I.F.'s rights under the Sixth and Fourteenth Amendments (2nd Am. Compl. ¶¶ 151-153); (i) alleged violation of the Eighth and Fourteenth Amendments of cruel and unusual punishment (2nd Am. Compl. ¶¶ 154-157); and finally (j) alleged violation of procedural process under the First and Fourteenth Amendments related to public access of juvenile records (2nd Am. Compl. ¶¶ 158-159). None of these allegations are sufficient as discussed below and should be dismissed.

### A. Plaintiffs cannot recover under Section 1983 for any of his alleged violations of federal statutory law.

Plaintiffs' claims for recovery under Section 1983 couched under federal statutory law are not cognizable. (2nd Am. Compl. ¶¶ 82-96). Plaintiffs cite to multiple federal statutes, so it is unclear what exactly they are alleging was violated. First, they refer to the Juvenile Justice and Delinquency Prevention Act (JJDPA)[4] and reference the United States Code Congressional and Administrative News (U.S.S.C.A.N.) as a citation. (2nd Am. Compl. ¶ 82). Plaintiffs never provide the proper citation for this statute. This Act is currently codified at 34 U.S.C. § 11101 et seq., but Plaintiffs never actually provide this citation. Plaintiffs do cite to 42 U.S.C. § 5676, which is

---

[4] Plaintiffs use the acronyms JDPA (2nd Am. Compl. ¶ 82), ADJPA (2nd Am. Compl. ¶ 93, ¶ 101) and JJDPA (2nd Am. Compl. ¶ 95) interchangeably throughout their Complaint. Plaintiffs also confuse the "Juvenile Justice and Delinquency Prevention Act" and the "Federal Juvenile Delinquency Act" as the same statute in their Complaint. Because of this inconsistency, Weber County the acronym most consistent with the actual title of the particular statute the County is referring to.

currently unoccupied in the code, but did previously contain the JJDPA. (2nd Am. Compl. ¶ 83).
Second, Plaintiffs also provide caselaw and code citations within the "Federal Juvenile
Delinquency Act," (FJDA) which is presently contained at 18 U.S.C. § 5031 et seq. (2nd Am.
Compl. ¶ 82, ¶ 84). Plaintiffs incorrectly attempt to combine these two statutes into one. The
JJDPA and FJDA are different statutes found in different parts of the United States Code.
Regardless, they cannot recover under either of these statutes.

The JJDPA does not provide an express private right of action, and its purpose and history
do not give rise to an implied right of action, or under Section 1983. *Doe v. McFaul*, 599 F. Supp.
1421, 1430 (N.D. Ohio 1984). Even the legislative purpose cited by Plaintiffs in their Complaint
says the Act was "to provide basic procedural rights for juveniles who came under *federal*
jurisdiction and to bring *federal* procedures up to the standards set by various model acts, many
state codes and court decisions." (2nd Am. Compl. ¶ 82) (emphasis and underlining added). Simply
put the JJDPA does not apply to Weber County, the County cannot violate its terms.

Similarly, it is not possible for Weber County to violate the FJDA since it does not apply
to a non-federal actor. The FJDA is only applicable when the federal government has jurisdiction
over a minor. *See generally* 18 U.S.C. § 5032. Plaintiffs' claim is so unfounded that Weber County
could not find a single suit nationwide where a court even interpreted the FJDA's applicability in
a Section 1983 suit. For these reasons, the Court should dismiss Plaintiffs' Section 1983 claims
grounded in federal statutory law.

### B.   Plaintiff's federal constitutional right to privacy was not violated.

Plaintiffs again bring a claim alleging Plaintiff's privacy rights were violated. (2nd Am.
Compl. ¶¶ 97-99). This claim is very similar to the claims the Court already dismissed. (Doc. No.

69). Plaintiffs added a few additional facts and make conclusory statements that Plaintiff had a legitimate expectation of privacy to his juvenile criminal records. (2nd Am. Compl. ¶ 98). While this allegation may be more specific than their original Complaint it does not create a cognizable claim for relief. Under the United States Constitution, Plaintiff does not have any expectation of privacy concerning the contents of his juvenile criminal record.[5]

The United States Supreme Court, ruling on the privacy of arrest information, has declined to make the Constitution a "font of tort law" to be used when state laws already exist to redress actionable wrongs. *Paul v. Davis*, 424 U.S. 693, 694 (1976). The decision in *Paul* supports limiting the constitutional right to privacy to fundamental rights, for example, matters relating to marriage, procreation, contraception, family relationships, child rearing, and education. Not limiting the constitutional privacy right in this way "would seem almost necessarily to result in every legally cognizable injury which may have been inflicted by a state official acting under 'color of law' establishing a violation of the Fourteenth Amendment." *Id.* at 699. Instead, the Supreme Court has carefully avoided creating a broad, fundamental privacy right, noting that general individual privacy rights are issues that should be "left largely to the law of the individual States." *Katz v. United States*, 389 U.S. 347, 351 (1967).

So, while the United States Constitution generally provides a right to privacy from governmental intrusion, "government disclosures of arrest records, judicial proceedings, and information contained in police reports, do not implicate the right to privacy." *Nilson v. Layton City*, 45 F.3d 369, 372 (10th Cir. 1989) (*citing Paul v. Davis*, 424 U.S. 693 (1976); *Cox*

---

[5] Many of these arguments are similar to what Weber County argued in its first motion to dismiss.

*Broadcasting Corp. v. Cohn*, 420 U.S. 469, 492 (1975); and *Scheetz v. The Morning Call, Inc.*, 946 F.2d 202, 207 (3rd Cir. 1991)). Criminal activity is not protected by the right to privacy. *Id.*

State laws and/or state court orders that protect certain court records (e.g., expunged records, juvenile records) do not create a federal constitutional right to privacy for those records. "Substantive due process rights are founded not upon state law but upon 'deeply rooted notions of fundamental personal interests derived from the Constitution.'" *Nilson*, 45 F.3d at 372 (*quoting Mangels v. Pena*, 789 F.2d 836, 839 (10th Cir. 1986)). And, "[w]hile state statutes and regulations may inform our judgement regarding the scope of constitutional rights, they 'fall far short of the kind of proof necessary' to establish a reasonable expectation of privacy. Mere allegations that an official failed to abide by state law will not suffice to state a constitutional claim." *Id.* (*quoting Flanagan v. Munger*, 890 F.2d 1557, 1571 (10th Cir. 1989)).

One reason a person doesn't have a constitutional right to privacy for arrest records and court proceedings, even those a state may statutorily protect, is because many others already know the information surrounding those records. Disclosing an expunged record, for instance, does not offend the constitution because "[c]ourt records and police blotters permanently document the expunged incident," and an arresting officer, "ha[s] first-hand knowledge of [the plaintiff's] arrest and conviction. The expungement order d[oes] not erase this knowledge." *Nilson*, 45 F.3d at 372.

To be consistent with other Tenth Circuit rulings, this Court should hold that a minor's criminal history, even when it is protected by a state privacy statute, is not entitled to constitutional privacy protection. The Tenth Circuit has already held that federal privacy statutes relating to a minor's school grades does not create constitutional protection for that information. *Falvo v. Owasso Indep. Sch. Dist. No. I-011*, 233 F.3d 1203, 1210 (10th Cir. 2000). Also, a minor's criminal

sexual history is not protected by the right to privacy, although there was no state statute protecting the information in that instance. *Aid for Women v. Foulston*, 441 F.3d 1101, 1120 (10th Cir. 2006).

The Sixth Circuit may have the clearest expression of the law regarding juvenile court records, and this Court should adopt a similar holding to this persuasive authority. "In applying [*Paul v.*] *Davis*, we have held that 'there is no constitutional right to privacy in one's criminal record,' and that juveniles do not have a 'constitutional right to nondisclosure of juvenile court records,' 'the Constitution does not encompass a general right to nondisclosure of private information,' . . . leaving most privacy-rights protection 'to the states or the legislative process.'" *Bailey v. City of Port Huron*, 507 F.3d 364, 367-68 (6th Cir. 2007) (*quoting Cline v. Rogers*, 87 F.3d 176, 179 (6th Cir. 1996); and *J.P. v. DeSanti*, 653 F.2d at 1088, 1090-1091 (6th Cir. 1981)).

Further, the language in these cases is broad enough to show that Plaintiffs do not have any constitutional right to the nondisclosure of Plaintiff's criminal or judicial history. These cases illustrate why the Court should dismiss all of Plaintiffs' Section 1983 claims. The only alleged action by the County was the unauthorized release of charges filed against Plaintiff, and Plaintiffs have not alleged that Weber County took any other steps that could have violated their constitutional rights.

So, even if Weber County violated state law by releasing information it collected pursuant to a juvenile court order, that infringement does not trigger a constitutional violation, or any other federally protected right. And without a federally protected right, Plaintiff cannot bring a cause of action under Section 1983. Here, Weber County inadvertently published arrest records—a mugshot and a description of the crimes for which Plaintiff was arrested – to an internet webpage. (2nd Am. Compl. ¶ 25). The published information can also be construed as a record of a judicial

proceeding, since the mugshot and fingerprinting were done pursuant to a juvenile court order. (2nd Am. Compl. ¶ 15). From a constitutional view, Plaintiff's arrest and court records are public, not private, records. As reasoned in the Sixth Circuit *Bailey* case, arrest and court records of a minor are not entitled to any constitutional privacy protection. Because Weber County published arrest records, and/or records of a judicial proceedings and privacy for such records are not protected by the constitution, Plaintiff's constitutional rights were not violated and this claim should be dismissed.

Plaintiffs also make several privacy-related statements about the inaccuracy of published booking information. (2nd Am. Compl. ¶¶ 32-33, ¶ 35). Information accuracy, however, is not an element of a constitutional right to privacy claim. "Simply put, falsity is not an element of an invasion of privacy claim under § 1983." *Gallo-Loeks v. Reynolds*, 34 Fed. Appx. 644, 648 (10th Cir. 2002). In fact, "It is irrelevant to a constitutional privacy analysis whether these allegations are true or false; 'the disclosed information itself must warrant constitutional protection.'" *Id.* (quoting *Stidham v. Peace Officer Standards & Training*, 265 F.3d 1144, 1155 (10th Cir. 2001)). Since falsity is not relevant to a constitutional privacy claim, the accuracy of the information published here does not matter.

### C.   Plaintiffs were not deprived of their Fourteenth Amendment right to rear their child.

Plaintiffs allege that their Fourteenth Amendment right to raise their child without state intervention was violated. (2nd Am. Compl. ¶¶ 100-103). This claim should also be dismissed. The Fourteenth Amendment protects the fundamental right of parents to make certain decisions concerning the care, custody, and control of their children. *Troxel v. Granville*, 530 U.S. 57 (2000). Here, Plaintiffs make the conclusory statement that "this right was violated with the government

16

intrusion and dissemination of the minor child's federally protected information." (2nd Am. Compl. ¶ 102). However, as explained above Plaintiff's privacy rights were not violated with the disclosure of the information. Therefore, Weber County did not interfere with the parents' right to make decisions concerning the care, custody, and control of their child. To the extent that Plaintiffs make claims about Plaintiff's delinquency proceedings and his educational needs (2nd Am. Compl. ¶ 102), Weber County has no control over these decisions and it would be impossible for it to interfere with these alleged parental rights.

Instead of offering any facts substantiating parental interference, Plaintiffs offer facts that show Weber County officials supported the Plaintiffs' parenting decisions. County workers acquiesced to the parents when they presented Plaintiff (along with a valid court order) at the Weber County Jail for booking. (2nd Am. Compl. ¶¶ 20-24). The staff at the Jail even cleared the booking area of all adults to protect Plaintiff (2nd Am. Compl. ¶ 23). Support from county workers came despite the unusual nature of the parents' request to have Plaintiff booked at the adult jail instead of fingerprinted at a juvenile facility. The state juvenile court had allowed a 120-day window for Plaintiff to complete the booking process and specifically mentioned the Utah Division of Juvenile Justice Services at the Weber County Juvenile Center as an option for fingerprinting. (2nd Am. Compl. ¶ 15). Additionally, once made aware of the mugshot posting, Chief Deputy Kevin Burton followed the parents' request to remove it from the county's website. (2nd Am. Compl. ¶ 46). Weber County workers did not interfere with the parents' efforts to have the booking information removed from other websites outside Weber County's control or enroll Plaintiff in counseling to help him deal with depression.

17

Further, even if Plaintiff's privacy rights were somehow violated, this does not create a parental interference claim by itself. "[O]ne does not have standing to assert a violation of rights belonging to another, since the person entitled to a right is the only one who can be directly injured by its deprivation." *Doyle v. The Oklahoma Bar Ass'n*, 998 F.2d 1559, 1566 (10th Cir. 2008). Because Plaintiff is the only person who holds his right to privacy, Plaintiff's parents can't claim an injury to themselves for a breach of his privacy. "A federal court's jurisdiction therefore can be invoked only when **the plaintiff himself** has suffered 'some threatened or actual injury resulting from the putatively illegal action.'" *Warth v. Seldin*, 422 U.S. 490, 499 (1975) (emphasis added). Because Plaintiffs Sherrie and Michael Fazzio lack standing to make a claim based on a violation of Plaintiff's right to privacy, their parental interference claim should be dismissed.

**D.     Plaintiffs did not suffer a procedural due process violation.**

Plaintiffs also allege a procedural Due Process claim that should be dismissed. (2nd Am. Compl. ¶¶ 104-128). Despite referencing it as positive authority in their Complaint, *Parrat v. Taylor* actually illustrates how Plaintiffs cannot recover for this alleged violation. In *Parratt*, the inmate plaintiff was denied property, but it did "not occur as a result of some established state procedure. Indeed, the deprivation occurred as a result of the unauthorized failure of agents of the State to follow established state procedure." *Parratt v. Taylor*, 451 U.S. 527, 543 (1981). Therefore, the plaintiff could not recover for an alleged due process violation. *Id.* at 544. Further, "the existence of an adequate state remedy to redress property damage inflicted by state officers avoids the conclusion that there has been any constitutional deprivation of property without due process of law within the meaning of the Fourteenth Amendment." *Id.* at 542 (internal citations and quotation marks omitted).

Plaintiffs list a bevy of state statutory provisions they allege were violated. (2nd Am. Compl. ¶¶ 106-123). Even assuming these state statutes were violated does not lead to County liability under the federal constitution. First, many of these statutes are only applicable to a state of Utah actor and are not possible for Weber County to violate. Second, to the extent that they do apply to Weber County, they are essentially statutory policy that Weber County must follow. Plaintiffs only allegations related to Weber County's policy is that it has policy that disseminates recent bookings to various news sources for their use, and therefore it was the policy of the County to release information about minors. (2nd Am. Compl. ¶¶ 42-43). This is a disingenuous interpretation of the County's policy, and indeed the exhibit Plaintiffs rely on to show this is an email from Plaintiff Sherrie Fazzio to her Counsel where she is quoting information from the Weber County Sheriff's webpage. (Pls.' Ex. S). However, even this email from Plaintiff states "that [a] juvenile's information is not generally released unless they are certified as an adult by the judge . . . ." (Pls.' Ex. S).

Therefore, at worst, the release of Plaintiff's information is a deprivation that occurred as a result of the unauthorized failure of agents of the County to follow established County procedure, and no liability can attach to the County as a result. *Parratt v. Taylor*, 451 U.S. 527, 543 (1981). Additionally, *Parratt* only requires an adequate state remedy to redress the alleged harm. Weber County removed the posting and welcomed Plaintiffs to file a complaint. (2nd Am. Compl. ¶ 46). Plaintiffs did not avail themselves of this and make no suggestion on what an adequate remedy would be other than removing the information.

Additionally, violation of various state laws cannot be a basis for a cause of action under Section 1983. *See Baker v. McCollan*, 443 U.S.137 (1979). In *Baker*, the United States Supreme

Court reversed a decision from the Fifth Circuit Court of Appeals because the lower court tried to make a Constitutional claim out of violations of state law. The High Court noted, "'The first inquiry in any § 1983 suit, therefore, is whether the plaintiff has been deprived of a right "secured by the Constitution and laws."' *Id.* at 140. The court further noted "a public official is liable under § 1983 only 'if he causes the plaintiff to be subjected to deprivation of his constitutional rights."' (quoting from the lower court of appeals). The court concluded that since the plaintiff was booked and held pursuant to a valid order, there was no constitutional violation even though perhaps state law could have been implicated or that perhaps lack of due care may have occurred.

In this case, Plaintiffs claim that various state laws protecting the records of juveniles who commit crimes have been violated by some Weber County booking officer, even though it is undisputed that the parents brought their son to the Jail to be booked, pursuant to a lawful court order. However, just as in *Baker*, Plaintiffs' alleged state law violations cannot support an alleged violation of the Fourteenth Amendment. Therefore, for all these reasons, Plaintiffs' procedural due process claim should be dismissed.

### E.   Plaintiff was not subjected to an unreasonable searches and seizures in violation of the Fourth Amendment.

Plaintiff claims that his Fourth Amendment rights against unreasonable searches and seizures was violated. (2nd Am. Compl. ¶¶ 129-134). This claim should also be dismissed. Plaintiff states this occurred in two ways. First, Plaintiff claims that this violation manifested itself through the posting of allegedly incorrect information for his arrest. (2nd Am. Compl. ¶ 134). Posting information about a person cannot amount to a search or seizure and cannot be construed as a Fourth Amendment violation. However, even if that could somehow create a Fourth Amendment violation, only the State of Utah can charge minors, so it would be impossible for the County to

violate this right in this way since Weber County did not post new criminal charges against Plaintiff. Utah Code Ann. § 78A-6-115(2)(a).

Second, Plaintiff also claims he was subjected to an "application of physical force." (2nd Am. Compl. ¶ 131). However, this statement is a legal conclusion that contradicts the alleged facts. Plaintiff presented himself to Weber County voluntarily. He arrived with his mother at the Jail. (2nd Am. Compl. ¶¶ 20-22). Weber County did not take any proactive action to "seize" him. Plaintiff had 120 days to get fingerprinted and photographed and was under no compulsion to do it at the Weber County Jail the day he did. (2nd Am. Compl. ¶ 15). Second, even if it was a seizure, it was pursuant to a valid court order and therefore not violative of the Fourth Amendment. (2nd Am. Compl. ¶ 15, ¶ 24).

Finally, Plaintiff makes a passing reference to a Fifth Amendment "interest in new criminal charges posted against him be done through a proper legal and truthful process . . . ." (2nd Am. Compl. ¶ 134). Plaintiff does not explain how this claim violates the Fifth Amendment, and regardless this would only be the State of Utah's responsibility. Utah Code Ann. § 78A-6-115(2)(a). For all these reasons Plaintiffs' unreasonable seizure claim should be dismissed.

**F.    Plaintiff's Fifth Amendment Double Jeopardy rights were not violated.**

Plaintiff also claims he was subjected to a double jeopardy violation under the Fifth Amendment. (2nd Am. Compl. ¶¶ 135-137). The claim is baseless since Plaintiff was not subjected to a second criminal prosecution. There was no second judicial proceeding related to the charges against Plaintiff, and he has not claimed otherwise. Further, Weber County would not even be capable of initiating such a proceeding, so therefore it is impossible for the County to violate this right. Utah Code Ann. § 78A-6-115(2)(a). Posting inaccurate information implying the charges

against Plaintiff had not been resolved cannot amount to a violation of the double jeopardy clause and this claim should be dismissed.

### G.      Plaintiffs' procedural reputational interest claim should also be dismissed

Plaintiffs bring a "procedural reputational interest" claim that should also be denied. (2nd Am. Compl. ¶¶ 138-150). This claim focuses on the injury alleged suffered by Plaintiff. However, this claim is really just another recitation of their previous due process claims in this Compliant. (2nd Am. Compl. ¶¶ 97-99, ¶¶ 104-128). Plaintiffs even cite the same case law in both sections their Complaint. *See* *Zinermon v. Burch*, 494 U.S. 113 (1990), *and* *Parratt v. Taylor*, 451 U.S. 527 (1981). Therefore, this claim should fail for the same reasons their other due process claims fail, as explained above.

### H.      Plaintiff did not suffer a Sixth Amendment violation.

Plaintiff's Sixth Amendment claim should also be dismissed. (2nd Am. Compl. ¶¶ 151-153). Plaintiffs argument seems to be that posting his information is the equivalent of actually filing criminal charges against him and that his right to a speedy trial was violated. This argument is invalid on its face since (1) Plaintiff was never actually subjected to criminal charges from Weber County; and (2) Weber County cannot file criminal charges against a minor. Utah Code Ann. § 78A-6-115(2)(a). Therefore, this claim should be dismissed.

### I.      Plaintiff was not subjected to cruel and unusual punishment in violation of the Eighth Amendment.

Plaintiffs also bring an Eighth or Fourteenth Amendment claim that should be dismissed. (2nd Am. Compl. ¶¶ 154-157). A prisoner's sole source of protection for conditions of confinement in a Jail is the Eighth Amendment which requires a determination that each defendant acted with deliberate indifference to plaintiff's serious medical needs. *See generally* *Estelle v. Gamble,* 429

U.S. 97, 106 (1976). Courts have determined that the same legal standard applies under the Fourteenth Amendment as under the Eighth Amendment for medical and condition of confinement claims. *See Olsen v. Layton Hills Mall, 312 F.3d 1304, 1315 (10th Cir. 2002)*.

In the present case, Plaintiff claims protection under the Fourteenth and Eighth Amendments. However, his claims may only be properly asserted under one or the other. *See Hostetler v. Green, 323 Fed. Appx. 653, 659 (10th Cir. 2009)* (though the plaintiff as a pretrial detainee asserted a right stemming from the Fourteenth Amendment, the court noted that it applied an analysis identical to the Eighth Amendment cases). It is unclear which amendment should apply to Plaintiff's situation since he had already been convicted, but regardless the analysis is identical.

To show an Eighth Amendment violation, Plaintiff must prove both an objective and subjective component: (1) that Plaintiff suffered from an objectively serious need and (2) that a specific county employee acted with a sufficiently culpable state of mind known as deliberate indifference. *Sealock v. Colorado, 218 F.3d 1205, 1209 (10th Cir. 2000)*. In addition, not every injury suffered by a prisoner translates into constitutional liability for corrections officials. *Farmer v. Brennan, 511 U.S. 825, 834 (1994)*.

Here, Plaintiff cannot show that releasing information about him is an objectively serious need that could somehow violate the Eighth Amendment. Further, the subjective test is only met when Plaintiff shows that at least one employee knows of and disregards an excessive risk to a prisoner's health or safety (i.e. acts with "deliberate indifference"). *Sealock, 218 F.3d at 1209*. Weber County is not responsible for harm Plaintiff may have suffered in general and after the fact, in that "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." *Farmer v. Brennan, 511 U.S. 825, 834 (1994)*. Weber County employees could only have acted

"wantonly" if they each individually "knew of and disregarded an excessive risk to Plaintiff's health or safety." *Id. at 837*.

Under *Farmer*, Plaintiff must show that a corrections officer had actual knowledge of a substantial risk of serious harm to one's health or safety. *Id*. The civil law "should have known" standard is insufficient. An inmate must prove that the official,

> "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."

*Id*. However, if an officer knew of the risk, but took reasonable action to avert it, even if unsuccessful, they cannot be found to have acted with deliberate indifference. *Id*. "[I]nadvertent or negligent failure to provide medical care, however serious the consequences, does not rise to deliberate indifference to serious medical needs and is not a constitutional violation." *Hood v. Prisoner Health Servs.*, 180 F. App'x 21, 25 (10th Cir. 2006) (internal quotations omitted).

In this case, there is simply no evidence at all that any Jail employee acted with deliberate indifference toward Plaintiff. Plaintiff must show that at least one officer had actual knowledge of an "excessive risk to inmate health" and intentionally disregarded that risk. Since Plaintiff cannot show an underlying constitutional deprivation, there cannot be liability against Weber County and this Court should dismiss Plaintiff's Eighth Amendment claim.

### J.      Plaintiff has no First Amendment right protecting his juvenile records.

Finally, Plaintiff brings a First Amendment claim that should be dismissed. (2nd Am. Compl. ¶¶ 158-159). Plaintiffs claim that when a government actor must release information pursuant to the First Amendment there is also an inverse requirement to not release that information also grounded in the First Amendment. (2nd Am. Compl. ¶ 158). Plaintiff provides

no caselaw to support this bald assertion, and the Court should not entertain this novel interpretation of the First Amendment. The First Amendment does not provide any privacy protections. If anything, the case cited by Plaintiff, *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1 (1980), could be read to mean that Plaintiff's criminal information should have been released. Plaintiff has not shown how his speech was restrained by Weber County's actions and therefore this claim should be dismissed.

### III.    Weber County should be awarded reasonable attorney fees.

The Court previously warned Plaintiffs about bringing a new complaint based on the legal bases as their initial complaint. (*See* Doc. No. 75-1). Under 42 U.S.C. § 1988, a defendant may be awarded reasonable attorney's fees if plaintiff's suit is frivolous. *Fox v. Vice*, 563 U.S. 826, 829 (2011). Similarly, Rule 11(b) requires that an attorney submitting pleadings to the court certifies that the claims "are warranted by existing law or by a nonfrivolous argument . . . ." Fed. R. Civ. P. 11(b)(2). Plaintiffs failed to fix the defects from their original complaint, even after clear judicial warning in the hearing. Many of the arguments in this motion to dismiss are similar to Weber County's original motion to dismiss. The new claims are similarly unfounded. Therefore, the Court should grant Weber County reasonable attorney's fees and costs for having to bring this second motion to dismiss.

**WHEREFORE:** This Court should grant Defendant Weber County's Motion to Dismiss and Plaintiff should be ordered to pay Defendant's attorney fees and costs under 42 U.S.C. § 1988.

Dated this 27th day of July, 2018.

*/s/ Frank D. Mylar*

_____

Frank D. Mylar
Attorney for Defendant Weber County