Randy L. Dryer, USB #0924
J. Adam Wright, USB #16202
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone:  801.532.1234
Facsimile:  801.536.6111
RDryer@parsonsbehle.com
AWright@parsonsbehle.com
ecf@parsonsbehle.com

*Attorneys for Defendants the Standard Examiner and Sandusky Newspaper Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| In Re Interest of I.F. a minor child; Sherrie and Michael Fazzio,<br><br>      Plaintiffs,<br><br>vs.<br><br>The Standard Examiner, Sandusky Newspaper Inc., Weber County, and Accucom Corporation,<br><br>      Defendants. | **DEFENDANTS THE STANDARD EXAMINER AND SANDUSKY NEWSPAPER INC.'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**<br><br>Case No. 1:17-cv-00132-RJS<br><br>The Honorable Robert J. Shelby |

## RELIEF SOUGHT

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants the Standard

Examiner and Sandusky Newspaper Inc. request that the Court dismiss Plaintiffs' second

through seventh causes of action against them. Despite three attempts to assert viable claims

against the Standard Examiner and Sandusky Newspaper, Plaintiffs' Second Amended

Complaint remains deficient.

Plaintiffs assert claims for defamation, false light invasion of privacy, negligent and intentional infliction of emotional distress, negligence, and punitive damages against the Standard Examiner. Second Am. Compl. ("SAC") [ECF No. 77] ¶¶ 160-287, 293-301. Plaintiffs also assert a claim for "vicarious liability" against Sandusky Newspaper. *Id.* at ¶¶ 288-92. These claims fail for three reasons. First, Plaintiffs seek to hold the Standard Examiner liable for publishing activity that the First Amendment protects. Second, the publication enjoys statutory protection as a fair and true report of criminal charges. *See* Utah Code § 45-2-3(4). And third, independent of constitutional and statutory protections, Plaintiffs have failed to plead any cognizable claim against the Standard Examiner or Sandusky Newspaper.

## INTRODUCTION

This lawsuit concerns the publication of minor Plaintiff I.F.'s mugshot on the websites of the Weber County Sheriff's Office, the Standard Examiner, and policearrests.com. I.F., a sixteen-year-old minor, was charged with controlled substance, dangerous weapon, and theft offenses in Weber County, Utah. As part of resolving those charges through the juvenile court, the Weber County Sheriff's Office fingerprinted and booked I.F. The Sheriff's Office published I.F.'s mugshot and booking information on its own website. Pursuant to policy, it also sent I.F.'s booking information to media outlets, including the Standard Examiner. The Standard Examiner thereafter published the information it received from the Sheriff's Office on the "mugshots" section of its website. Defendant Accucom Corporation also published I.F.'s information on its website policearrests.com.

Plaintiffs contend that under Utah state law, I.F.'s information was "not open to inspection by the general public." SAC ¶ 16. Plaintiffs do not dispute that I.F. was charged with

the offenses listed in the Standard Examiner's publication, but maintain that the publication was misleading because it implied that I.F. received *new* adult criminal charges on the day he was booked, when I.F. had in fact already resolved those charges. Plaintiffs also seek to hold the Standard Examiner liable for not fact checking the information it received from the Sheriff's Office, failing to publish a retraction, and failing to publish a story with I.F.'s mugshot explaining the difference between juvenile and adult criminal proceedings. Based on these allegations, Plaintiffs assert claims for defamation, false light invasion of privacy, intentional and negligent infliction of emotional distress, negligence, and punitive damages against the Standard Examiner. Each of these claims is premised on the alleged defamatory publication. Plaintiffs also seek to impose liability on the Standard Examiner's parent company—Sandusky Newspaper—on a theory of vicarious liability.

A claim for defamation "never arrives at court without its companion and antagonist, the First Amendment, in tow." *O'Connor v. Burningham*, 2007 UT 58, ¶ 27. Where the information at issue was disseminated by the government and touches on a matter of public concern—i.e., violations of the law—the First Amendment's safeguards are particularly robust. Here, taking Plaintiffs' allegations as true, well-established First Amendment law defeats each of Plaintiffs' claims against the Standard Examiner. Plaintiffs have not alleged that the Standard Examiner unlawfully obtained the information at issue, or that it inaccurately reported the information that the Sheriff's Office published on its website and disseminated. And the published information involved a matter of public concern—serious criminal violations. In these circumstances, imposition of liability on the newspaper is constitutionally permissible only if it is the most narrowly tailored way to serve a state interest of the highest order. As the allegations in the

3

Second Amended Complaint acknowledge, the government had the means under state law to protect I.F.'s anonymity, which it failed to utilize. Where the government failed to police itself in disseminating information, punishing the Standard Examiner for its subsequent publication is not the most narrowly tailored means of keeping I.F.'s charges confidential. The First Amendment thus bars each of Plaintiffs' claims against the Standard Examiner.

Further, the Standard Examiner's publication is privileged under Utah Code § 45-2-3(4), which codified the common-law "fair report" privilege. This privilege conditionally protects accurate reports of criminal charges, regardless of the truth or falsity of the underlying information reported. To overcome this privilege, a plaintiff must establish actual malice on the part of the publisher. Because Plaintiffs have not adequately alleged that the Standard Examiner acted with actual malice, the privilege bars Plaintiffs' claims.

Finally, even absent First Amendment protection and statutory privilege, Plaintiffs have failed to state plausible claims of defamation, false light invasion of privacy, intentional or negligent infliction of emotional distress, negligence, or punitive damages against the Standard Examiner, and Plaintiffs' attempt to hold Sandusky Newspaper "vicariously liable" is facially deficient. Plaintiffs' claims against the Standard Examiner and Sandusky Newspaper should therefore be dismissed in their entirety with prejudice.[1]

---

[1] At the May 29, 2018 hearing on Weber County's Motion to Dismiss, this Court expressed some hesitation to exercise supplemental jurisdiction over Plaintiffs' state law claims, in the event that Plaintiffs' § 1983 claim against Weber County is dismissed. In those circumstances, the Standard Examiner and Sandusky Newspaper request that the court exercise its supplemental jurisdiction and rule on this Motion to Dismiss. First Amendment precedent is clear that Plaintiffs' claims are not viable. Allowing Plaintiffs to re-file their deficient action in state court would impose unreasonable burdens on the Standard Examiner and Sandusky Newspaper, who have now spent significant time and resources preparing and filing three motions to dismiss.

## RELEVANT FACTS

Defendant the Standard Examiner "is a media company involved in the gathering and publishing of news and advertising for the general public primarily in the Weber County, Utah region . . . ." SAC ¶ 3. Defendant "Sandusky Newspaper Inc. is a media company involved in the gathering and publishing of news and advertising for the general public and controls and owns The Standard Examiner." *Id.* ¶ 4.[2] Plaintiffs Sherrie and Michael Fazzio initiated this action on behalf of their minor son, I.F., and in their individual capacities. *Id.* ¶¶ 1-2.

In February 2017, Plaintiff I.F. was charged as a minor with controlled substance, dangerous weapon, and theft charges "through the Weber County Juvenile Center." *Id.* ¶¶ 12-13. I.F. "admitted" to the controlled substance and theft charges, and the weapon charge was dismissed. *Id.* ¶ 13. I.F.'s "legal proceedings, charges, history and court documents . . . were not open to inspection by the general public pursuant to Utah Code 78A-6-209" and "Judge Howard that presided over the matter had not consented to any dissemination of [I.F.'s] information to the general public." *Id.* ¶¶ 16-17.

On April 10, 2017, "I.F. and his mother attended a legal proceeding with the Juvenile Court that ultimately resolved the [criminal charges]." *Id.* ¶ 14. As part of the resolution, the Juvenile Court ordered I.F. "to get fingerprinted and photographed by an employee [of] Juvenile Justice Services or local law enforcement with[in] 120 days . . . ." *Id.* ¶ 15. On April 10, 2017, I.F. and his mother "went to the Weber County Adult Detention Center operated and controlled by . . . the Weber County Sheriff's office for fingerprinting and to get his photograph." *Id.* ¶ 21.

---

[2] Plaintiffs have also asserted claims against Defendants Weber County and Acucom Corporation. SAC ¶¶ 5-6.

I.F. and his mother provided documentation to "Weber County Adult Detention" indicating "that I.F. was a minor child and that his mother was his legal guardian." *Id.* ¶ 22.

On the night of April 11, 2017, "I.F. received a social media message from two different friends . . . with his full name, three criminal charges and his picture attached from a screenshot of the Standard Examiner's website." *Id.* ¶ 25. "Th[is] information was found on the local Standard Examiner newspaper on their section of the local website called 'Mugshots.'" *Id.* ¶ 28. The "Mugshots" section "had a revolving wheel to click through the pictures and I.F.'s picture was seen with other adult detention individuals that were booked for that day." *Id.* ¶ 30. The picture contained a "stamp" with the words, "Weber County Sheriff's Office." *Id.* ¶ 31. "[B]elow the picture was attached the phrase, 'Jailing on: 04/10/17' as well as the phrase, 'Booked in Jail.'" *Id.* According to Plaintiffs, these phrases "indicat[e] that the individual had been booked into the County Jail and either was in jail or spent time in jail and if they were no longer in jail, that they had been released through a bond amount or that a judge ordered that they were released on their own recognizance." *Id.*

The Standard Examiner's "Mugshots" section "states that 'Those appearing here have not been convicted of the arrest charge and are presumed innocent." *Id.* ¶ 32. Plaintiffs contend that this "indicat[es] that I.F. still had pending charges against him at that time." *Id.* But, according to Plaintiffs, two of I.F.'s listed charges "had been dropped that day and [I.F.] was no longer facing those charges." *Id.* ¶ 35. Further, "[o]ne of the charges on the website . . . included the phrase after the charge, 'by a minor.'" *Id.* ¶ 33. "The Fazzio's [sic] contacted the Standard Examiner about the situation in the early morning on April 12th, 2017." *Id.* ¶ 47. A Standard Examiner representative allegedly told Mr. Fazzio that the Standard Examiner does not independently

verify booking information disseminated by Weber County, but instead "just trust[s] what comes from the jail." *Id.* ¶ 49. By 10:00 pm on April 12, the Standard Examiner had removed I.F.'s picture, "but the information remained." *Id.* ¶ 47.

The Standard Examiner received I.F.'s mugshot and charge information from the Weber County Sheriff's Office. *Id.* ¶¶ 42-43. The Sheriff's Office operates under a policy which uses "software" to "disseminate[] recent bookings . . . to various news sources for their use," in an effort to "'provide . . . the news media information [the Sheriff's Office] think[s] is helpful for the public.'" *Id.* ¶¶ 42, 45. "The implementation of this software and this policy of dissemination of information to new[s] sources . . . is what led to the dissemination of [I.F.'s] court-protected information without the Juvenile Judge's prior consent . . . ." *Id.* ¶ 43. The Sheriff's Office also included I.F.'s booking information on its own webpage, where it "publish[es] recent bookings of individuals into the Adult Detention Center." *Id.* ¶ 45. Defendant Accucom Corporation likewise published I.F.'s information on its website policearrests.com. *Id.* ¶¶ 40. Plaintiffs contend that both I.F. and his parents have suffered emotional damages as a result of the Standard Examiner's publication. *Id.* ¶¶ 58-75. Plaintiffs seek to hold Sandusky Newspaper vicariously liable for the Standard Examiner's publication because the Standard Examiner "is owned by Sandusky Newspaper." *Id.* ¶ 48.

Based on the foregoing, Plaintiffs assert five causes of action against the Standard Examiner: (1) defamation, *id.* ¶¶ 160-227; (2) "false light," *id.* ¶¶ 228-35; (3) "intentional or negligent infliction of emotional distress," *id.* ¶¶ 236-87; (4) "general negligence," *id.* ¶¶ 293-97; and (5) a claim for punitive damages, *id.* ¶¶ 298-301. Plaintiffs also assert a claim for "vicarious liability" against Sandusky Newspaper. *Id.* ¶¶ 288-92.

### THE RULE 12(b)(6) STANDARD FOR GRANTING A MOTION TO DISMISS

Rule 8 of the Federal Rules of Civil Procedure requires a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A district court must dismiss a complaint under Rule 12(b)(6) if it fails to make that showing. *See*, *e.g.*, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Neither mere "'labels and conclusions'" nor "'naked assertion[s]' devoid of 'further factual enhancement'" are sufficient to comply with Rule 8. *Id.* (quoting *Twombly*, 550 U.S. at 555, 557). Further, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. Rule Civ. Proc. 8(a)(2)).

### ARGUMENT

## I.      THE FIRST AMENDMENT BARS EACH OF PLAINTIFFS' CLAIMS AGAINST THE STANDARD EXAMINER.

In each of their claims asserted against the Standard Examiner, Plaintiffs seek to impose liability on the newspaper for accurately publishing information the Weber County Sheriff's Office published on its own website and disseminated to media outlets. Under any legal theory,

Plaintiffs cannot hold the Standard Examiner liable for this conduct because it is protected First Amendment activity.[3] Whether styled as defamation, false light, negligence, or emotional distress, the First Amendment bars Plaintiffs' claims against the Standard Examiner.

Where, as here, privacy rights compete with First Amendment rights, courts must weigh the competing interests at issue. *See Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 490-491 (1975). It is a long-standing constitutional principle that privacy interests must surrender to free press interests when an invasion of a privacy right is premised upon an accurate publication of information made publicly available by the government, unless punishing the press is narrowly tailored to a state interest of the highest order. The U.S. Supreme Court has repeatedly recognized this principle in refusing to impose liability on a news organization for publishing information lawfully obtained from the government. S*ee id.* (holding unconstitutional a civil damages award against television station for broadcasting the name of a rape-murder victim which the station lawfully obtained from courthouse records, despite state statute criminalizing publication of victim's name); *Oklahoma Pub. Co. v. Dist. Court In & For Oklahoma Cty.*, 430 U.S. 308 (1977) (declaring unconstitutional state court's pretrial order prohibiting media from publishing the name or photograph of minor juvenile defendant which reporters obtained by attending the juvenile proceeding, despite a state statute providing for closed juvenile hearings unless specifically opened to the public by court order); *Smith v. Daily Mail Pub. Co.*, 443 U.S. 97, 103 (1979) (holding unconstitutional the indictment of a newspaper for violating a state statute forbidding, absent court order, publication of the name of juvenile offenders, where newspaper learned information by monitoring police radio and interviewing witnesses, the

---

[3] The First Amendment applies to the States through the Fourteenth Amendment. *See e.g.*, *New York Times Co. v. Sullivan*, 376 U.S. 254, 265 n.4 (1964).

police, and a local prosecutor); *The Florida Star v. B.J.F.*, 491 U.S. 524, 533 (1989) (finding First Amendment prohibited imposing damages on newspaper for publishing name of rape victim obtained lawfully from publicly released police report, despite state statute requiring confidentiality of victim's identity, and noting that punishing newspaper was not a "narrowly tailored means of safeguarding anonymity."); *see also Bowley v. City of Uniontown Police Dep't*, 404 F.3d 783, 787 (3d Cir. 2005) (holding that First Amendment shielded newspaper's publication of information related to juvenile's arrest where the newspaper lawfully obtained the information from the police department).[4]

Here, the Second Amended Complaint makes clear that the Standard Examiner lawfully obtained I.F.'s information from the Weber County Sheriff's Office and that it accurately reported that information. In these circumstances, the Standard Examiner can be held liable for its publication only if doing so would be narrowly tailored to serve a state interest of the highest order. The Second Amended Complaint's allegations do not meet that exacting standard. The First Amendment therefore bars Plaintiffs' claims against the Standard Examiner.

*Florida Star* provides helpful guidance. There, the plaintiff was a victim of a robbery and sexual assault. 491 U.S. at 527. The local police department prepared a report which identified the plaintiff by her full name, and placed the report in the Department's press room. *Id.* A Florida Star reporter obtained and copied the police report containing the plaintiff's full name. *Id.* The newspaper thereafter disclosed the plaintiff's identity in a story in the "Police Reports" section of

---

[4] The Court's most recent decision addressing this issue reaffirmed the principle that "if a newspaper lawfully obtains truthful information about a matter of public significance then state officials may not constitutionally punish publication of the information, absent a need . . . of the highest order." *Bartnicki v. Vopper*, 532 U.S. 514, 527-28 (2001).

the newspaper. *Id.* The plaintiff brought suit, alleging that the Florida Star negligently violated a state statute making it unlawful to "print, publish, or broadcast . . . in any instrument of mass communication the name of the victim of a sexual offense." *Id.* at 526, 528 (internal quotation omitted).

The Court held that the First Amendment prohibited imposing damages on the Florida Star for publishing the plaintiff's full name. *Id.* at 532. To support its conclusion, the Court highlighted several considerations weighing in favor of First Amendment protection, principal among them the fact that the government was the source of the improperly-released information:

> [W]here the government has made certain information publicly available, it is highly anomalous to sanction persons other than the source of its release. We noted this anomaly in *Cox Broadcasting:* "By placing the information in the public domain on official court records, the State must be presumed to have concluded that the public interest was thereby being served."

*Id.* at 535. The Court also discussed the presumption that the government has more limited means of guarding private information than punishing a newspaper's speech.

> [W]here the government itself provides information to the media, it is most appropriate to assume that the government had, but failed to utilize, far more limited means of guarding against dissemination than the extreme step of punishing truthful speech. That assumption is richly borne out in this case. [The victim's] identity would never have come to light were it not for the erroneous, if inadvertent, inclusion by the Department of her full name in an incident report made available in a pressroom open to the public. Florida's policy against disclosure of rape victims' identities . . . was undercut by the Department's failure to abide by this policy. Where, as here, the government has failed to police itself in disseminating information, it is clear under *Cox Broadcasting, Oklahoma Publishing,* and *Landmark Communications* that the imposition of damages against the press for its subsequent publication can hardly be said to be a narrowly tailored means of safeguarding anonymity.

*Id.* at 538; *see also id.* at 534 ("Where information is entrusted to the government, a less drastic means than punishing truthful publication almost always exists for guarding against the

dissemination of private facts.").  Moreover, the Court discussed the importance of avoiding self-censorship by news outlets.

> That [the Florida Star] gained access to the information in question through a government news release makes it especially likely that, if liability were to be imposed, self-censorship would result. Reliance on a news release is a paradigmatically "routine newspaper reporting techniqu[e]." *Daily Mail, supra,* at 103, 99 S.Ct., at 2671. The government's issuance of such a release, without qualification, can only convey to recipients that the government considered dissemination lawful, and indeed expected the recipients to disseminate the information further. Had appellant merely reproduced the news release prepared and released by the Department, imposing civil damages would surely violate the First Amendment.

*Id.* at 538-39; *see also Cox Broad.*, 420 U.S. at 496 ("If there are privacy interests to be protected in judicial proceedings, the States must respond by means which avoid public documentation or other exposure of private information.").

The Court also recognized that the *Florida Star*'s report addressed a matter of public concern: the commission and investigation of a crime. *Florida Star*, 491 U.S. at 536-37. The First Amendment's protections are especially robust when the speech at issue involves a matter of public significance. *See, e.g.*, *Bartnicki v. Vopper*, 532 U.S. 514, 527-28 (2001) (recognizing that "a need . . . of the highest order" is a prerequisite to holding a newspaper liable for accurately reporting information on a matter of public concern it lawfully obtained); *Publius v. Boyer-Vine*, 237 F. Supp. 3d 997, 10147 (E.D. Cal. 2017) (noting that speech "relevant to issues of public significance . . . triggers exacting First Amendment scrutiny under Supreme Court precedent."). Indeed, in such circumstances, imposition of liability must "be the most narrowly tailored way to serve a state interest of the highest order." *Bowley*, 404 F.3d at 787; *see also Florida Star*, 491 U.S. at 541.

Whether speech implicates a matter of public concern turns on the nature of the speech generally; each specific statement need not be a matter of public concern. *See Florida Star*, 491 U.S. at 536-37. Relevant here, publications regarding arrests, charges, or violations of the law involve matters of public significance. *See Best v. Berard*, 776 F. Supp. 2d 752, 758 (N.D. Ill. 2011) (finding no authority for the position that only "violent and serious offenses" implicate matters of public concern and noting "that it is relatively commonplace for newspapers to reprint 'police blotter'-type information involving arrests. . . . It is difficult to conceive an interpretation of the First Amendment that would not protect the reporting or broadcasting of this sort of information."); *see also Myers v. Hasara*, 226 F.3d 821, 827 (7th Cir. 2000) (noting that a violation of law that "creates a risk to public health [and] safety . . . is a matter of public concern.").

Under the established First Amendment principles set forth in *Florida Star*, Plaintiffs' claims against the Standard Examiner fail.

## A.    The Standard Examiner Lawfully Obtained I.F.'s Information from the Weber County Sheriff's Office.

Plaintiffs' allegations establish that the Standard Examiner accurately published I.F.'s mugshot and charge information that the Weber County Sheriff's Office published on its own website and provided to media outlets. SAC ¶¶ 42-43, 45. Indeed, Plaintiffs admit it was the Sheriff's Office's implementation of a policy which permits software to send booking information to news sources that "led to the dissemination of [I.F.'s] court-protected information . . . ." *Id*. ¶ 43. Plaintiffs fault the Standard Examiner for not "making a request properly to the State of Utah to have access to the juvenile's information," and suggest that the newspaper's failure to "obtain[] [the information] through a grama request" was unlawful. SAC

¶¶ 182, 223-24, 250, 284. However, Plaintiffs' allegation that a "grama request" is the only lawful method by which a newspaper can obtain information from state records is conclusory, and no factual allegations in the Second Amended Complaint show that the Standard Examiner's receipt of the information from the Sheriff's Office was unlawful. Relying on the Sheriff's Office release was a "paradigmatically routine newspaper reporting technique." *Florida Star*, 491 U.S. at 538 (internal quotation and alteration omitted); *see also id.* at 536 (noting that despite state law providing that the identity of sexual assault victims are not public record, "it [is not] unlawful for a newspaper to receive [that information] when furnished by the government.").

**B.**     **The Standard Examiner Accurately Reported the Information that the Weber County Sheriff's Office Published on its Own Website and Disseminated to the Media.**

Plaintiffs do not allege that the Standard Examiner misreported the information that the Sheriff's Office published and disseminated. Plaintiffs allege that the Standard Examiner published I.F.'s mugshot, which contained a Weber County Sheriff's Office "stamp." SAC ¶ 31. Under the mugshot appeared the phrases, "Jailing on: 04/10/17" and "Booked in Jail," in addition to I.F.'s three charges. SAC ¶¶ 25, 31. Plaintiffs do not allege that this information fails to fairly and accurately reflect the information that the Sheriff's Office published on its website and disseminated to the Standard Examiner. Even accepting Plaintiffs' contention that the underlying information that the Sheriff's Office disseminated was misleading, First Amendment protection still extends to the Standard Examiner's accurate reproduction of that information. *See Florida Star*, 491 U.S. at 539 (noting that "had [the newspaper] merely reproduced the news release prepared and released by the [government], imposing civil damages would surely violate the First Amendment.").

**C.   Imposing Liability on the Standard Examiner is not Narrowly Tailored to Serve a State Interest of the Highest Order.**

The Standard Examiner's publication at issue involves a matter of public concern—drugs, weapons, and theft charges. *See, e.g.*, *Best*, 776 F. Supp. 2d at 758. Plaintiffs' characterization of I.F.'s charges by Weber County as "a private affair" is inaccurate. SAC at p. 38. Violations of criminal law implicate the health and safety of communities, and are therefore of public importance.[5] *See, e.g.*, *Myers*, 226 F.3d at 827; *see also Lewis v. McGraw-Hill Broad. Co.*, 832 P.2d 1118, 1122 (Colo. App. 1992) ("[I]t would be difficult to suggest that a plaintiff's arrest record . . . should not be of public concern when the same already appears in public files and when reports of such records are routinely released to the media."). Although entitled to certain statutory confidentiality protections, I.F.'s charges were resolved through the Weber County Juvenile Court—a public institution. SAC ¶ 12. He was charged by the state for theft and possession of drugs and a dangerous weapon, and he was punished by the state. *Id.* ¶¶ 12-14. I.F.'s conduct was therefore not a purely private or familial matter.

Moreover, the Standard Examiner was entitled to view the Sheriff's Office's publication and release of I.F.'s information as the government's implied determination that dissemination of the information was serving the public interest. *See Florida Star*, 491 U.S. at 536; *Cox Broad.*, 420 U.S. at 495. The First Amendment prohibits imposing civil liability on the Standard Examiner for this publication unless the punishment is "narrowly tailored to a state interest of the highest order." *Florida Star*, 491 U.S. at 541; *see also Bowley*, 404 F.3d at 788.

---

[5] Although Plaintiffs allege that charges of minors "are civil in nature," SAC. ¶ 175, the Second Amended Complaint and the documents cited therein make clear that I.F. was charged with violations of criminal law.

Assuming that protecting the identity of a juvenile charged with criminal violations is a state interest "of the highest order," imposing liability on the Standard Examiner is not narrowly tailored to achieving that goal. Where "the government has failed to police itself in disseminating information, it is clear . . . that the imposition of damages against the press for its subsequent publication can hardly be said to be a narrowly tailored means of safeguarding anonymity." *Florida Star*, 491 U.S. at 538. Here, the government had at its disposal alternative means of protecting the information regarding I.F.'s juvenile proceeding; namely, the state laws that Plaintiffs cite which limit the release of that information. *See, e.g.*, SAC ¶¶ 16-17. These laws provided a more narrowly-tailored avenue for protecting I.F.'s information "than the extreme step" of imposing liability for the newspaper's reproduction of the information the Sheriff's Office published on its own website and disseminated. *Florida Star*, 491 U.S. at 538. Here, the Weber County Sheriff's Office was aware that I.F. was a juvenile, and could have omitted his mugshot and charging information from its own website and its release to media outlets. SAC ¶¶ 22-24. It failed to do so. Punishing the Standard Examiner for publishing this information would therefore violate the First Amendment.

In sum, all of Plaintiffs' claims against the Standard Examiner arise out of the publication of information related to I.F.'s juvenile proceeding originally published and disseminated by the Weber County Sheriff's Office. The Standard Examiner lawfully obtained the information and accurately reproduced it. No plausible allegations in the Second Amended Complaint show otherwise. The First Amendment principles articulated above apply with equal force to each of Plaintiffs' tort claims. *See, e.g.*, *Snyder v. Phelps*, 580 F.3d 206, 218 (4th Cir. 2009) (stating that "regardless of the specific tort being employed, the First Amendment applies when a plaintiff

seeks damages for reputational, mental, or emotional injury allegedly resulting from the defendant's speech."), *aff'd,* 562 U.S. 443, 451 (2011) (noting that "[t]he Free Speech Clause of the First Amendment . . . can serve as a defense in state tort suits, including suits for intentional infliction of emotional distress."); *Russell v. Thomson Newspapers, Inc.*, 842 P.2d 896, 907 (Utah 1992) (stating that "like a claim for emotional distress, a false light claim predicated on publication of a defamatory statement is subject to First Amendment protections.").

## II.   THE STANDARD EXAMINER'S PUBLICATION IS PRIVILEGED UNDER UTAH CODE § 45-2-3(4).

The Utah Legislature has codified the common-law "fair report privilege." *See* Utah Code. § 45-2-3. Under the statute, a conditional privilege attaches if: (1) the statement is a "report of a judicial, legislative, or other public official proceeding, . . . *or of a charge* or complaint made by any person to a public official, upon which a warrant shall have been issued or an arrest made;" (2) the statement is a "fair and true report" of the proceeding or charge, and (3) the statement was made "without malice." § 45-2-3(4) (emphasis added); *see also Russell v. Thomson Newspapers, Inc.*, 842 P.2d 896, 900 (Utah 1992) (citing § 45-2-3(4)). A plaintiff may defeat this conditional privilege by "show[ing] actual malice." *Id; see also Seegmiller v. KSL, Inc.*, 626 P.2d 968, 976 (Utah 1981).

The allegations in Plaintiffs' Second Amended Complaint demonstrate that each of the three elements required for application of Utah's statutory fair report privilege are satisfied. First, the Standard Examiner's publication of I.F.'s mugshot and attendant charges was a report of a charge upon which an arrest was made.[6] *See* Restatement (Second) of Torts § 611 (1977) ("An

---

[6] The Second Amended Complaint makes clear that I.F. was arrested on the three charges which the Standard Examiner published. *See* SAC ¶ 11 (referring to I.F.'s "arrest information), ¶ 81 (referring to I.F. as an "arrestee"),

arrest by an officer is an official action, and a report of the fact of the arrest or of the charge of crime made by the officer in making or returning the arrest is therefore within the conditional privilege covered by [the fair report privilege].").

The second element of the privilege is also met. The publication at issue was a "fair and true report" of the information Weber County published and disseminated. Plaintiffs do not allege that the Standard Examiner misreported any of the information that the Weber County Sheriff's Office published and disseminated, and the veracity of the underlying information is immaterial to the fair report privilege's applicability. The "fair and true" requirement "does not mean that all individual statements or allegations made in the proceeding must be true for the report to be privileged, but merely that the report must accurately reflect the proceedings and the statements or allegations made therein." *Russell*, 842 P.2d at 902. "If the report correctly and accurately reflects the proceedings it covers, then it will maintain the privilege, absent malice, regardless of the falsity of the statements or allegations made in the proceedings themselves." *Id.*

Finally, the privilege's third element is established because Plaintiffs do not adequately allege that the Standard Examiner acted with malice in publishing I.F.'s mugshot and charges. Malice requires allegations showing "an improper motive such as a desire to do harm or that the defendant did not honestly believe his statements to be true or that the publication was excessive." *Russell*, 842 P.2d at 904. To the contrary, Plaintiffs allege only that the publication was the result of the Weber County Sheriff's Office's mistaken publication and transmission of I.F.'s information to the Standard Examiner. SAC ¶¶ 42-43, 45. Plaintiffs' allegations permit no

---

¶ 108 (alleging that I.F. was "unlawfully arrest[ed]"), ¶ 118 (admitting I.F. was arrested on "a civil juvenile proceeding").

plausible inference that the Standard Examiner acted with any ill will or spite toward I.F.; that it knew it was publishing any false statements; or that it excessively published the information. Plaintiffs' Second Amended Complaint simply does not show malice. Accordingly, Utah's fair report privilege bars each of Plaintiffs' causes of action based on the newspaper's publication. *See Russell*, 842 P.2d at 906 (concluding "that the privilege does apply to other claims that are based upon a defamatory publication.").

**III.**     **PLAINTIFFS HAVE FAILED TO SUFFICIENTLY PLEAD THE ESSENTIAL ELEMENTS OF ANY CLAIM AGAINST THE STANDARD EXAMINER OR SANDUSKY NEWSPAPER.**

In addition to failing under constitutional and statutory protections, Plaintiffs' Second Amended Complaint also fails to allege the essential elements of any claim. Despite having three opportunities to assert viable claims, Plaintiffs still have not plead sufficient facts to render their claims facially plausible.

**A.**     **Plaintiffs' defamation claim fails because Plaintiffs do not plausibly allege that the Standard Examiner published false statements or acted with the requisite degree of fault.**

"To state a claim for defamation in Utah, a plaintiff must show '[1] that defendants published the statements concerning him [either in print or by spoken words], [2] that the statements were false, defamatory, and not subject to any privilege, [3] that the statements were published with the requisite degree of fault, and [4] that their publication resulted in damage.'" *Becker v. Kroll*, 494 F.3d 904, 927 (10th Cir. 2007) (quoting *West* v. *Thomson Newspapers*, 872 P.2d 999, 1007–08 (Utah 1994)). "[I]n defamation actions against media defendants, the First Amendment requires that a plaintiff bear the burden of proving that the statement in question was false *and* that the defendant had the requisite state of mind." *Jefferson Cty. Sch. Dist. No. R-*

*1 v. Moody's Investor's Servs., Inc.*, 175 F.3d 848, 852 (10th Cir. 1999) (emphasis added). "[T]he necessary degree of fault which must be shown in a defamation action by a 'private individual' against the media is negligence." *See Seegmiller v. KSL, Inc.,* 626 P.2d 968, 973 (Utah 1981).

First, Plaintiffs' defamation claim fails because the Second Amended Complaint contains no plausible allegation that the Standard Examiner published any false statements. Plaintiffs do not dispute that I.F. was charged with weapon, drug, and theft offenses, as published in the newspaper. Instead, they contend the publication was false because it implied that I.F. was charged as an adult with these offenses on April 10, 2017, rather than in February 2017. SAC ¶¶ 186, 216. Even assuming that this alleged inaccuracy is reasonably inferred from the Standard Examiner's publication, "[m]inor inaccuracies do not amount to falsity so long as the substance, the gist, the sting of the defamatory charge can be justified." *Schwartz v. Am. Coll. of Emergency Physicians*, 215 F.3d 1140, 1146 (10th Cir. 2000) (internal quotation omitted).

Further, Plaintiffs cannot sustain their defamation claim because they have not sufficiently alleged that the Standard Examiner negligently published the information. In this context, negligence "means a departure from standards which exists or ought to exist as standards of professional conduct in the news media industry." *Seegmiller*, 626 P.2d at 976. So the question is "whether the defendant acted reasonably in checking on the truth or falsity or defamatory character of the communication before publishing it. . . . Customs and practices within the profession are relevant in applying the negligence standard . . . ." *Id.* (internal quotation omitted). Under this standard, Plaintiffs have not plausibly alleged that the Standard Examiner was negligent as to the truth or falsity of the information it published. Plaintiffs simply

allege that the Standard Examiner published I.F.'s mugshot and charges after receiving the information from the Weber County Sheriff's Office, which uses software to disseminate recent bookings to news sources. SAC ¶¶ 42-43, 45. Although Plaintiffs contend that the Standard Examiner acted negligently by "fail[ing] to implement a review procedure prior to publishing" the information Weber County previously published and disseminated, SAC ¶ 202, the Standard Examiner had no such duty.[7] Further, it had no duty to publish a retraction or to publish a story accompanying I.F.'s mugshot explaining the difference between adult and juvenile criminal proceedings, as Plaintiffs suggest. Relying on the government's release of information is a "paradigmatically routine newspaper reporting technique." *Florida Star*, 491 U.S. at 538 (internal quotation and alteration omitted). Newspapers are entitled to rely on the release of information by government sources, and the Standard Examiner thus had no duty to independently verify the information Weber County released. *See Cox Broad.*, 420 U.S. at 495 ("By placing the information in the public domain . . . the State must be presumed to have concluded that the public interest was thereby being served.").

**B.**   **Plaintiffs' false light invasion of privacy claim fails because they have not alleged facts showing that the Standard Examiner placed I.F. in a false light or acted with negligence.**

Under Utah law, to state a claim for false light invasion of privacy, a plaintiff must adequately plead that: "1) '[the defendant gave] publicity to a matter concerning another'; 2) 'that places the other before the public in a false light'; 3) the false light would be 'highly offensive to a reasonable person' and 4) the defendant 'has knowledge of or acted

---

[7] Indeed, it is not evident that the Standard Examiner could have examined the juvenile court records to "fact-check" I.F.'s information published by Weber County, in light of Plaintiffs' allegations that I.F.'s court information is not open to public inspection.

in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.'" *Hogan v. Winder*, 762 F.3d 1096, 1110 (10th Cir. 2014) (quoting *Russell*, 842 P.2d at 907). Plaintiffs' false light claim fails on the second, third, and fourth elements.

Plaintiffs have not adequately alleged that the "gist" of the Standard Examiner's publication was false. *See supra* Part III.A. Further, Plaintiffs' allegations do not show that the alleged minor inaccuracies—namely, the date that I.F. incurred the charges—would be highly offensive to a reasonable person. Finally, Plaintiffs have not alleged facts showing that the Standard Examiner had knowledge of the falsity of the publication, or that the Standard Examiner acted with negligence. *See supra* Part III.A. For these reasons, Plaintiffs' false light claim fails.

**C.      Plaintiffs' emotional distress claims fail because Plaintiffs have not adequately alleged outrageous conduct, purposeful action, or negligence as to the publication of the information.**

To state a claim for intentional infliction of emotional distress, "a plaintiff must show (a) that the defendant intentionally engaged in some conduct toward the plaintiff considered outrageous and intolerable in that it offends the generally accepted standards of decency and morality (b) with the purpose [or in reckless disregard] of inflicting emotional distress or where any reasonable person would have known that such would result, and (c) that severe emotional distress resulted as a direct result of the defendant's conduct." *Russell*, 842 P.2d at 905; *Retherford v. AT&T Commc'ns of Mountain States, Inc.*, 844 P.2d 949, 970-71 (Utah 1992) (including "reckless disregard" as an element of an IIED claim). Moreover, where an emotional distress claim is premised upon the same facts as a defamation claim, the First Amendment

requires a private plaintiff suing a media entity to show negligence as to the falsity of the publication. *Russell*, 842 P.2d at 906. Plaintiffs' Amended Complaint fails to establish these necessary prerequisites.

"Under Utah law, conduct is outrageous if it is 'atrocious' and so 'extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Marega v. Wal-Mart Assocs., Inc.*, No. 1:08CV83DAK, 2010 WL 668299, at *11 (D. Utah Feb. 23, 2010) (unpublished) (quoting *Amos v. Corp. of Presiding Bishop*, 594 F. Supp. 791, 831 (D. Utah 1984)). The conduct at issue is the Standard Examiner's publication of I.F.'s mugshot and charges which the Weber County Sheriff's Office published on its own website and disseminated to the Standard Examiner and other media outlets. Plaintiffs do not allege that the Standard Examiner used unlawful means to obtain the information. Nor do they allege any facts showing that the newspaper's reliance on the government's release of I.F.'s information was "atrocious," "beyond all possible bounds of decency," or "utterly intolerable in a civilized community." A newspaper's reliance on the government's release of information is a quintessential reporting technique. This alleged conduct is not in the realm of outrageous behavior needed to sustain an IIED claim. Additionally, Plaintiffs have not sufficiently alleged that the Standard Examiner intended to inflict emotional harm on Plaintiffs, or that "any reasonable person would have known that [emotional harm] would result." *DeBry v. Godbe*, 1999 UT 111, ¶ 25. For all these reasons, Plaintiffs' IIED claim fails.

Likewise, Plaintiffs' negligent infliction of emotional distress claim is facially deficient because Plaintiffs have not shown that the Standard Examiner was negligent, that it "should have

realized that [its] conduct involved an unreasonable risk of causing [emotional] distress," or that it "should have realized that the distress, if it were caused, might result in illness or bodily harm." *Candelaria v. CB Richard Ellis*, 2014 UT App 1, ¶ 9 (internal quotation omitted). Plaintiffs simply allege that the newspaper published the information the Sheriff's Office published on its own website and disseminated to news outlets. No plausible reading of the Second Amended Complaint permits an inference that the Standard Examiner, by engaging in this quintessential news-gathering process, should have realized it was causing an unreasonable risk of emotional distress to I.F., or that any resulting distress might result in illness or bodily harm.

**D.     Plaintiffs' "general negligence" claim fails because it is duplicative of Plaintiffs' defamation claim and because Plaintiffs have not adequately alleged that the Standard Examiner breached any duty of care.**

A negligence claim that is duplicative of a defamation claim must be dismissed. *See Vitti v. Vockrodt*, No. 16-CV-00236-FJG, 2016 WL 4487884, at *8 (W.D. Mo. Aug. 24, 2016) (dismissing negligence claim as duplicative of defamation claim where both claims were based on breach of alleged "duty to properly investigate the surrounding facts" of newspaper articles); *Lucking v. Maier,* No. 03 Civ. 1401, 2003 WL 23018787 (S.D.N.Y. Dec. 23, 2003) (dismissing the plaintiff's negligence claim on the grounds that it could "only be understood as duplicative of or subsumed by plaintiff's claim for defamation" because, as here, "an element of a defamation or libel claim is fault . . . on the part of the defendant."). Here, Plaintiffs' separate negligence cause of action is based on the same allegations that form the basis of their defamation claim. *See* SAC ¶ 296 (noting that the alleged breach is "as described in the section for defamation"). Moreover, even assuming the Standard Examiner owed I.F. a duty of care,

Plaintiffs have not adequately alleged that that duty was breached by the Standard Examiner simply republishing Weber County Sheriff's Office's news release. Plaintiffs' negligence claim must therefore be dismissed.

**E.      Plaintiffs' "vicarious liability" claim against Sandusky Newspaper fails because there is no allegation that Sandusky Newspaper is the alter ego of the Standard Examiner.**

Plaintiffs attempt to hold the Sandusky Newspaper "variously liable" for the Standard Examiner's alleged torts simply because Sandusky Newspaper "has ownership over The Standard Examiner." SAC ¶ 291. Plaintiffs contend ownership alone makes the Standard Examiner an "instrumentality" and "mere agency" of Sandusky Newspaper. *Id.* This is not the correct standard. Under Utah law, a parent corporation will not be held liable for the wrongs of its subsidiary unless the two are alter egos of one another. *See, e.g.*, *Salt Lake City Corp. v. James Constructors, Inc.*, 761 P.2d 42, 47 (Utah Ct. App. 1988). Mere status as a parent company, standing alone, is insufficient. To prevail on an alter ego theory, Plaintiffs must show: (1) "such unity of interest and ownership that the separate personalities of the [parent and subsidiary] no longer exist;" and (2) "the observance of the corporate form would sanction a fraud, promote injustice, or an inequitable result would follow." *Norman v. Murray First Thrift & Loan Co.*, 596 P.2d 1028, 1030 (Utah 1979). Plaintiffs' allegation that Sandusky Newspaper owns the Standard Examiner is insufficient to satisfy the applicable alter ego standard, and Plaintiffs' claim for vicarious liability against Sandusky Newspaper should be dismissed.

**F.      Plaintiffs' claim for "punitive damages" fails because it is not a valid claim for relief.**

Under Utah law, "punitive damages cannot be pleaded as an independent cause of action. As a remedy, it must be requested in conjunction with a cognizable cause of action." *Norman v.*

*Arnold*, 2002 UT 81, ¶ 8, n.2. Because Plaintiffs have failed to state any plausible claim against the Standard Examiner or Sandusky Newspaper, its claim for punitive damages must also be dismissed. Further, even if Plaintiffs had plead a cognizable claim, their punitive damages theory fails because they have not sufficiently alleged that the Standard Examiner's conduct was "willful and malicious" or "manifest[ed] a knowing a reckless indifference toward, and a disregard of, the rights of [I.F.]." SAC ¶ 298 (quoting Utah Code § 78-18-1(a)). Indeed, Plaintiffs have not even alleged that the Standard Examiner's conduct was negligent. *See supra* Part III.A.

## CONCLUSION

Defendants The Standard Examiner and Sandusky Newspaper, Inc. request that the Court dismiss Plaintiffs' second through seventh causes of action against them. Each claim is premised upon the newspaper's protected First Amendment activity. The Standard Examiner's publication likewise enjoys protection under Utah's statutory fair report privilege. Finally, Plaintiffs' Amended Complaint fails to plead sufficient facts to support their causes of action against The Standard Examiner and Sandusky Newspaper. Based on the foregoing, the Court should dismiss The Standard Examiner and Sandusky Newspaper, Inc. from this action.

DATED August 10, 2018.

/s/ J. Adam Wright
Randy L. Dryer
J. Adam Wright
PARSONS BEHLE & LATIMER

*Attorneys for Defendants the Standard Examiner and Sandusky Newspaper Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 10th day of August, 2018, I caused the foregoing **MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT** to be filed electronically with the Clerk of the Court using the CM/ECF system, which sent notification of the filing to all counsel of record.

/s/ J. Adam Wright

27