IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| MICHAEL FAZZIO & SHERRIE FAZZIO IN RE INTEREST OF I.F., a minor child,<br><br>    Plaintiffs,<br>v.<br><br>WEBER COUNTY et al.,<br><br>    Defendants. | **MEMORANDUM DECISION AND ORDER IMPOSING SANCTIONS *SUA SPONTE* UNDER RULE 11**<br><br>1:17-cv-132<br><br>Chief District Judge Robert J. Shelby<br><br>Magistrate Judge Dustin B. Pead |

    Plaintiffs Michael Fazzio and Sherrie Fazzio (the Fazzios), who represent the interests of their minor child, I.F., sued Defendants Weber County, Acucom, Sandusky Newspaper, and the Standard Examiner. The Fazzios' suit centers around Defendants' involvement in the public dissemination of I.F.'s photograph, name, and putative criminal history. Following dismissal of the Fazzios' Second Amended Complaint, the court ordered the Fazzios' counsel, Brian K. Jackson, to show cause why sanctions should not be imposed.[1] Now before the court are three matters arising out of Jackson's conduct.

    First, there is Jackson's response to the order to show cause.[2] Having considered Jackson's response and the parties' filings, the court on its own initiative concludes Jackson violated Rule 11(b)(2) of the Federal Rules of Civil Procedure. To deter similar violations by Jackson and others, the court imposes a fine of $6,650 and orders Jackson to complete the Utah State Bar's Ethics School.

---

[1] Dkt. 99; Dkt. 100 at 55–64.

[2] Dkt. 102 (Jackson response); Dkt. 103 (Weber County's reply to Jackson's response); Dkt. 104 (Acucom's reply to Jackson's response).

Second, there is Acucom's first motion for sanctions pursuant to 28 U.S.C. § 1927.[3]  By including that motion in its reply to Jackson's response to the Order to Show Cause, Acucom violated DUCivR 7-1(b)(1)(A), which states, "[n]o motion . . . may be included in a response or reply memorandum.  Such motions must be made in a separate document."  Accordingly, Acucom's first motion for sanctions is DENIED.

Third, there is Acucom's second motion for sanctions pursuant to 28 U.S.C. § 1927 and pursuant to the court's inherent authority to impose sanctions.[4]  For the reasons given below, that motion is DENIED.

## BACKGROUND

### The parties engaged in extensive motion practice.  The court denied Acucom's request for Rule 11 sanctions.

Counsel Brian K. Jackson served and continues to serve as the sole legal representative of the Fazzios in this case.[5]  On August 21, 2017, the Fazzios initiated this case by filing a Complaint.[6]  A few months later, on November 14, 2017, the Fazzios filed an Amended Complaint.[7]  Extensive motion practice followed.[8]  Notably, the Fazzios, Weber County, Acucom, Sandusky Newspaper, and the Standard Examiner each filed dispositive motions.[9]

---

[3] Dkt. 104.

[4] Dkt. 105 (Acucom's Motion); Dkt. 107 (Jackson's Response); Dkt. 108 (Acucom's Reply).

[5] *See, e.g.*, Dkts. 2, 107.

[6] Dkt. 2.

[7] Dkt. 19.

[8] *See, e.g.*, Dkt. 24 (Sandusky Newspaper's and the Standard Examiner's Motion to Dismiss); Dkt. 46 (Acucom's Motion for Judgment on the Pleadings); Dkt. 49 (The Fazzios' Motion for Summary Judgment); Dkt. 51 (The Fazzios' Motion to Strike Acucom's Motion for Judgment on the Pleadings); Dkt. 61 (Weber County's Motion to Strike Sealed Document).

[9] *See supra* note 8.

Additionally, Acucom filed a motion for sanctions.[10] The court denied that motion, explaining, "[t]he Fazzios cite factual and legal authority for their claims and *have not made arguments in direct contrast to a previous ruling.*"[11]

### The court dismissed the Amended Complaint while stressing Rule 11.

On May 29, 2018, the court held a hearing to address the pending dispositive motions. The Fazzios' civil rights claim under 42 U.S.C. § 1983 provided the only possible basis for subject-matter jurisdiction, so the court focused first on the viability of that claim.[12]

In an oral ruling delivered at the May 29 hearing, the court dismissed the § 1983 claim as insufficiently pled, and declined to exercise supplemental jurisdiction over the many state law claims asserted in the Amended Complaint.[13] The court explained to Jackson the difficulty of pleading a § 1983 claim and why his unusual § 1983 theories failed.[14] For instance, the court explained Jackson's due process theory failed because only the State of Utah, and not Weber County, can bring charges against a minor.[15] In rejecting Jackson's 14th Amendment theory, the court explained,

> The Fazzios have not alleged any facts relating to Weber County's interference with the care, custody and control of IF. The Fazzios argue Weber County, quote, unilaterally and unlawfully, end quote, made the decision for the Fazzios whether to release information about the case to the public . . . . But I'll observe that the Fazzios have presented no legal or factual authority for the proposition that a governmental entity's decision to

---

[10] Dkt. 40 (Acucom's Motion for Sanctions).

[11] Dkt. 45 at 4 (emphasis added).

[12] Dkt. 69 (Minute Order); Dkt. 73 (Hearing Transcript).

[13] *See* Dkt. 73.

[14] *See, e.g.*, *id.* at 21–28, 35.

[15] *Id.* at 24.

3

release juvenile arrest records implicates a protected parental right. And for that reason I [conclude] that that claim is not adequately pled.[16]

Dismissal was without prejudice.[17] The court explained the decision of whether and how to proceed was for Jackson and his clients to make, elaborating,

> I'm going to allow you to file an amended complaint if you wish. You don't have to, but you're welcome to. You and I will talk about a reasonable time period for putting that together and filing it. It can't be filed here unless there's a federal claim in support of that complaint.[18]

The court also alerted Jackson of his Rule 11 obligations, cautioning,

> Whatever you choose to do, if we're back here again and we're testing the viability of this complaint and your 1983 claim again fails for the reasons, especially if it's on the basis of any of the arguments that Weber County has already put forward in its papers, which I think are nearly completely legally right, and the law I think that [Weber County] set forward is a correct statement of the law, or if we're here on a new round of motions to dismiss by the other defendants drawn to the amended complaint, *if, for example, one of them has identified a clear legal defect in the pleading or the cause of action asserted against one of them and you reassert that and there is no basis in law, then we begin to have a Rule 11 problem or an attorney's fees issue that I would very much like for us not to have to reach.*[19]

<u>Jackson filed a Second Amended Complaint containing legal theories the court previously explained were unavailable.</u>

After the May 29 hearing, the court published a docket text order, stating, "[p]laintiffs may file an amended complaint within 30 days and do not need to first seek leave to amend."[20] Perhaps out of an abundance of caution, Jackson nonetheless filed a "Motion to Reopen Case," attaching a proposed Second Amended Complaint (SAC).[21] He drafted and attached the

---

[16] *Id.* at 23–24.

[17] *Id.* at 10–11.

[18] *Id.* at 10.

[19] *Id.* at 11 (emphasis added).

[20] Dkt. 69.

[21] Dkt. 70.

4

proposed SAC *prior to* requesting or obtaining a transcript of the May 29 hearing.[22] Consistent with its prior docket text order, the court granted Jackson's request.[23] Another round of motion practice ensued.[24]

A second motion hearing was held on January 15, 2019.[25] At that hearing, the court dismissed the SAC and notified Jackson that it appeared he violated Rule 11.[26] In an oral ruling delivered at the hearing, the court stated that it appeared that a reasonable inquiry would have alerted Jackson that the Fazzios' § 1983 claims under the First Amendment, Fourth Amendment, Fifth Amendment Double Jeopardy Clause, Sixth Amendment, and Eight Amendment were not supported by existing law or by a nonfrivolous argument for extending, modifying or reversing current law or for establishing new law.[27] For example, the court observed,

> The Fazzios also assert a Fourth Amendment right to child rearing claim . . . . I previously dismissed that claim at the [May 29] hearing. And the observation I made then remains true today. Quote: The Fazzios have presented no legal or factual authority for the proposition that a governmental entity's decision to release juvenile arrest records implicates a protected parental right, at least a constitutional one . . . . And because that claim remains inadequately pled it is dismissed.[28]

For perceived Rule 11 violations, the court ordered Jackson to show cause why sanctions should not be imposed.[29]

---

[22] *See id.*; Dkt. 74 (specifying Acucom's counsel purchased the transcript of the May 29 hearing).

[23] *See* Dkts. 69, 76.

[24] *See* Dkt. 82 (Acucom's Motion to Dismiss); Dkt. 83 (Weber County's Second Motion to Dismiss); Dkt. 84 (Sandusky Newspaper's and the Standard Examiner's Second Motion to Dismiss).

[25] Dkt. 99 (Minute Order); Dkt. 100 (Hearing Transcript).

[26] Dkt. 100 at 55–64.

[27] Dkt. 100 at 58:12–18; *see also* Dkt. 100 at 59:15–18 (*The court*: "Mr. Jackson, do you have questions about the specific claims or issues that I'm asking you to address in an order to show cause?" *Jackson*: "No, Your Honor.").

[28] Dkt. 100 at 29.

[29] Dkts. 99, 100 at 55–61.

**LEGAL STANDARD**

Rule 11 sanctions analysis proceeds in two-step process.[30] First, a court considers whether a pleading violates Rule 11.[31] If a pleading violates Rule, the court proceeds to the second step, where it considers a number factors to determine the appropriate sanction.[32] The court begins its analysis at the first step.

**ANALYSIS**

**I.   On its own initiative, the court sanctions Brian K. Jackson for his Rule 11(b)(2) violation.**

An attorney is under an obligation to "stop, look, and listen before signing a document subject to Rule 11."[33] Rule 11(b)(2) obligates an attorney to conduct "an inquiry reasonable under the circumstances" to ensure the submitted pleading's "claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law."[34] A violation of Rule 11(b)(2) occurs when an attorney fails to heed a judge's previous warning that an argument lacks merit.[35] A violation of Rule 11(b)(2) also occurs when an attorney advances argument in the face of a well-established rule and contrary to the presiding court's prior ruling.[36]

---

[30] *See Collins v. Daniels*, 916 F.3d 1302, 1319 (10th Cir. 2019).

[31] *Id.*

[32] *Id.*

[33] *Adamson v. Bowen*, 855 F.2d 668, 673 (10th Cir. 1988) (internal quotation marks omitted).

[34] Fed. R. Civ. P. 11(b)(2); *see also Collins*, 916 F.3d at 1320 (holding the courts must apply "an objective standard intended to eliminate any 'empty-head pure-heart' justification for patently frivolous arguments.") (internal quotation marks omitted).

[35] *See West v. Peterson*, No. CIV. 92-C-577B, 1993 WL 145771, at *2 (D. Utah Jan. 5, 1993), *aff'd sub nom. West v. Comm'r*, 9 F.3d 119 (10th Cir. 1993).

[36] *See United Pac. Ins. Co. v. Durbano Constr. Co.*, 144 F.R.D. 402, 408–09 (D. Utah 1992).

### A. While on actual notice of the Rule 11(b)(2) standard, Jackson repeatedly violated that standard.

Prior to filing the SAC, Jackson twice received notice of the Rule 11(b)(2) standard from this court. He first received notice via a published order denying Acucom's motion for Rule 11 sanctions on April 6, 2018.[37] He again received notice in person at the May 29, 2018 hearing.[38] Despite repeated warnings, Jackson advanced several frivolous legal arguments in the SAC. Two examples illuminate the frivolity of Jackson's § 1983 arguments.

First, Jackson renewed a frivolous Fourth Amendment right to child rearing claim. For the exact reason it had previously dismissed that claim in the Amended Complaint, the court again dismissed the claim in the SAC.[39] Although Jackson explains he reasserted "each constitutional and federal law violation" based on his understanding of the intent behind the court's dismissal of the Amended Complaint without prejudice,[40] nowhere in his response to the order to show cause does he respond to the court's concerns about renewing the frivolous Fourth Amendment claim.

Second, Jackson fails to identify legal support for his Double Jeopardy theory. He theorizes Weber County violated the Double Jeopardy Clause by mistakenly publishing information about charges that were previously resolved.[41] In his view, a false publication of a

---

[37] *See, e.g.*, Dkt. 45 at 3 ("Examples of frivolous or legally unwarranted arguments include cases where a party has obviously failed to heed [the judge's] previous warning that the argument lacked merit or presented arguments that are in contravention of [a] well-established rule and directly contrary to the court's prior ruling.") (internal quotation marks and citations omitted).

[38] *See* Dkt. 73 at 8–11, 20–22, 31–33.

[39] *See supra* note 28 and accompanying text.

[40] Dkt. 102 at 8.

[41] *See id.* at 13 ("Even if the county was not the correct agency to post the charges, they were still charges that I.F. had to respond and answer to. Even if the Sheriff's office simply "took down' the charges, there are question [sic] on whether or not more action was needed to curtail the criminal proceedings.").

criminal charge is legally equivalent to a bona fide criminal charge, at least under the Double Jeopardy Clause.[42] He conceives and then defends this theory in the face of clear and established legal authority that Weber County cannot criminally charge a minor.[43] He defends this theory even in the face of his own factual allegations. As the court observed at the January 31 hearing,

> I previously explained that Weber County is legally incapable of bringing criminal charges against juveniles . . . . In the face of controlling legal authority presented to the plaintiff and the Court's previous ruling and explanation of that authority the Fazzios continue to allege constitutional violations of the Fifth Amendment double jeopardy clause in Paragraphs 135 through 137 and various clauses under the Sixth Amendment to the US Constitution in Paragraphs 151 through 153. These claims obviously fail because the minor child was not subjected to a second criminal prosecution. Indeed, the Fazzios themselves recognize as much in the complaint asserting, and here are a handful of allegations drawn from the complaint soon to be true, the plaintiff's own allegations. Paragraph 36, charges for minor children are civil in nature and not criminal charges, and a minor child cannot be convict a crime; Paragraph 39, IF did not have pending criminal charges against him on April 10th, 2017; and Paragraph 146, the information of which was also false as he was not arrested and booked on new criminal charges in an adult detention center and what was not being tried as an adult the charges of which were already resolved.[44]

Jackson defends his Double Jeopardy Theory, even in the absence of legal authority. Although he cites various inapposite authorities, Jackson nowhere identifies opinions, minority opinions, or even law review articles supporting his theory.[45] Yet Jackson seems to try to pass

---

[42] Dkt. 77 (SAC) at pp. 30–31.

[43] *See* Dkt. 102 at 13.

[44] Dkt. 100 at 30–31.

[45] *See* Fed. R. Civ. P. 11, advisory committee's note to 1993 amendment ("Arguments for extensions, modifications, or reversals of existing law or for creation of new law do not violate subdivision (b)(2) provided they are 'nonfrivolous.' This establishes an objective standard, intended to eliminate any 'empty-head pure-heart' justification for patently frivolous arguments. However, the extent to which a litigant has researched the issues and found some support for its theories even in minority opinions, in law review articles, or through consultation with other attorneys should certainly be taken into account in determining whether paragraph (2) has been violated.").

off his theory as springing from existing law.[46] Even now in response to the order to show cause, Jackson persists Weber County may have somehow conspired with state authorities to charge I.F.[47] But as would be clear to any reasonable attorney, his theory lacks any legal support because Weber County did not, and legally could not, charge I.F.

Lest there be any doubt, this court's Rule 11 concerns go well beyond the two examples just articulated.[48] Besides the frivolous Fourth Amendment right to child rearing claim, Jackson *reasserted* a frivolous Fourth Amendment privacy claim in the SAC.[49] Beyond the frivolous Double Jeopardy claim, Jackson advanced frivolous Cruel and Unusual Punishment and First Amendment claims.[50] The court need not further detail Jackson's repeated Rule 11(b)(2) violations, however, because the analysis above: demonstrates this Order is the result of deliberation; will assist in any appellate review; and enhances the deterrent effect of this Order.[51]

---

[46] *See* Dkt. 77 (SAC) at ¶¶ 100–137; Dkt. 87 at 19–21; 23–24. After careful parsing of Jackson's somewhat incoherent briefing, the court does not understand Jackson to argue for the extension, modification, or reversal of existing law, or for establishing new law. When an attorney *specifically* identifies its argument for a change of law, that argument is viewed with "greater tolerance" under Rule 11. *See* Fed. R. Civ. P. 11, advisory committee's note to 1993 amendment. Because Jackson does not specifically identify an argument for a change of law, the court affords his arguments the usual tolerance under Rule 11.

[47] Dkt. 102 at 10, 13.

[48] *See* Dkt. 100 at 28, 31, 56–59.

[49] *See* Dkt. 100 at 28 ("The Court *previously dismissed* the Fazzios' Fourth Amendment right to privacy claim, which is found in Paragraphs 97 and 99 of the second amended complaint, because government disclosures of arrest records, judicial proceedings and information contained in police reports do not implicate the right to privacy. *That's a direct quote from Nilson vs. Layton City, a 10th Circuit decision from 1989.*") (emphasis added).

[50] *Id.* at 31 ("The Eighth Amendment cruel and unusual punishment claim found in Paragraphs 154 to 157 fails because the Fazzios have not provided a factual basis from which to reasonably infer that an employee knew of and disregarded an excessive risk to IF's health or safety, let alone that IF was punished. And that cites Sealock vs. Colorado from the 10th Circuit in 2000. The First Amendment claim found in Paragraphs 158 and 159 fails because the Fazzios provide no legal authority at all to support their assertion that when the First Amendment requires the release of certain information there is an inverse requirement not to release that information.").

[51] *White v. Gen. Motors Corp.*, 908 F.2d 675, 685 (10th Cir. 1990).

### B. Jackson does not articulate a persuasive explanation for his Rule 11(b)(2) violations.

In his response to the show cause order, Jackson advances unpersuasive excuses. He first explains he did not have access to the May 29 hearing transcript prior to his submission of the SAC.[52] He incorrectly adds, "[t]he parties was [sic] also directed by the court not to take notes at the time of the ruling."[53] True, Jackson did not have access to the May 29 hearing transcript, but only because he failed to timely request it. Jackson's first excuse is unpersuasive.

Second, Jackson argues the court's order granting leave to amend created the impression that his claims were legally permissible.[54] He insists, "[i]f a claim was legally barred, Counsel would have assumed that those claims would have been dismissed without [sic] prejudice and unable to raise that claim again."[55] This excuse too is unpersuasive.

The court rarely dismisses claims with prejudice, and in fact must "freely" grant leave to amend "when justice so requires."[56] Claims are dismissed without leave to amend only when the complaint fails to state a claim and there is just reason to deny amendment.[57] Lack of a just reason to deny amendment does not excuse a party of its Rule 11 obligations. For example, when a court determines that amendment is not "futile," that determination does not mean the court has signed off on the merits of a claim—only that the court is observing Rule 15(a).

---

[52] *Id.* at 8.

[53] *Id.*

[54] *Id.*

[55] *Id.*

[56] Fed. R. Civ. P. 15(a).

[57] *See Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) ("In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be freely given.") (internal quotation marks omitted).

As a third excuse, Jackson attempts to reshape his Complaint and backtrack on his prior representations to this court. By way of background, the court previously grappled with Jackson's inconsistent allegations that Weber County "charged" and "arrested" I.F."[58] At the May 29 hearing, Jackson orally represented that he did not intend to assert any factual allegations that I.F. was arrested.[59] Despite language in the SAC to the contrary, the court credited Jackson's representations.[60] But in his response to the order to show cause, Jackson discredits his own earlier representations, stating,

> Even if Weber County cannot legally bring charges against a minor child, the *issue and allegations were that Weber County factually* did with its state power to arrest and in the definition of what an arrest is as to detention and issue new charges of the minor child, under the color of the law through abuse of its position with the Sheriff's office. If they did instead of another proper agency, then they acted under the color of the law and violates due process as it relates to procedure in properly charging a minor child.[61]

Rather than persuade, Jackson's inconsistent representations exhume Rule 11 concerns partially put to rest.[62] An attorney that lobs factual allegations absent any evidentiary basis violates Rule 11(b)(3), which obligates an attorney to ensure "factual contentions have evidentiary support or,

---

[58] *See, e.g.*, Dkt. 77 at 108–125; Dkt. 100 at 8–17; *see also id.* at 12 (*Court:* "But the County didn't bring new charges against the child; true?" *Jackson:* "Right. I understand that."); *id.* at 14 (*Court:* "I'll just tell you I candidly can't understand your answer."); *id.* at 16–17 (*Jackson*: attesting he did not intend to assert additional facts beyond Paragraph 75 of the Amended Complaint).

[59] *See supra* note 58.

[60] Dkt. 100 at 30.

[61] Dkt. 102 at 12 (emphasis added) (errors in original).

[62] *See* Dkt. 100 at 58–59 ("On the face of the complaint and after reading the briefing submitted by the plaintiffs it also appears Mr. Jackson may have failed to conduct a reasonable inquiry into the facts. And that's required under Rule 11(b)(3). Though his explanation today *may have ameliorated these concerns in my mind to some extent*, on the face of the complaint the plaintiffs maintain contradictory factual positions. For example, that Weber County charged IF with a crime. But as I've noted in our previous hearing and again today only the state of Utah can bring charges against a minor.") (emphasis added).

if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."[63]

Jackson's apparent Rule 11 violation in his response to the order to show cause, or alternatively in the SAC, is worrisome. But rather than bog down this litigation in continuing Rule 11 proceedings with the issuance of a second order to show cause,[64] the court simply notes that Jackson's third excuse is unpersuasive.

At the heart of this case lies the Fazzios' allegations that their child, I.F., was unlawfully harmed by the dissemination of I.F.'s photograph, name, and putative criminal history. But because of Jackson's failure to adhere to Rule 11, objectively unreasonable constitutional theories became the focal point of the Fazzios' case. "This case is a prime example of the waste and distraction that result when attorneys disregard Rule 11's certifications."[65]

### C. To deter future violations, the court orders Jackson to pay a monetary penalty of $6,650 and attend ethics school.

At the second step of the sanctions analysis, the court determines the "appropriate sanction."[66] The purpose of Rule 11 informs the decision of what sanction is appropriate. "The central purpose of Rule 11 is to deter baseless filings in district court and thus streamline the administration and procedure of the federal courts. Baseless filing puts the machinery of justice

---

[63] Fed. R. Civ. P. 11(b)(3); *see Laurino v. Tate*, 220 F.3d 1213, 1218–19 (10th Cir. 2000) (upholding Rule 11(b)(3) sanctions when attorney for plaintiff made unsupported factual contentions and refused an opportunity by the court to clarify the contentions); *Salmon v. Nutra Pharma Corp.*, 697 Fed. App'x. 713, 718–19 (10th Cir. 2017) (upholding Rule 11(b)(3) sanctions when there was "no objective evidentiary basis" to support plaintiff's allegations); *Sub Zero Franchising, Inc. v. Frank Nye Consulting, LLC*, No. 2:15-cv-821, 2018 WL 1999093, at *1– *2 (D. Utah April 27, 2018) (imposing sanctions when multiple causes of action were alleged "without basis," "without evidentiary support," and without "reasonable pre-suit investigation").

[64] *See* Fed. R. Civ. P. 1.

[65] *Collins*, 916 F.3d at 1323.

[66] Fed. R. Civ. P. 11(c)(1).

in motion, burdening courts and individuals alike with needless expense and delay."[67] There are a range of sanctions potentially available. For example, a court may strike the offending paper; issue an admonition, reprimand, or censure; require participation in seminars or other educational programs; order a fine payable to the court; etc.[68] When a monetary fine is imposed, that fine should be limited to "that amount reasonably necessary to deter the wrongdoer."[69] Additionally, a number of factors inform the decision of what sanction is appropriate.[70] Here, the court considers:

1) the minimum amount required to deter misconduct;

2) the offending party's history, experience, and ability;

3) the severity of the violation; and

4) the risk of chilling zealous advocacy.[71]

Applying those factors here, the court concludes an appropriate monetary sanction is a fine of $6,650. First, the court determines a minimum amount of $6,650 is necessary for proper

---

[67] *Collins*, 916 F.3d at 1322–23 (internal quotation marks, ellipses, and citations omitted).

[68] *See* Fed. R. Civ. P. 11, advisory committee's note to 1993 amendment.

[69] *White*, 908 F.2d at 685.

[70] The parties do not identify the factors the court must consider. After independent research, the court concludes some of those factors relevant when imposing attorney's fees as a sanction under Rule 11 are also relevant when a court, on its own initiative, imposes a monetary fine as a sanction under Rule 11. *See Eisenberg v. Univ. of New Mexico,* 936 F.2d 1131, 1136 (10th Cir. 1991) (endorsing the use of the *White* factors in the context of a court's sua sponte monetary sanction); *see also King v. Fleming*, 899 F.3d 1140, 1155 (10th Cir. 2018) ("When imposing attorney's fees as a sanction under Rule 11, we have highlighted four factors for a district court to consider. Those are (1) the reasonableness of the proposed fees, (2) the minimum amount required to deter misconduct, (3) the offender's ability to pay, and (4) other factors as the court sees fit, such as the offending party's history, experience, and ability; the severity of the violation; and the risk of chilling zealous advocacy.") (citing *White*, 908 F.2d at 684–85); *see also id* at 1150 (10th Cir. 2018) (recognizing as proper the district court's adoption of a multi-factor test used in a context analogous to the one before the district court).

[71] The court derives these factors from Tenth Circuit precedent applicable in an analogous context. *See supra* note 70. The court does not consider the reasonableness of the Defendants' proposed fees because it declines to award attorney's fees to Defendants. The court believes ability to pay is an important factor in arriving at a monetary sanction figure; however, it was Jackson's burden to establish his ability to pay. *White*, 908 F.2d at 685. But in his response to the order to show cause, Jackson does not advance argument concerning his ability to pay. Accordingly, the court does not currently consider that factor.

deterrence. The court arrives at this figure by estimating a percentage of the amount of compensation an attorney of Jackson's skill and experience would likely receive for advancing the frivolous arguments. This methodology furthers deterrence because if an attorney is unable to reap a monetary reward from their sanctionable conduct, that attorney is unlikely to engage in such sanctionable conduct in the future.

Second, the fine amount is proper in view of Jackson's history in this proceeding and apparent experience and ability. This second factor militates in favor of $6,650 because Jackson has not been previously sanctioned by this court, and an attorney not previously sanctioned requires less deterrence than one demonstrably resistant to deterrence. The third factor also militates in favor of the minimum amount because, although serious, Jackson's violation appears to have been made in good faith. Finally, in light of the constitutional necessity of zealous advocacy in the context of civil rights claims, the fourth factor weighs in favor of imposition of only the minimum amount required for deterrence.

The court will not and cannot order Jackson to pay the fine to Defendants. Of course, Defendants wish otherwise.[72] However, deterrence does not demand Jackson pay a fine to Defendants. And on its own initiative, the court cannot order Jackson to pay money to an opposing party.[73] Accordingly, the court orders Jackson to pay the fine of $6,650 to the Clerk of Court within ninety (90) days of this Order. Jackson must notify chambers when this is accomplished.

---

[72] *See, e.g.*, Dkt. 103 at 1; Dkt. 104 at 1.

[73] See *Hutchinson v. Pfeil*, 208 F.3d 1180, 1184 (10th Cir. 2000) ("Rule 11(c)(2) prohibits a court acting on its own initiative from ordering payment of a monetary penalty to an opposing party."); Fed. R. Civ. P. 11, advisory committee's note to 1993 amendment ("Sanctions that involve monetary awards (such as a fine or an award of attorney's fees) may not be imposed on a represented party for causing a violation of subdivision (b)(2), involving frivolous contentions of law. Monetary responsibility for such violations is more properly placed solely on the party's attorneys.").

If Jackson is unable to pay this fine, the court will afford Jackson the opportunity to submit *in camera* briefing and evidence of his financial status.[74] Jackson may, but is not required, to submit such evidence. If he chooses to submit evidence of his financial status, then that evidence must include an accounting of any funds received from or currently owed by the Fazzios. The deadline for the submission of financial status briefing and evidence is fourteen (14) days from the date of this Order.

Additionally, the court orders Jackson to attend and complete the Utah State Bar Ethic's Seminar offered in September of 2019. Within five (5) days of his completion of the Seminar, Jackson is ordered to notify the court.

**II.    The court denies Acucom's motion for sanctions pursuant to 28 U.S.C. § 1927 and pursuant to the court's inherent authority.**

First, under 28 U.S.C. § 1927, "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."[75] The Tenth Circuit instructs sanctions under § 1927 are "appropriate when an attorney acts recklessly or with indifference to the law. They may also be awarded when an attorney is cavalier or bent on misleading the court; intentionally acts without a plausible basis; [or] when the entire course of the proceedings was unwarranted."[76]

Acucom argues Jackson needlessly multiplied proceedings by failing to terminate the Fazzios' case when I.F. was allegedly arrested for shooting another child.[77] Based on Acucom's

---

[74] *White*, 908 F.2d at 685.

[75] 28 U.S.C. § 1927.

[76] *Steinert v. Winn Grp., Inc.*, 440 F.3d 1214, 1221 (10th Cir. 2006) (alteration in original).

[77] *See, e.g.*, Dkt. 105 at 7–9.

own allegations, however, that shooting occurred long *after* Acucom's involvement in publicly disseminating information about I. F. This sequence of events undermines Acucom's argument that the shooting invalidated the Fazzios' damages theory. On the one hand, a factfinder could conclude the shooting itself tends to prove the serious psychological injuries Defendants inflicted on I.F., that is, Defendants' harmful actions sent I.F. on a downward spiral to criminality. On the other hand, assuming evidence of the shooting was admissible over I.F.'s objection (which it probably would not be[78]), a factfinder could conclude the shooting tends to disprove I.F. suffered any injury as a result of Defendants' conduct. Either way, an attorney does not act recklessly or with indifference to the law by declining to dismiss their client's case when an event occurs that could theoretically tip the case in the opposing party's favor. Acucom's second motion for sanctions under 28 U.S.C. § 1927 is thus denied.

Second, the court declines to exercise its inherent authority to impose sanctions where, as here, Rule 11 can adequately sanction the offending attorney's conduct.[79] That Defendants chose not to timely seek relief under Rule 11 does not unlock the door to the court's inherent power. Rather that door remains firmly closed because Defendants' choice deprived Jackson of

---

[78] *See* Fed. R. Evid. 403.

[79] *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991) ("Furthermore, when there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power. But if in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power."); *id.* at 46 ("At the very least, the inherent power must continue to exist to fill in the interstices."); *see also Klein v. Stahl GMBH & Co. Maschinefabrik*, 185 F.3d 98, 110 (3d Cir. 1999) ("When the Rules or pertinent statutes are 'up to the task,' they should be used."); Fed. R. Civ. P. 11, advisory committee's note to 1993 amendment ("Chambers cautions, however, against reliance upon inherent powers if appropriate sanctions can be imposed under provisions such as Rule 11, and the procedures specified in Rule 11--notice, opportunity to respond, and findings--should ordinarily be employed when imposing a sanction under the court's inherent powers.").

Rule 11's safe harbor.[80]  Acucom's second motion for sanctions pursuant to the court's inherent authority is thus denied.

## CONCLUSION

For the reasons given above, the court concludes Brian K. Jackson violated Rule 11 and sanctions that conduct accordingly.  Acucom's Motions for Sanctions are DENIED.[81]

SO ORDERED this 29th day of July, 2019.

BY THE COURT:

_____
ROBERT J. SHELBY
United States Chief District Judge

---

[80] *See* Fed. R. Civ. P. 11(c)(2).

[81] Dkts. 104, 105.